UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

HIGHLAND PARK CDO I GRANTOR
TRUST, SERIES A,

                             Plaintiff,

    -against-

MATTHEW STUDER, FRED GRAFT,
ERNIE MALAS, AND PETER
CORATOLA,

                         Defendants.

-------------------------------------------------------X

Case No. 08 CV 01670 (NRB)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT OR STAY THE PRODEEDINGS**

*BAUMAN KATZ & GRILL LLP*
Attorneys for Defendants
28 West 44th Street, Suite 900
New York, New York 10036
(212) 684-0300

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 3

    I.    The Intercreditor Agreement........................................................... 5

    II.   The Junior Loan Agreement ........................................................... 6

    III.  Wells Fargo's "Notice Of Claim of Interest" Filed
        In this Action.................................................................................... 7

ARGUMENT ...................................................................................................... 8

    I.    THE COMPLAINT MUST BE DISMISSED AS A MATTER OF LAW
        BECAUSE PLAINTIFF HAS FAILED TO NAME A NECESSARY PARTY.... 8

        A.   Wells Fargo is a Necessary Party Pursuant To Fed. R. Civ. P. 19(a)........ 9

        B.   Fed. R. Civ. P. 19(b)'s Interests In Deciding Disputes as
            "Wholes" and the Existence of an Appropriate Alternate
            Forum Warrant Dismissal of this Action .................................................. 11

    II.   ALTERNATIVELY, THE NEW YORK ACTION SHOULD BE
        STAYED PENDING THE COMPLETION OF THE OHIO ACTION.............. 12

        A.   The Relevant Contractual Agreements and the Pending
            Ohio Action Warrant a Stay of the New York Action.............................. 13

        B.   Evaluation of the *Kappel* Factors Justify a Stay of this
            Action Pending Resolution of the Ohio Action ....................................... 15

            1.   Plaintiff Will Not Be Prejudiced If This Action
                Is Stayed Pending Resolution Of The Ohio Action ...................... 16

            2.   Defendants Will Be Severely Prejudiced
                If They Are Forced To Litigate This Action
                Simultaneously With The Ohio Action......................................... 16

            3.   Staying This Action Will Further The Courts' Interests.............. 17

            4.   Non-Party Wells Fargo's Interests Are Protected By A Stay ....... 18

CONCLUSION...................................................................................................... 19

## TABLE OF AUTHORITIES

**A.    CASES**

*Bethlehem Steel Corp. v. Tishman Realty & Constr. Co.,*
72 F.R.D. 33, 41 (S.D.N.Y. 1976) .................................................................................17

*Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-496  (1942)......................................12

*Evergreen Park Nursing & Convalescent Home, Ind. v. American Equitable Assurance Co.,* 417 F.2d 1113, 1115 (7th Cir. 1969)..................................................9, 11

*Felix Cinematografica v. Penthouse International Limited*
99 F.R.D. 167, 169 (S.D.N.Y. 1983)..............................................................................9

*Global Discount Travel Servs., LLC v. Trans World Airline, Inc.*
960 F. Supp. 701, 709-710 (S.D.N.Y. 1997) .................................................... 8, 9

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)........................................13, 15, 17

*Kamhi v. Cohen*, 512 F.2d 1051, 1054 (2d Cir. 1975)..............................................8

*Katz v. Feinberg*, Case No. 99 Civ. 11705 (CSH),
2001 U.S. Dist. LEXIS 16116 at *7 (S.D.N.Y. Sept. 24, 2001)............................................13, 14

*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) ..................................................12

**B.    RULES**

Fed. R. Civ. P. 12(b)(7) ....................................................................................1, 12

Fed. R. Civ. P. 19 ................................................................................................1

Fed. R. Civ. P. 19(a) ....................................................................................8, 9, 11

Fed. R. Civ. P. 19(b) ...................................................................................8, 9, 11

Fed. R. Civ. P. 21.................................................................................................9

**C.    SECONDARY SOURCES**

5C WRIGHT & MILLER § 1360 at 87...........................................................................12, 13
WRIGHT & MILLER, 7 Fed. Prac. & Proc. Civ.3d § 1604 ................................................................8

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted by Defendants Matthew Studer, Fred Graft, Ernie Malas, and Peter Coratola (collectively, "Defendants") in support of Defendants' motion for an Order, dismissing Plaintiff Highland Park CDO I Grantor Trust, Series' ("Plaintiff" or "Highland Park") Complaint, or, in the alternative, staying the action pending the outcome of a lawsuit filed by the Senior Lender, non-party Wells Fargo Bank, N.A. ("Wells Fargo" or "Senior Lender"), in an Ohio Trial Court, entitled *Wells Fargo Bank, N.A. v. Platinum Lodging LLC, et al.*, Case No. 08CVE03-03668 (Franklin Cty.) (the "Ohio Action"). Plaintiff filed this lawsuit in order to circumvent the rights of Senior Lender, who has filed a "Notice of Claim of Interest" in this case. Allowing this case to proceed without the Senior Lender will create duplicitous litigation and substantial prejudice upon the non-party Senior Lender and Defendants.

There are several grounds upon which the Court may base its order. First, the Court may rely on Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure to dismiss the Complaint on the basis that Plaintiff has failed to name an indispensable party, non-party Wells Fargo. It is undisputed that Wells Fargo holds an interest in a loan that is senior to Plaintiff's purported interest in the junior loan agreement at issue herein, and because of its prejudicial effect, Plaintiff should not be permitted to seek recovery in this action until it is determined whether Wells Fargo must be fully compensated as the Senior Lender on the loans. Accordingly, this case cannot proceed in good conscience without Wells Fargo as to do so would prejudice its interests and Defendants' interests in avoiding duplicitous litigation and inconsistent obligations.

Second, the Court may rely on its inherent authority to stay any and all proceedings in the instant action pending resolution of Wells Fargo's related claims in the Ohio Action. Because

Plaintiff has asserted the rights of non-party Wells Fargo in this action, Plaintiff will not be prejudiced by a stay of this dispute until Wells Fargo's rights are fully determined in the Ohio Action. It should be noted that Highland Park is not precluded from intervening in the Ohio Action as a necessary party because, pursuant to the terms of the junior loan agreement, Highland Park has an interest in the proceeds of a foreclosure sale that will likely be ordered by the Court in the Ohio Action. Furthermore, a stay of these proceedings pending outcome of the Ohio Action would advance the Courts' interest in deciding cases as a whole and would avoid any prejudice to Defendants that would be caused by a rush to judgment in this action. For all these reasons, the Court should either dismiss Plaintiff's Complaint or stay these proceedings pending the outcome of the Ohio Action.

## STATEMENT OF FACTS

Plaintiff's single claim in its Complaint arises from a Junior Mezzanine Loan Agreement between Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley"), as lender, and Platinum Lodging Mezz, LLC ("Platinum Lodging"), as borrower (the "Junior Loan"). (A copy of Plaintiff's Complaint is annexed to the accompanying affidavit of Daniel E. Katz, Esq. (the "Katz Affidavit") as Exhibit "A"; and a copy of the Junior Loan is annexed to the Katz Affidavit as Exhibit "B"). Defendants executed a guaranty for the Junior Loan in which Defendants guaranteed payment of Platinum Lodging's outstanding debt in the Junior Loan (the "Junior Guaranty"). (A copy of the Junior Guaranty is annexed to the Katz Affidavit as Exhibit "C"). Both the Junior Loan and the Junior Guaranty are subject to an Intercreditor Agreement (the "Intercreditor Agreement"). (A copy of the Intercreditor Agreement is annexed to the Katz Affidavit as Exhibit "D"). Highland Park contends that Morgan Stanley assigned to Plaintiff all of its rights in the Junior Loan and Junior Guaranty. (Katz Affidavit, Exhibit "A"). Wells Fargo contends that it may assert all of Senior Lender's rights in and to the Intercreditor Agreement and Senior Loan. (Katz Affidavit, Exhibit "D").

Highland Park commenced this action on February 20, 2008 (the "New York Action" or the "Action"). (*See* Exhibit "A"). In its Complaint, Highland Park alleges that Defendants defaulted on the Junior Loan[1] and a related Junior Note, giving rise to Highland Park's right to recover under the Junior Guaranty. Highland Park only chose to pursue its recovery in this action based on the Junior Guaranty for the Junior Loan. (Exhibit "A", at ¶¶ 21-24).

---

[1] For simplicity's sake, because of the subordination clause contained in the Intercreditor Agreement (*see infra* at II.A.) and due to the timing of execution of all agreements at issue, we refer to the Loan at issue in the instant New York Action as the "Junior Loan" and the loan at issue in the Ohio Action as the "Senior Loan." The loan documents at issue in the instant lawsuit are similarly referred to as "Junior" loan documents and the related loan documents at issue in the Ohio Action are referred to as "Senior" loan documents.

3

In pursuit of its claims based on an alleged default of the Senior Loan obligations, Wells Fargo initiated the Ohio Action, which was subsequently amended to include claims against Defendants individually, pursuant to the Senior Guaranty for the Senior Loan. (A copy of the Amended Complaint filed in connection with the Ohio Action is annexed to the Katz Affidavit as Exhibit "F"). Defendants were made aware that the Complaint in the Ohio Action was amended on or about April 22, 2008. (Katz Affidavit at ¶ 8).

The loans at issue in both the New York Action and the Ohio Action were entered into as a continuous series of transactions that were designed to provide funding to Platinum Lodging, LLC. The Senior Loan Agreement was executed first, and three weeks later, the same parties to that agreement executed the Junior Loan Agreement. (*Compare* Exhibit "F" at ¶ 9 (providing that the Senior Loan was executed on or about July 18, 2006); to Exhibit "A" at ¶ 10 (providing that the Junior Loan was executed on August 3, 2006)). At the time the parties executed the Junior Loan agreement, they specifically contemplated a concurrent amendment of the Senior Loan's terms, and partial payment of the Senior Loan, as partial consideration exchanged for the Junior Loan. (Exhibit "B" at Recitals, p.1). Because the Junior Loan and the Senior Loan are so closely related to each other, the original lenders made both agreements subject to an Intercreditor Agreement, which has now been purportedly assigned to Wells Fargo and Highland Park. (*See* Exhibit "D"). This Intercreditor Agreement subordinates all of Highland Park's rights to those asserted by Wells Fargo. (*See* Exhibit "D"; *See also* Wells Fargo's "Notice of Claim of Interest (Corrected)" at 3, which is annexed to the Katz Affidavit, without exhibits, at Exhibit "E"). The express terms of both the Intercreditor Agreement and the Junior Loan Agreement support Defendants' contention that this Action should be stayed pending the outcome of the Ohio Action.

A.     **The Intercreditor Agreement**

Pursuant to the Intercreditor Agreement, Highland Park's Junior Guaranty is subordinated to the Senior Guaranty at issue in the Ohio Action and all of Wells Fargo's claims in the Ohio Action.  Specifically, the Intercreditor Agreement provides, in relevant part:

> [Highland Park] subordinates and makes junior the Mezzanine Loan, the Mezzanine [Junior] Loan Documents and the liens and security interests created thereby, and all rights, remedies, terms and covenants contained therein to (i) the Senior Loan, (ii) the liens and security interests created by *the Senior Loan Documents* and (iii) all of the terms, covenants conditions, rights and remedies contained in the Senior Loan Documents, and no amendments or modifications to the Senior Loan Documents or waivers of any provisions thereof shall affect the subordination thereof as set forth in this Section 8(a).

(Exhibit "D" at §8(a)) (emphasis added)).  Furthermore, the Intercreditor Agreement states that Wells Fargo's right to recovery upon the Senior Guaranty at issue in the Ohio Action is senior to any right of recovery upon the Junior Guaranty at issue in this New York Action by explicitly requiring that *"[e]very document and instrument* included within the Mezzanine Loan Documents shall be subject and subordinate to *each and every document and instrument* included within the Senior Loan Documents. . . ." (*Id.* at §8(b) (emphasis added)).

The Intercreditor Agreement also sets forth Highland Park's and Wells Fargo's ability to collect payment upon any defaults associated with the Senior Loan and Junior Loan. Specifically, the Intercreditor Agreement provides that, Highland Park is not to keep any funds collected in pursuit of any default of the Junior Loan unless and until all amounts due to Wells Fargo are completely satisfied.  (*Id.* at §9(a)).  To this end, the Intercreditor Agreement provides that if

> [a] Continuing Senior Loan Event of Default shall
> have occurred and be continuing, Senior Lender
> shall be entitled to receive payment and
> performance in full of all amounts due or to become
> due to Senior Lender before Mezzanine Lender is
> entitled to receive any payment on account of the
> Mezzanine Loan.

(*Id.*)  Therefore, pursuant to the terms of the Intercreditor Agreement, Highland Park should not

be permitted to recover on its claims in the New York Action until all amounts due are paid to

Wells Fargo via its claims in the Ohio Action, which includes Wells Fargo's claims against the

individual Defendants as Guarantors of the Senior Loan.

### B.    The Junior Loan Agreement

The Agreement for the Junior Loan provides that Highland Park (as assignee of that

agreement) has an interest in any resulting proceeds of the Ohio Action.  The Junior Loan

agreement provides that upon foreclosure of the property at issue in the Ohio Action, Platinum

Lodging must cause the "related Net Liquidation Proceeds After Debt Service to be deposited

directly into [Highland Park's account]."  (Exhibit "B" at ¶ 2.4.2).  Thus, this provision allows

Wells Fargo, who asserts the rights of Senior Lender, to recover any amounts due to it first, and

then contractually requires Platinum Lodging to pay all remaining amounts to Highland Park.

(Exhibit "B" at §1.1, definition of "Net Liquidation Proceeds After Debt Service").  As such,

Highland Park has a contractual interest in the proceeds of any foreclosure sale ordered as a

result of the Ohio Action.

For these reasons, amongst others, the Defendants in the Ohio Action and Platinum

Lodging have moved to join Highland Park as a necessary party in the Ohio Action to compel it

to proceed on its claims in a convenient jurisdiction to all parties at issue in this dispute.  (*See*

Katz Affidavit, ¶ 13).  Highland Park's recovery under the Junior Guaranty in this New York

Action will be set-off by Highland Park's recovery via a foreclosure sale resulting from the Ohio

Action. (*See* Exhibit "C" at ¶¶ 1 and 3).) This is because Highland Park's Junior Guaranty requires the payment of "Debt," which is defined as "principal sum evidenced by the Note and the Loan Agreement...or so much thereof as may be outstanding from time to time...." (*Id.*) Therefore, any foreclosure proceeds resulting from the Ohio Action that Platinum Lodging is required to apply to the principal of the Junior Loan, must be deducted from any obligations of Defendants in the New York Action as Guarantors of that loan.

### C.    Wells Fargo's "Notice Of Claim of Interest" Filed in this Action

Wells Fargo has filed a "Notice of Claim of Interest" in this action, setting forth the potential reasons Highland Park sued the Defendants in New York. (*See* Katz Affidavit at Exhibit "E"). Importantly, this Notice threatens potential future liability on all parties currently in this Action. Indeed, Wells Fargo states that its purpose in filing this "Notice of Claim of Interest" was to put Highland Park *and* all *Individual Defendants* on notice that a "failure to pay (any) judgment or settlement amount in accordance" with the "instructions" contained in the Notice "will result in your liability to the Secured Party as provided by the Michigan (sic) Uniform Commercial Code." (*Id.* at pp. 1 and 3).

In its Notice of Claim of Interest, Wells Fargo contends that the New York Action may have been filed by Highland Park "without providing any notice to [Wells Fargo]. . . in order to circumvent [Highland Park's] obligation to pay any amount realized by judgment or settlement of the [New York Action] to [Wells Fargo]." (*Id.*) In support of this statement, Highland Park has argued to the Court that it believes that any proceeds of this New York Action are entirely its own to keep and are not subject to the Intercreditor Agreement. (Katz Affidavit at ¶ 15). This argument strongly foreshadows a forthcoming dispute over the proceeds of this Action.

**ARGUMENT**

**POINT I**

**THE COMPLAINT MUST BE DISMISSED AS A MATTER OF LAW
BECAUSE PLAINTIFF HAS FAILED TO NAME A NECESSARY PARTY**

Federal Rule of Civil Procedure 19(a) provides that the plaintiff must join as necessary parties those whose interests would be impaired if the action were disposed of in their absence, and those whose absence would leave named parties subject to substantial risk of incurring multiple or inconsistent obligations. Fed. R. Civ. P. 19(a). In determining whether or not a third party should be joined, courts must balance the interests of the parties and the third party, and the interests of the courts in effective and expeditious litigation. *Kamhi v. Cohen*, 512 F.2d 1051, 1054 (2d Cir. 1975). However, as set forth in the leading treatise:

> There is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a). The decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them.

Wright & Miller, 7 FED. PRAC. & PROC. CIV.3d § 1604.

If a party fits within these parameters, but has not been, or cannot be, joined in the action, the Court, in its discretion based on a case-by-case analysis, must then determine whether the absent party is indispensable pursuant to Rule 19(b) by evaluating "whether in equity and good conscience the action should proceed among the parties before it or should be dismissed." Fed. R. Civ. P. 19(b); *Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp.

701, 709 (S.D.N.Y. 1997).[2] In doing so, the following four factors are to be considered:

> First, the interest of the plaintiff in having a forum, with the strength of this interest dependent upon whether a satisfactory alternative exists. Second, the defendants' interest in avoiding multiple litigation and inconsistent relief. Third, the interests of a non-party whom it could have been desirable to join even though in his absence a judgment is not res judicata as to, or legally enforceable against him. Finally, the interest of the courts and the public in complete, consistent and efficient settlement of controversies.

*Global Discount Travel Servs., LLC,* 960 F. Supp. at 709-710 (this determination is "left to a court's discretion") (Internal quotations omitted) *citing, Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733 (1968); *see also, Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assurance Co.,* 417 F.2d 1113, 1115-1116 (7th Cir. 1969) (noting that there is a "public stake in settling disputes by wholes, whenever possible"); *Felix Cinematografica v. Penthouse International Limited,* 99 F.R.D. 167, 169 (S.D.N.Y. 1983). In addition, it is not proper for a plaintiff to narrowly tailor its claims arising out of one set of facts and to exclude another potential party in order to avoid a more convenient forum in which it may assert its full set of claims arising out of a single occurrence. *Felix Cinematografica,* 99 F.R.D. at 172.

### A.  **Wells Fargo is a Necessary Party Pursuant to Fed. R. Civ. P. 19(a)**

Both non-party Wells Fargo's and Defendants' interests will be adversely affected by Highland Park's failure to join Wells Fargo in this Action. Specifically, in its Notice of Claim of

---

[2] Currently, Wells Fargo has not been joined as a party in this action and Plaintiff has asserted that it would have been improper for it to do so. Defendants do not have a claim against Wells Fargo in this dispute and cannot join them as a third-party defendant. The Court may, however, as a result of its analysis under Rule 19(a), determine that Wells Fargo should be joined, and has the power to do so under Fed. R. Civ. P. 21. To do so, however, would not serve the Courts' or the public's interest in avoiding duplicative litigation and in determining causes of actions as "wholes," and thus, Defendants submit that a full analysis of the issue under Rule 19(b) is warranted.

Interest, Wells Fargo contends that any recovery herein should go directly to Wells Fargo pursuant to the terms of the Intercreditor Agreement, and, by extension, the Senior Loan. To this end, Wells Fargo contends that it is **entitled to receive payment and performance in full of all amounts due or to become due to Senior Lender before (the Junior) Lender is entitled to receive any payment on account of the [Junior] Loan.**" (emphasis in original) (Katz Affidavit, Exhibit "E"). Thus, at the very least, it appears that Wells Fargo has a right to any judgment awarded in this Action pursuant to the Intercreditor Agreement and the Senior Loan Agreement. Dismissal of Plaintiff's Complaint herein is the most practical solution because Wells Fargo cannot feasibly join in this Action. Specifically, Wells Fargo would not be able to assert all of the claims it has already asserted against fourteen (14) other defendant-creditors in the Ohio Action by virtue of their purported mortgage interests in the Senior Loan. (*See* Katz Affidavit, Exhibit "F").

In addition, Defendants' interests are affected by Wells Fargo's absence in the New York Action. Wells Fargo's basis for filing its "Notice of Claim of Interest" was to put Highland Park and Defendants on notice that a "failure to pay (any) judgment or settlement amount in accordance" with the "instructions" contained in its Notice of Claim "will result in your liability." (Katz Affidavit, Exhibit "E" at 3). Notably, Wells Fargo alleges that the instant action may have been filed by Highland "without providing any notice to [Wells Fargo]. . . in order to circumvent [Highland]'s obligation to pay any amount realized by judgment or settlement of this action to [Wells Fargo]." (*Id.*) Accordingly, because Wells Fargo has stated that it will hold all parties herein liable if any judgment rendered in this Action is not paid directly to Wells Fargo's accounts, even if Defendants are ultimately not found liable, there is a substantial risk that

proceeding in this action without Wells Fargo will result in multiple and/or inconsistent obligations.

For these reasons, Wells Fargo is an indispensable party that Plaintiff should have, but failed to, name in this Action pursuant to Rule 19(a) that cannot be feasibly joined. Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

**B.    Fed. R. Civ. P. 19(b)'s Interests in Deciding Disputes As "Wholes" and the Existence of an Appropriate <u>Alternative Forum Warrant Dismissal of this Action</u>**

The Ohio Action represents a proper forum where all disputes arising out of Platinum Lodging's alleged defaults under the Junior Loan and the Senior Loan may be resolved. In the Ohio Action, Wells Fargo seeks resolution of fourteen (14) other defendant-creditors' mortgage interests in the Senior Loan, and, as a result, these fourteen other defendant-creditors are named in the Ohio Action as necessary parties to Wells Fargo's foreclosure-based in rem claims. (*See* Katz Affidavit, Exhibit "F"). All fourteen defendant-creditors cannot be joined in this New York Action as the Court would not have personal jurisdiction over their claims. Accordingly, as set forth in Point I(A), *supra,* Wells Fargo cannot feasibly join in this Action because it would not be able to assert all of the claims it has already asserted against the fourteen defendant-creditors in the Ohio Action. Thus, the Ohio Action represents an alternative forum in which Highland Park could properly assert its claims against Defendants without undue prejudice to Wells Fargo and Defendants.

Dismissal of this New York Action would also further the Court's and the public's interest in avoiding duplicative litigation and in "settling disputes by wholes." *See Evergreen Park Nursing & Convalescent Home, Inc., supra,* 417 F.2d at 1116. If the New York Action is permitted to proceed, it is very likely that additional litigation will ensue concerning which entity is entitled to collect on any judgment rendered in the New York Action. Moreover, if the New

York Action proceeds simultaneously with the Ohio Action, there is a strong possibility that Defendants would be subject to multiple and/or inconsistent judgments based upon essentially the same obligations. Furthermore, dismissing this New York Action will encourage Highland Park to intervene in the Ohio Action, thereby promoting the prompt resolution of the entire dispute arising out of Platinum Lodging's alleged defaults of both the Senior Loan and Junior Loan. It should be noted that Defendants in the Ohio Action and Platinum Lodging have moved to join Highland Park as a necessary party in the Ohio Action to compel it to proceed on its claims in a convenient jurisdiction to all parties at issue in this dispute. (*See* Katz Affidavit, at ¶ 13). Thus, dismissing this Action would promote the interests of the courts and the public in providing a complete, consistent and efficient settlement of controversies. Based on the foregoing, and pursuant to Fed. R. Civ. P. 12(b)(7), the Complaint should be dismissed in its entirety.

**POINT II**

**ALTERNATIVELY, THE NEW YORK ACTION SHOULD
BE STAYED PENDING COMPLETION OF THE OHIO ACTION**

A motion to stay a federal court action may be granted where a similar action is pending in another court. 5C WRIGHT & MILLER § 1360 at 87 (West 2004 and Supp. 2008). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997). Furthermore, Federal Courts have the discretion to grant pre-answer motions to stay cases, notwithstanding that they may fall within federal jurisdiction, in favor of a parallel state court action. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-96, (1942); *see generally Lasala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) ("[T]he decision whether to issue a

stay is firmly within a district court's discretion.") (citations omitted); 5A WRIGHT & MILLER §

1360.

A movant who seeks a stay should demonstrate the "hardship or inequity in being

required to go forward." *Lasala*, 399 F. Supp. 2d at 427; *Katz v. Feinberg*, Case No. 99 Civ.

11705 (CSH), 2001 U.S. Dist. LEXIS 16116, at *7 (S.D.N.Y. Sept. 24, 2001).  In evaluating

whether any such hardship or inequity exists, New York Federal Courts employ the following

five-factor analysis: (1) the private interests of the plaintiffs in proceeding expeditiously with the

civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private

interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of

persons not parties to the civil litigation; and (5) the public interest. *Kappel v. Comfort*, 914 F.

Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting *Volmar Distribs. v. New York Post Co.*, 152 F.R.D.

36, 39 (S.D.N.Y. 1993)); *Lasala*, 399 F. Supp. 2d at 427.  In balancing these "*Kappel*" factors on

a case-by-case basis, "the basic goal is to avoid prejudice." *Kappel,* 914 F. Supp. at 1058.

A.    **The Relevant Contractual Agreements and the Pending**
      **Ohio Action Warrant a Stay of the New York Action**

Contractual agreements which govern a party's ability to recover in a lawsuit may be

relied upon by the Court in granting a motion to stay pending the outcome of a related action.

*See Katz v. Feinberg*, Case No. 99 Civ. 11705 (CSH), 2001 U.S. Dist. LEXIS 16116 (S.D.N.Y.

Sept. 24, 2001).  The Southern District of New York's decision in *Katz v. Fienberg,* 2001 U.S.

Dist. LEXIS 16116, is analogous to the instant Action and instructive.  In *Katz v. Fienberg*, the

plaintiff and defendant were parties to a Purchase Agreement with an un-named third party, who

was not joined in the lawsuit. *Id.* at *2.  Upon the Court's order entering judgment in favor of

the plaintiff and requiring defendant to pay contractual damages plus interest as well as post-

judgment interest, the defendant moved to stay enforcement of the judgment pending the

outcome of a separate arbitration proceeding between the third party and the plaintiff on the grounds that the outcome of that arbitration would permit the defendant to "withhold all or part of the Judgment funds." *Id.* The defendant based his argument on two contractual terms allowing the judgment in the legal action to be "set-off" by any judgment in the separate arbitration. *Id.* at *3.

In granting the defendant's motion, and ordering a stay of the legal action pending the outcome of the separate arbitration proceeding, the *Katz* Court found that there was a "genuine" "threat of injury" to the defendant in that, if the full judgment was enforced, and plaintiff collected upon it, the right to set-off under the Purchase Agreement would "become (*sic*) a nullity." *Id.* at *10. The Court also noted that the plaintiff had asserted no significant hardship if the stay issued and that, "given the provision for post judgment interest, it is difficult to see that [the plaintiff] will suffer anything other than inconvenience if the stay issues." *Id.* at *10-*11.[3]

Here, as in *Katz*, two contractual agreements contain terms substantially affecting Highland Park's recovery in the New York Action. First, the terms of the Junior Loan itself require Platinum Lodging to remit any remaining proceeds of a foreclosure sale to Highland Park as assignee of the Junior Loan. These remaining foreclosure proceeds would be applied to the principal owed on the Junior Loan, and that amount would reduce the Defendants' obligation, if any, under the Junior Guaranty, and therefore in the New York Action.

Separately, Wells Fargo has alleged Highland Park commenced this Action in order to "circumvent" Wells Fargo's priority as the Senior Lender pursuant to the Senior Loan and Intercreditor Agreement. (Katz Affidavit, Exhibit "E" at 3). As a result, a dispute is developing between Highland Park and Wells Fargo with regard to where the damages awarded in the New

---

[3]  The *Katz* Court also noted that a bond posted by Defendant would help to avoid prejudice to Plaintiff. *Id.* at *10-*11. Should the Court deem it necessary, Defendants in this action are amendable to posting a bond as well.

York Action, if any, should be deposited.  Highland Park contends that the damages it is allegedly entitled to in this Action belong entirely to Highland Park.  (Katz Affidavit at ¶ 15). Thus, if Defendants are ordered to pay a judgment to Highland Park in this Action, it is doubtful whether any amounts Highland Park recovers will be applied to the Senior Loan to "set-off" any amount Defendants may owe.  Accordingly, if, as Wells Fargo has already suggested in its Notice of Claim of Interest, Wells Fargo intends to look to *both* Highland Park and Defendants to satisfy Platinum Lodging and Defendants' obligations under the Senior Loan, Highland Park's actions with respect to the proceeds of any judgment rendered in this Action in its favor will severely prejudice Defendants.  A stay of the New York Action would avoid this uncertainty and any consequent hardship to Defendants.  For all these reasons, the Intercreditor Agreement and Junior Loan support the basis for stay of the instant Action pending the outcome of the Ohio Action.

**B.      Evaluation of the *Kappel* Factors Justify a Stay of This Action Pending Resolution of the Ohio Action**

In determining whether a stay should issue, the Court must be mindful of the ultimate goal of avoiding prejudice to the parties.  *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).  In doing so, and in appropriate cases such as this Action, the Court should consider the following "*Kappel*" factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.  *Id.*  These factors should be analyzed in light of the facts of the particular case.  *Id.* Here, an evaluation of the *Kappel* factors reveals that prejudice will most likely be avoided by staying this Action pending the resolution of the Ohio Action.

1.  **Plaintiff Will Not Be Prejudiced If This Action
    Is Stayed Pending Resolution Of The Ohio Action**

Plaintiff has little substantial interest in proceeding expeditiously with this Action and will not be prejudiced by any delay.  Specifically, the Intercreditor Agreement, which governs Plaintiff's ability to recover in this Action, states that Highland Park may not retain any funds collected in pursuit of any default of the Junior Loan unless and until all amounts due to Wells Fargo (acting as Senior Lender) are completely satisfied.  (*See* "Exhibit "D" to the Katz Affidavit).  Thus, Highland Park is not permitted to deposit any judgment obtained by it in the New York Action until all amounts due and owing to Wells Fargo are paid by virtue of a judgment obtained by Wells Fargo in the Ohio Action against the Defendants herein.

Based on the foregoing, Highland Park will not suffer any prejudice if this Action is stayed pending the outcome of the Ohio Action because any judgment rendered in this Action is contractually required to be paid to Wells Fargo, and the amount due to Wells Fargo can only be established by litigating the Ohio Action.  By awaiting resolution of the Ohio Action, Highland Park would be assured that any recovery herein would be wholly its own.

2.  **Defendants Will Be Severely Prejudiced If They Are Forced
    To Litigate This Action Simultaneously With The Ohio Action**

As set forth in the previous Section, Defendants are now participating in two separate proceedings, which, at worst, will result in two separate judgments against Defendants, rendering Defendants potentially liable to two separate entities (Highland Park and Wells Fargo) for the same monies owed pursuant to the terms of the Senior Loan and the Junior Loan.  Furthermore, Defendants will also be prejudiced if a judgment is rendered in the New York Action with respect to liability on the Junior Loan before a judgment is rendered in the Ohio Action because Defendants will not be able to apply any proceeds from a foreclosure sale to the amount owed on the Junior Loan.  Thus, Defendants would essentially be held personally liable for a greater

amount of Junior Loan debt than they actually owe.  By staying the New York Action, thereby allowing the Ohio Action to proceed to conclusion first, any prejudice to Defendants would be greatly limited.

In addition, by virtue of the Intercreditor Agreement governing the Junior Guaranty and the Senior Guaranty, Defendants' personal assets are being sought for the benefit of the Senior Lender in both the New York Action and the Ohio Action.  It remains to be seen whether their collective personal assets will fully satisfy the Senior Loan debt at issue in the Ohio Action, much less the Junior Loan debt.  Thus, requiring Defendants to appear and defend two simultaneous actions, one of which is in a foreign jurisdiction far from their home, to recover the same assets which will ultimately be required to apply to the Senior Loan serves to unnecessarily deplete their resources and personal assets.

Based on the foregoing, the hardship to Defendants to proceed in two separate but related actions far outweighs any prejudice to Plaintiff should this Court stay the instant New York Action.

**3.    Staying This Action Will Further The Courts' Interests**

Courts have an interest in judicial economy and in avoiding duplicitous litigation. *Bethlehem Steel Corp. v. Tishman Realty & Constr. Co.*, 72 F.R.D. 33, 41 (S.D.N.Y. 1976) (granting stay of first-filed federal court action in favor of California state lawsuit in order to avoid "needless waste of judicial energies").  Furthermore, Courts have an obligation to ensure that the exercise of jurisdiction over a matter does not have an avoidably harmful impact on cases pending before another court. *See Kappel*, 914 F. Supp. at 1059.  In order to avoid multiple litigation and promote judicial economy, the Court should give precedence to the Ohio

Action over the New York Action, which was filed just a few weeks before the Ohio Action was commenced.

In addition, the contractual terms at issue in the Junior Loan and the Intercreditor Agreement provide special circumstances which far outweigh the need to proceed expeditiously in this Action. For example, the terms of the Intercreditor Agreement provide that Highland Park is essentially asserting the same right of recovery that Wells Fargo is asserting in the Ohio Action. Furthermore, it remains to be determined whether the proceeds of a foreclosure action will pay a portion of the principal on the Junior Loan and decrease Defendants' obligation to Highland Park. Staying this action until Wells Fargo has fully recovered in the Ohio Action avoids needless waste of judicial energy.

4. **Non-Party Wells Fargo's Interests Are Protected By A Stay**

Wells Fargo's interests are also protected by a stay. Wells Fargo has decided to proceed on its claims based on alleged default of the Senior Loan obligations in the Ohio Action. Staying the instant New York Action will allow Wells Fargo to collect whatever monies it is entitled to from Defendants, without the risk that Defendants' personal property will be depleted if a judgment is rendered in favor of Highland Park in the New York Action. A stay would also avoid the risk that Highland Park will improperly retain the proceeds of any such judgment in violation of the Intercreditor Agreement.

## **CONCLUSION**

For all of the foregoing reasons and based upon the authorities cited herein, it is respectfully submitted that Defendants' Motion to Dismiss or Stay the Action should be granted, and Defendants should be awarded such other and further relief as this Court deems just and proper under the circumstances.

Dated: New York, New York
      May 23, 2008

Respectfully Submitted,

BAUMAN KATZ & GRILL LLP
*Attorneys for Defendants*

By: _____
      Daniel E. Katz (7222)
28 West 44th Street, Suite 900
New York, New York 10036
(212) 684-0300

Dated: New York, New York
      May 23, 2008

                                    Respectfully Submitted,

                                    HAHN LOESER & PARKS LLP
                                    *Attorneys for Defendants*

                                    By: _____
                                    Marc J. Kessler (2137)
                                    65 East State Street, Suite 1400
                                    Columbus, Ohio 43215
                                    (614) 221-0240

Of Counsel:

Daniel E. Katz (7222)
Yasmin R. Saeed (1921)