Michael Stolper
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY  10103-0001
(212) 506-5000

Attorneys for Plaintiff Highland Park CDO I Grantor Trust, Series A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HIGHLAND PARK CDO I GRANTOR TRUST, SERIES A<br><br>                    Plaintiff,<br><br>    v.<br><br>MATTHEW STUDER, FRED GRAFT, ERNIE MALAS, and PETER CORATOLA,<br><br>                    Defendants. | Case No. 08 Civ. 01670 (NRB) |

**MEMORANDUM OF LAW (I) IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY THE PROCEEDINGS AND (II) WELLS FARGO'S MOTION TO INTERVENE AND DISMISS AND (III) IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .............................................................................................................................4

I.    DEFENDANT'S MOTION TO DISMISS IS BASELESS ..............................................4

    A.    Wells Fargo Is Not A Necessary Party ...............................................................4

    B.    Defendants Cannot Rely on The Intercreditor Agreement ......................................4

    C.    Ohio Is Not An Appropriate Alternative Forum ....................................................5

II.    THERE IS NO BASIS TO STAY THE PROCEEDINGS .................................................6

    A.    Plaintiff Will Be Extremely Prejudiced If This Action Is Stayed............................7

    B.    Defendants Will Not Be Prejudiced Absent A Stay ...............................................7

    C.    A Stay Harms The Public Interest ........................................................................9

III.    WELLS FARGO'S MOTION IS ALSO BASELESS.........................................................9

    A.    Wells Fargo Has No Interest In The Transaction At Issue ...................................10

    B.    The Intercreditor Agreement Does Not Give Wells Fargo the Right to Intervene ......................................................................................................11

        1.    Wells Fargo's Interests Are Not Impaired ..............................................11

        2.    The Intercreditor Agreement Does Not Bar This Action...........................12

IV.    WELLS FARGO'S MOTION TO DISMISS IS GROUNDLESS ...................................16

V.    HIGHLAND IS ENTITLED TO SUMMARY JUDGMENT ..........................................16

CONCLUSION...........................................................................................................................18

i

# TABLE OF AUTHORITIES

PAGE

## CASES

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,
474 F. Supp. 2d 474 (S.D.N.Y. 2007)......................................................................9

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
762 F.2d 205 (2d Cir. 1985).................................................................................4

*AS Mid-America v. Maggie Moore, Inc.*,
No. 94 CIV. 2066 (LMM), 1994 WL. 481915 (S.D.N.Y. Sept. 7, 1994).........................16, 17

*Blom & Voss Gmbh v. M/V Olympia Explorer*,
2006 WL. 2472044 (S.D.N.Y. 2006)....................................................................10

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001)...............................................................................10

*Century Business Credit Corp. v. Salygin*,
No. 03 CV 4846(RO), 2003 WL. 22990061 (S.D.N.Y. Dec. 19, 2003).............................17

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, et al*,
232 F.3d 153 (2d Cir 2000).................................................................................16

*ConnTech Dev. Co. v. Univ. of Connecticut Educ. Properties, Inc.*,
102 F.3d 677 (2d Cir. 1996).................................................................................4

*Fanbrella Inc. v. EDT Products, Inc.*,
185 F.R.D. 144 (E.D.N.Y. 1999)...........................................................................4

*Fort Howard Paper Co. v. William D. Witter, Inc.*,
787 F.2d 784 (2d Cir. 1986).................................................................................9

*Fradkin Bros. Furniture Village, Inc., v. Bradford Trust Co.*,
89 F.R.D. 667 (S.D.N.Y. 1981)...........................................................................4

*Greystone CDE, LLC v. Sante Fe Pointe L.P.*,
No. 07 CV.8377(RPP), 2008 WL. 482291 (S.D.N.Y. Feb. 20, 2008)...........................7, 8

*In re Bank of New England Corp.*,
364 F.3d 355 (Mass. 2004)................................................................................14

*In re Enron Creditors Recovery Corp.*,
380 B.R. 307 (S.D.N.Y. 2008)............................................................................14

*In re Prime Motor Inns, Inc.*,
167 B.R. 261 (Bankr. S.D. Fla. 1994)....................................................................15

ii

*Kappel v. Comfort,*
  914 F. Supp. 1056 (S.D.N.Y. 1996)................................................................6

*Katz v. Finberg,*
  Case No. 99 Civ. 11705 (CSH), 2001 U.S. Dist. LEXIS 16116
  (S.D.N.Y. Sept. 24, 2001)......................................................................8, 9

*Klein v. Adams & Peck,*
  436 F.2d 337 (2d Cir. 1971)....................................................................6

*Lasala v. Needham & Co.,*
  399 F. Supp. 2d 421 (S.D.N.Y. 2005)........................................................6

*Sever v. Glickman,*
  298 F. Supp. 2d 267 (D. Conn. 2004)........................................................4

*Wells Fargo Bank Minnesota v. BrooksAmerica Mortg. Corp.,*
  No. 02 Civ. 4467(HB) 2004 WL. 2072358 (S.D.N.Y. Sept. 14, 2004)...........16, 17

*Winters v. Meyer,*
  442 F. Supp. 2d 82, 83-84 (S.D.N.Y. 2006) ..............................................16

*World Omni Financial Corp. v. Ace Capital Re, Inc.,*
  No. 02 Civ. 0476(RO) 2002 WL. 31016669 (S.D.N.Y. Sept. 10, 2002)................4

## STATE CASES

*Cantor v. Newton,*
  358 N.E.2d 247 (Mass. App. Ct. 1976) ....................................................15

*Guarantee Bank v. Magness Constr. Co.,*
  462 A.2d 405 (Del. 1983) ........................................................................14

*Kinville v. Jarvis Real Estate Holdings, LLC,*
  833 N.Y.S.2d 773 (N.Y. App. Div. 4th Dep't 2007)..................................5, 15

*Kornfeld v. NRX Technologies, Inc.,*
  461 N.Y.S.2d 342 (N.Y. App. Div. 1st Dep't 1983) ......................................5

*Marcus Dairy, Inc. v. Jacene Realty Corp.,*
  638 N.Y.S.2d 779 (N.Y. App. Div. 2d Dep't 1996) ....................................4, 8

*Standard Brands Inc. v. Straile,*
  260 N.Y.S.2d 913 (N.Y. App. Div. 1st Dep't 1965) ....................................5, 7

## FEDERAL STATUTES

Fed. R. Civ. P. 24............................................................................9, 10

This memorandum of law is respectfully submitted by Plaintiff Highland Park CDO I Grantor Trust, Series A ("**Highland**"): (i) in opposition to Defendants' motion to dismiss or stay the proceedings; (ii) in opposition to the motion to intervene and dismiss of Wells Fargo N.A., as Trustee for the Morgan Stanley Capital I Inc. Commercial Mortgage Pass-Through Certificates Series 2006-XLF ("**Wells Fargo**"); and (iii) in support of Plaintiff's cross-motion for summary judgment.

## PRELIMINARY STATEMENT

This is a straight forward debt collection action to enforce a $10.5 million personal guaranty against the four individual Defendants ("**Guarantors**"). The guaranty agreement between Defendants and Highland ("**Mezzanine Guaranty**") gives Highland the express and unconditional right to collect against the Defendants immediately upon the corporate borrower's default of a loan ("**Mezzanine Loan**"), which has occurred. [1]

Defendants have no defense to Highland's breach claim under the Mezzanine Guaranty. All they can do is delay the inevitable judgment and seizure of their assets. With delay in mind, Defendants have moved to dismiss or stay this action based on their allegation that this action is barred by an intercreditor agreement between Highland and Wells Fargo ("**Intercreditor Agreement**"). Highland and Wells Fargo are competing lenders seeking to collect on separate defaulted debt by different borrowers with the same guarantors.[2] Highland

---

[1] Copies of the Mezzanine Loan and Mezzanine Guaranty are attached to the accompanying Declaration of Michael Stolper ("Stolper Decl.") as Exhibits 1 and 2, respectively.

[2] On July 18, 2006, Morgan Stanley, together with its successors and assigns, (in this capacity, the "**Senior Lender**"), and Platinum Lodging, LLC ("**Senior Borrower**") executed a Loan Agreement for a loan in the original principal amount of $28,500,000 ("**Senior Loan**"). Morgan Stanley subsequently assigned to Wells Fargo its interests arising under the Senior Loan and the related senior loan documents. The Senior Loan is secured by, among other things, a hotel near Columbus, Ohio that was formerly a Holiday Inn but is now being operated as the Fort Rapids Hotel (the "**Premises**"). By the terms of the Intercreditor Agreement, Highland is prohibited

1

and Wells Fargo now find themselves in a race to successfully enforce their respective guaranties against these same individuals who presumably have limited assets. Highland initiated this breach of contract action to enforce the Mezzanine Guaranty (the "**Guaranty Enforcement Action**"). Wells Fargo initiated a foreclosure action (on the hotel property) in Ohio state court against the Senior Borrower, to which Wells Fargo recently added a claim for breach against the Guarantors (the "**Foreclosure Action**").

Like Defendants, Wells Fargo seeks to delay Highland's ability to collect against the Guarantors via a motion to dismiss based on the Intercreditor Agreement. Defendants' and Wells Fargo's motions are fatally deficient for a number of reasons.

First, Wells Fargo has no standing or rights under the contract at issue – the Mezzanine Guaranty. New York courts consistently hold that an outsider to a contract in a breach of contract action is not a necessary party.

Second, Defendants have no standing under the Intercreditor Agreement to assert claims on behalf of Wells Fargo. Defendants are not parties to or third party beneficiaries of the Intercreditor Agreement. Further, New York law prevents guarantors from employing subordination agreements as a defense to halt junior creditors from enforcing guaranty agreements.

Third, both motions to dismiss assume that under their interpretation of the Intercreditor Agreement, the appropriate remedy is to dismiss this action. That is not so. Their motions are devoid of a single citation that supports the dismissal of an action because initiating the action allegedly violates a separate contract. At best, Wells Fargo would have a breach of contract claim against Highland, nothing more. To that end, Highland initiated a declaratory

---

from having a lien upon the Premises.

judgment action in this Court (08 Civ. EC5723) (the "**Declaratory Judgment Action**") against Wells Fargo based on the Intercreditor Agreement. Wells Fargo cannot and did not allege that it would be without any recourse against Highland in the unlikely event it prevails in the Declaratory Judgment Action. To dismiss this action would require the Court to grant Wells Fargo its ultimate relief based on a contested interpretation of the Intercreditor Agreement.

        <u>Fourth</u>, on its face the Intercreditor Agreement does not prohibit Highland from enforcing the Mezzanine Guaranty against the Defendants. The movants are inferring a whole host of restrictions that either conflict with a plain reading of the Agreement or simply do not exist. Moreover, their exploitation of the Intercreditor Agreement runs afoul of well settled New York law (the Intercreditor Agreement calls for New York law).

        <u>Finally</u>, to the extent Defendants point to the Foreclosure Action in Ohio as the appropriate forum, they fail to account for the fact that Highland has no interest or basis for participating in the Foreclosure Action, that Defendants had previously designated this jurisdiction in the Mezzanine Guaranty, and that there is nothing duplicative or inefficient about maintaining both this action and the Foreclosure Action.

        From Highland's perspective, Wells Fargo is simply trying to gain an unfair advantage in the race for funds by delaying, through motion practice, Highland's effort to collect against the Guarantors. Defendants share in Wells Fargo's goal and tactic of delay for different but obvious reasons.

        Below we address Defendants' motion and subsequently Wells Fargo's motion before presenting Highland's straightforward cross-motion for summary judgment.

## ARGUMENT

### I.    DEFENDANT'S MOTION TO DISMISS IS BASELESS

#### A.    Wells Fargo Is Not A Necessary Party

One of Defendants' predicates for dismissing the action is that Highland did not join Wells Fargo. As a threshold matter, "Federal courts are extremely reluctant to grant motions to dismiss based on non-joinder." *Fradkin Bros. Furniture Village, Inc., v. Bradford Trust Co.*, 89 F.R.D. 667, 670 (S.D.N.Y. 1981); *see also, World Omni Financial Corp. v. Ace Capital Re, Inc.*, No. 02 Civ. 0476(RO) 2002 WL 31016669 at *2 (S.D.N.Y. Sept. 10, 2002). On the merits, a "nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." *ConnTech Dev. Co. v. Univ. of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 682 (2d Cir. 1996); *see also Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985) (When two claims are separate and distinct, joinder is unnecessary.); *Fanbrella Inc. v. EDT Products, Inc.*, 185 F.R.D. 144, 149 (E.D.N.Y. 1999); *Sever v. Glickman*, 298 F. Supp. 2d 267, 275 (D. Conn. 2004). Wells Fargo is not a party to the contract that is the subject of the current litigation – the Mezzanine Guaranty. Wells Fargo has its own set of loan documents and guaranty from Defendants to which Highland is not a party and upon which Wells Fargo brought the Foreclosure Action. It would have been inappropriate and unfounded for Highland to have joined Wells Fargo in this action.

#### B.    Defendants Cannot Rely on The Intercreditor Agreement

Defendants' entire rationale for adding Wells Fargo is because of Defendants' reliance on the Intercreditor Agreement to which it is neither a party nor third party beneficiary. Defendants' reliance runs afoul of well settled New York law. "A party who enters into an unconditional guarantee of payment may not assert setoffs or defenses which arise independently from the guarantee." *Marcus Dairy, Inc. v. Jacene Realty Corp.*, 638 N.Y.S.2d 779 (N.Y. App.

4

Div. 2d Dep't 1996). Under New York law, "a guarantee agreement is separate and distinct from the contract between lender and borrower." *Kinville v. Jarvis Real Estate Holdings, LLC*, 833 N.Y.S.2d 773, 775 (N.Y. App. Div. 4th Dep't 2007). "However important the construction of the subordination clause may be a between subordinated and senior creditors, its ambiguity affords no defense to an action brought by a creditor on the personal guaranty of the individual defendant[s]." *Standard Brands Inc. v. Straile*, 260 N.Y.S.2d 913, 915 (N.Y. App. Div. 1st Dep't 1965). Subordination clauses do not "in any respect affect either the unconditional nature of the obligation or the right to institute an appropriate proceeding upon default[.]" *Kornfeld v. NRX Technologies, Inc.*, 461 N.Y.S.2d 342 (N.Y. App. Div. 1st Dep't 1983). Furthermore, "[a]ny question in terms of priority as to the rights of the plaintiffs as against other creditors has no bearing upon the plaintiffs' right to judgment as against the individual and corporate defendants. *Id*. at 343. In sum, under New York law, a guarantor cannot use a subordination agreement as a defense to prevent a junior creditor from enforcing a guaranty agreement (<u>i.e.</u>, Defendants cannot use the Intercreditor Agreement to dismiss this action).

C.    **Ohio Is Not An Appropriate Alternative Forum**

Defendants contend that the instant action should be dismissed because the Foreclosure Action in Ohio is the proper forum to resolve the present disputes. This is wholly inconsistent with the agreement Defendants signed. Highland relied upon the forum selection clause of the Mezzanine Guaranty where the Guarantors "irrevocably submit[ed] to the nonexclusive jurisdiction" of New York and "irrevocably waive[ed] any objection" regarding venue or inconvenience. (Stolper Decl. as Exhibit 2 ¶ 11).

Defendants' push for Ohio is also premised on the false assumption that they may be subject to inconsistent judgments if this action proceeds. There is no possibility of a duplicative lawsuit or double recovery. Defendants entered into separate guarantees with

different lenders for different loans. Defendants have been sued in two separate proceedings in accordance with those distinct guaranty agreements. Put simply, Defendants owe money on two different loan guarantees. Defendants have not and cannot point to a single contractual provision with Wells Fargo or the Senior Borrower that penalizes them for repaying Highland pursuant to the Mezzanine Guaranty.

Finally, Defendants fail to establish a nexus between Highland and the Foreclosure Action. Highland admittedly has no property interest in the Premises and does not have standing to participate in Wells Fargo's claims against the Guarantors under the Senior Loan Guaranty.

## II.    THERE IS NO BASIS TO STAY THE PROCEEDINGS

As an alternative to dismissal, Defendants move to stay this action. The movant "bears the burden of establishing its need for a stay of proceedings [and] must make out a clear case of hardship or inequity in being required to go forward." *Lasala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (internal citations and quotations omitted). In deciding whether to grant a stay, courts consider the following five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996). "Courts are generally reluctant to stay proceedings because they are concerned with vindicating the *plaintiff's* right to proceed with its case." *Lasala v. Needham & Co.*, 399 F. Supp. 2d at 428; (emphasis in original). Plaintiff's right to proceed in court should only be denied "under the most extreme circumstances." *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971). Here, there is no

legal or practical reason to prejudice Highland with having to wait until the conclusion of the Forclosure Action in order to pursue its claims in New York.

**A.      Plaintiff Will Be Extremely Prejudiced If This Action Is Stayed**

Defendants are facing lawsuits in New York and Ohio based upon separate loan guarantees. Defendants admit that it "remains to be seen whether their collective personal assets will fully satisfy the Senior Loan debt at issue in the Ohio Action, much less the [Mezzanine] Loan debt." (Defendant's Motion to Dismiss at 17.) Thus, Highland is in a proverbial "rush to the courthouse" to obtain and enforce a judgment before Defendants' limited assets are depleted. A stay of the proceedings at this critical junction would prevent Highland from ever collecting from the Defendants under the Mezzanine Guaranty.

Defendants incorrectly assert that a stay will not prejudice Highland because the Intercreditor Agreement subordinates Highland's right to collect on the Mezzanine Guaranty. As previously noted, a subordination clause "affords no defense to an action brought by a creditor on the personal guaranty of the individual defendant[s]." *Standard Brands Inc. v. Straile*, 260 N.Y.S.2d 913, 915 (N.Y. App. Div. 1st Dep't 1965).[3] In *Greystone CDE, LLC v. Sante Fe Pointe L.P.*, No. 07 CV.8377(RPP), 2008 WL 482291 (S.D.N.Y. Feb. 20, 2008), the court denied Defendant's motion to stay a guaranty enforcement action due to a concurrently pending federal action because, among other things, the claims and contracts in the two actions were not the same.

**B.      Defendants Will Not Be Prejudiced Absent A Stay**

Defendants assert that "requiring Defendants to appear and defend two simultaneous actions…serves to unnecessarily deplete their resources and personal assets."

---

[3] As set forth in Part III.B.2 below, the Intercreditor Agreement itself does not bar Highland's ability to pursue this action.

(Defendant's Motion to Dismiss at 17.)  As explained above, Defendants agreed to this possibility when they guaranteed both the Mezzanine Loan and the Senior Loan.  Defendants owe money on two different loan guarantees.  Therefore, Defendants cannot claim an unfair burden when the Mezzanine Lender and the Senior Lender bring separate suits to enforce their separate and distinct guarantees.

Defendants further contend that they will be prejudiced if this action is allowed to proceed "before a judgment is rendered in the Ohio Action because Defendants will not be able to apply any proceeds from a foreclosure sale to the amount owed on [the Mezzanine] Loan" (Defendant's Motion to Dismiss at 16.)  Under New York law, "[a] party who enters into an unconditional guarantee of payment may not assert setoffs or defenses which arise independently from the guarantee." *Marcus Dairy, Inc. v. Jacene Realty Corp.,* 638 N.Y.S.2d 779 (N.Y. App. Div. 2d Dep't 1996).   Here, Defendants agreed to be held liable for the entire amount of the Mezzanine Loan, without consideration or regard to any outstanding collateral.  Under the Mezzanine Guaranty, Highland is not required to wait until the outcome of a proceeding against the Mezzanine Borrower but may "proceed directly and at once" against the Guarantors. (Stolper Decl. Exhibit 2 ¶ 12).

Moreover, Defendants previously agreed in the Mezzanine Guaranty to litigate this case in New York and cannot now claim that this proceeding creates an undue burden.  *See Greystone CDE, LLC v. Sante Fe Pointe L.P.*, 2008 WL 482291 at *2 (holding defendants to the forum selection clause over claims of prejudice).

Defendants' reliance on *Katz v. Finberg*, Case No. 99 Civ. 11705 (CSH), 2001 U.S. Dist. LEXIS 16116 (S.D.N.Y. Sept. 24, 2001) is misplaced.  The court in *Katz v. Finberg* did not stay the proceedings but stayed enforcement of a judgment based upon the outcome of an

arbitration between a third party and plaintiff. *Katz v. Finberg* 2001 U.S. Dist. LEXIS 16116, at

*2. The defendant in *Katz v. Finberg* had a legal right to set off the judgment by any judgment

from the arbitration. *Id.* at *3. And unlike *Katz v. Finberg*, Defendants have not and cannot

point to a single requirement in the Mezzanine Guaranty that requires Highland to wait before

bringing suit against Defendants.

### C.    A Stay Harms The Public Interest

"The public interest here favors resolving the dispute now, as New York has an

undoubted interest in regulating [a] contract negotiated, executed, and administered in New York

by a New York Company." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge

N. Am., Inc.*, 474 F. Supp. 2d 474, 491 (S.D.N.Y. 2007). "Where there are two competing

lawsuits, the first suit should have priority, absent the showing of balance of convenience in

favor of the second action, or unless there are special circumstances which justify giving priority

to the second." *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir.

1986) (internal citations and quotations omitted). This action was filed prior to the Foreclosure

Action.

A stay of the present action would enable Defendants to circumvent the forum

selection clause of the Mezzanine Guaranty. The complete disregard of a forum selection

provision harms the public interest. The financial markets must be confident that unambiguous

forum selection clauses will be honored

### III.    WELLS FARGO'S MOTION IS ALSO BASELESS

Wells Fargo has moved the court under Fed. R. Civ. P. 24 for intervention as a

matter of right or in the alternative, for permissive intervention. In order to intervene as a matter

of right, Wells Fargo must:

> (1) file a timely motion; (2) **claim an interest relating to the property or transaction that is the subject of the action**; (3) **be so situated that without intervention the disposition of the action may impair that interest**; and (4) show that the interest is not already adequately represented by existing parties.

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001) (emphasis added). "A would-be intervenor's failure to meet all of these requirements justifies the denial of its motion." *Blom & Voss Gmbh v. M/V Olympia Explorer*, 2006 WL 2472044 at *2 (S.D.N.Y. 2006). Wells Fargo cannot satisfy its burden, particularly the second and third elements.[4]

### A.    Wells Fargo Has No Interest In The Transaction At Issue

The interest at issue is Defendants' payment obligation under the Mezzanine Guaranty but Wells Fargo has no interest in the Mezzanine Guaranty. Wells Fargo is not a party to or beneficiary of the Mezzanine Guaranty. In an effort to manufacture an interest in the Mezzanine Guaranty, Wells Fargo contends that "the interests of the Senior Lender and the Mezzanine Lender are in the self-same hotel." (Wells Fargo's Motion to Dismiss at 4). While the Senior Loan resulted in the Senior Lender having a secured interest in the Premises, the Mezzanine Loan did not give the Mezzanine Lender a property lien. In fact, the Intercreditor Agreement makes clear that "the Mezzanine Loan is not secured by a lien on the Premises or any of the other collateral securing the Senior Loan or any other assets of the [Senior] Borrower."[5]

Wells Fargo alternatively contends that the Senior Lender and Mezzanine Lender both made loans to the same borrower, Platinum Lodging, LLC. (Wells Fargo's Motion to

---

[4]  The Federal Rules of Civil Procedure allow permissive intervention if an "applicant's claim or defense and the main action have a question of law or fact in common." *Blom & Voss Gmbh v. M/V Olympia Explorer,* 2006 WL 2472044 at *2 (S.D.N.Y. 2006) (quoting Fed. R. Civ. P. 24(b)). The question of law at issue is whether Defendants defaulted under the Mezzanine Guaranty. Wells Fargo's issue under the Intercreditor Agreement is not common to the case against the Guarantors. For the reasons stated herein, permissive joinder is wholly contradictory to the breach of contract claim at issue.

[5]  A copy of the Intercreditor Agreement is attached to the accompanying Stolper Decl. as Exhibit 4 at 17.

10

Dismiss at 2). That is just false (and also irrelevant). The Mezzanine Lender made a loan to Platinum Lodging Mezz, LLC while the Senior Lender made a separate loan to the Mezzanine Borrower's subsidiary, Platinum Lodging, LLC. (Stolper Decl. Exhibit 1 at 1-2.)

### B. The Intercreditor Agreement Does Not Give Wells Fargo the Right to Intervene

Without a direct interest in the Mezzanine Guaranty, Wells Fargo turns to the Intercreditor Agreement. In its motion to dismiss, Wells Fargo argues that the Intercreditor Agreement bars the Guaranty Enforcement Action and, as a result, should permit intervention. According to Wells Fargo, until the Senior Loan is paid in full, Highland is precluded from enforcing the Mezzanine Guaranty against the Guarantors. There are two fundamental flaws with this premise.

#### 1. Wells Fargo's Interests Are Not Impaired

Wells Fargo's motion boils down to a simple point: Wells Fargo believes that it has a contractual right to assert against Highland under the Intercreditor Agreement. The place for that dispute is in the Declaratory Judgment Action filed by Highland.[6] There is no authority that would allow a non-party to intervene in a breach of contract action based on an alleged breach of another contract that is not the subject of the present action. Not surprisingly, Wells Fargo fails to cite to a single case in support of its proposition. Part of the problem with the relief Wells Fargo is seeking is that, in effect, it is asking this Court today to grant it the ultimate relief it will seek in the Declaratory Judgment Action, i.e., that its interpretation of the Intercreditor Agreement is right and Highland's is wrong. If in the highly unlikely event that Wells Fargo prevails in the Declaratory Judgment Action, at that time Wells Fargo would be entitled to collect from Highland.

---

[6] A copy of the Declaratory Judgment Action complaint is attached to the Stolper Declaration as Exhibit 6.

Certainly there is no allegation that Wells Fargo were to prevail in the Declaratory Judgment Action, Wells Fargo would be without recourse against Highland.  To the point, Highland offered to Wells Fargo to escrow any funds that Highland received from the Guarantors pending resolution of the Declaratory Judgment Action.[7]  Wells Fargo's rejection of this reasonable offer speaks volumes as to the true and sole purpose of Wells Fargo's attempted intervention in this action:  to slow down Highland's effort to collect against the Guarantors and gain an unfair advantage in the race for the Guarantors' limited resources.

Additionally, from the Guarantors' perspective, there is no risk or exposure regardless of the outcome of the Guaranty Enforcement Action.  If the Guarantors were held liable in the Guaranty Enforcement Action, Wells Fargo would have no rights or claims against the Guarantors.

### 2.    The Intercreditor Agreement Does Not Bar This Action

Even if an alleged claim of breach of the Intercreditor Agreement can somehow be found to contain a right upon which intervention may be based, that Agreement does not contain the prohibitions that Defendants and Wells Fargo infer.  In its Notice of Claim of Interest ("Notice of Claim") in which Wells Fargo contends that it is a secured creditor of Highland and that it has a lien upon any collections by Highland, Wells Fargo cites to the following language within Section 9(a) of the Intercreditor Agreement in support:

> If a **Proceeding** shall have occurred or a Continuing Senior Loan Event of default shall have occurred and be continuing, Senior Lender shall be entitled to receive payment and performance in full of all amounts due or to become due to Senior Lender before Mezzanine Lender is entitled to receive any payment on account of the Mezzanine Loan.

---

[7] A copy of the Stipulation is attached to the Stolper Decl. as Exhibit 7.

12

(Stolper Decl. Exhibit 4 at 17) (emphasis added).  That language, however, relates only to a

"Proceeding," which is defined in the Intercreditor Agreement as bankruptcy proceedings against

the Senior Borrower.  (Stolper Decl. Exhibit 4 at 19).  The Guaranty Enforcement Action has

absolutely nothing to do with bankruptcy or the Senior Borrower.

In its subsequently filed motion to dismiss, Wells Fargo quickly disposed of that

interpretation and shifted to another portion of Section 9(a):

> Except (i) as otherwise provided in this Agreement and (ii) in
> connection of the exercise by Mezzanine Lender of its rights and
> remedies with respect to the Separate Collateral in accordance with
> the terms of this Agreement, all of Mezzanine Lender's rights to
> payment of the Mezzanine Loan and the obligations evidenced by
> the Mezzanine Loan Documents are ***hereby subordinated*** to all of
> Senior Lender's rights to ***payment by [Senior] Borrower*** of the
> Senior Loan and the obligations secured by the Senior Loan
> Documents, and Mezzanine Lender shall not accept or receive
> payments (including, without limitation, whether in cash or other
> property and whether received directly, indirectly or by set-off,
> counterclaim or otherwise) ***from [Senior] Borrower*** and/or from
> the Premises prior to the date that all obligations of [Senior]
> Borrower to Senior Lender under the senior Loan Documents are
> paid.

(Stolper Decl. Exhibit 2 at 17) (emphasis added).  Wells Fargo's reliance on Section 9(a) is

misplaced.  The scope of subordination in Section 9(a) is limited to payments made by the <u>Senior</u>

<u>Borrower</u>.[8]  Section 9(a) does not address, let alone preclude, payments to Highland from the

Guarantors.  If movant's interpretation is to be credited, then 9(a) would have expressly

precluded payment from the Guarantors. This omission speaks volumes as to the scope of

Section 9(a) and the Intercreditor Agreement.

---

[8]  In their Motion to Dismiss, Guarantors refer to the potential for Highland to receive payments indirectly from the Foreclosure Action, per Section 2.4.2 of the Mezzanine Loan.  To the extent that Highland is entitled to payment from the Senior Borrower, directly or indirectly, under the Mezzanine Loan, Highland does not dispute that such right is subordinated per Section 9(a) to Wells Fargo.

13

What Section 9(a) does do is specify what is being subordinated (payment from Senior Borrower) and the duration of the subordination (until the Senior Loan is paid). The same cannot be said for the other Section that Wells Fargo relies on in its motion to dismiss. That Section, 8(a), states:

> Mezzanine Lender hereby **subordinates** and makes junior the Mezzanine Loan, the Mezzanine Loan Documents and the liens and securities created thereby, and all rights, remedies, terms and covenants contained therein to (i) the Senior Loan, (ii) the liens and security interests created by the Senior Loan Documents and (iii) all of the terms, covenants, conditions, rights and remedies contained in the Senior Loan Documents, and no amendments or modifications to the Senior Loan Documents or waivers of any provisions thereof shall affect the subordination thereof as set forth in this Section 8(a). Mezzanine Lender hereby acknowledges and agrees that *the Mezzanine Loan is not secured by a lien on the Premises* or any of the other collateral securing the Senior loan or any other assets of the Borrower.

(Stolper Decl. Exhibit 2 at 17) (emphasis added).

Wells Fargo construes the term "subordinates" in this Section to prohibit enforcement of the Mezzanine Guaranty against the Guarantors and, separately, the Mezzanine Lender's ability to collect any payments under the Mezzanine Guaranty from the Guarantors until the Senior Loan is paid in full. This interpretation is materially flawed.

According to Black's Law Dictionary, subordinate simply means "the act or process by which a person's rights are ranked below the rights of others." Ranking below one's rights does not equate to a bar or outright prohibition of enforcing contractual rights, particularly rights not against the borrower or collateral but against the Guarantors. New York courts look to the operative contract to specify which rights are subordinated and how they are subordinated. *See In re Enron Creditors Recovery Corp.*, 380 B.R. 307, 322 (S.D.N.Y. 2008); *see also In re Bank of New England Corp.* 364 F.3d 355, 364 (Mass. 2004) ("The New York courts do not appear to have developed any rules of interpretation that apply specifically to subordination

14

agreements"). And courts construe subordination agreements narrowly. *See Guarantee Bank v. Magness Constr. Co.*, 462 A.2d 405, 409 (Del. 1983) ("In construing the terms of a subordination clause in a purchase money mortgage Delaware law requires such agreements to be strictly construed where their terms are unambiguous.").

   Here, Section 8(a) does not specify what it means for the Mezzanine Loan to be subordinated to the Senior Loan other than in reference to liens on the Premises (see bolded text above), which are not in dispute. Section 8(a) does not address restrictions to enforcing the Mezzanine Guaranty, conditions or duration of any purported restrictions, or when Highland could proceed against the Guarantors. To have imposed such burdens would have required the kind of detail evidenced in other provisions of the Intercreditor Agreement (e.g., Section 9(a)'s restriction on receiving payments from the Senior Borrower) but not found in Section 8(a). This is particularly true where the Mezzanine Guaranty, executed contemporaneously with the Intercreditor Agreement, expressly permits Highland to proceed against the Guarantors without any prohibition. Wells Fargo's interpretation of the Intercreditor Agreement would render null and void the express grant of the Mezzanine Guaranty, and conflict with the plain meaning of Section 9(a), which expressly does not preclude payment from the Guarantors.

   In addition, New York courts have prevented senior lenders from using subordination agreements to impede junior lenders' attempts to collect directly against a guarantor. *See Kinville v. Jarvis Real Estate Holdings, LLC*, 833 N.Y.S.2d 773, 775 (N.Y. App. Div. 4th Dep't 2007) (intervening senior lender alleged that subordination agreement prohibited junior creditor from seeking to recover the debt until the senior loan was satisfied; the court held that subordination agreement did not prevent creditor from seeking payment from the guarantor); *see also, In re Prime Motor Inns, Inc.*, 167 B.R. 261 (Bankr. S.D. Fla. 1994) (holding that that

payments to subordinated creditor under the guaranty agreement were outside the scope of the intercreditor agreement); *Cantor v. Newton,* 358 N.E.2d 247 (Mass. App. Ct. 1976) (finding that the subordination agreement did not prevent the junior noteholder from collecting directly against the guarantor.)

## IV.    WELLS FARGO'S MOTION TO DISMISS IS GROUNDLESS

"On a motion to dismiss for failure to state a claim, federal courts examine solely the facts asserted in the complaint and assume their truth as asserted. *Winters v. Meyer*, 442 F. Supp. 2d 82, 83-84 (S.D.N.Y. 2006). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Id.* at 84. The court "should grant such a motion only if, after viewing plaintiff's allegations in [a] favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir. 1995).

Wells Fargo's motion to dismiss is based upon its flawed and contested interpretation of the Intercreditor Agreement. For the reasons stated above, the Intercreditor Agreement cannot bar enforcement of the Mezzanine Guaranty. The proper forum for the interpretation of the Intercreditor Agreement is the Declaratory Judgment Action.

## V.    HIGHLAND IS ENTITLED TO SUMMARY JUDGMENT

When the basis for the motion is a contract, the court must construct the contractual language according to its plain meaning. *See AS Mid-America v. Maggie Moore, Inc.*, No. 94 CIV. 2066 (LMM), 1994 WL 481915, at *4 (S.D.N.Y. Sept. 7, 1994). Where the contractual language is "unambiguous, a court should construe it as a matter of law and grant summary judgment accordingly." *Id.*; *see e.g., Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, et al,* 232 F.3d 153, 157 (2d Cir 2000); *Wells Fargo Bank*

16

*Minnesota v. BrooksAmerica Mortg. Corp.*, No. 02 Civ. 4467(HB) 2004 WL 2072358, at *4 (S.D.N.Y. Sept. 14, 2004).

The basis for Highland's motion for summary judgment is the Mezzanine Guaranty. Highland is Morgan Stanley's successor in interest as the Mezzanine Lender. (4)[9] Defendants executed the Mezzanine Guaranty for the Mezzanine Loan in which Defendants guarantee to Lender payment of the principal sum of the Mezzanine Loan if the Mezzanine Borrower defaults on the Mezzanine Loan. (5) The Mezzanine Borrower defaulted by not repaying the loan on its maturity date of February 9, 2008. (9) There is now due, owing, and unpaid from Defendants the sum of $10,500,000 plus accrued interest, attorneys' fees and legal costs. (10-11) The Defendants' obligation to pay Highland the entire principal of the Mezzanine Loan is "and shall be absolute under any and all circumstances." (7)

New York courts routinely grant summary judgment to creditors seeking to collect a debt from the guarantors of a loan in default. *See Wells Fargo Bank Minnesota v. BrooksAmerica Mortg. Corp.*, No. 02 Civ. 4467(HB) 2004 WL 2072358, at *11 (S.D.N.Y. Sept. 14, 2004) (Granting plaintiff's motion for summary judgment and finding that defendant unconditionally guaranteed defaulted loan); *Century Business Credit Corp. v. Salygin*, No. 03 CV 4846(RO), 2003 WL 22990061 at *1 (S.D.N.Y. Dec. 19, 2003) (granting summary judgment for plaintiff, finding that defendant guarantors of defaulted loan "unconditionally guaranteed the payment in full of [borrowers] obligations."); *AS Mid-America v. Maggie Moore, Inc.*, No. 94 CIV. 2066 (LMM), 1994 WL 481915 at *3 (S.D.N.Y. Sept. 7, 1994) (same). There is no issue of material fact with respect to the Mezzanine Guaranty. This is a straight-forward debt collection action to which there is no defense.

---

[9] The numbered references are to the paragraphs of Plaintiff's Rule 56.1 Statement.

## CONCLUSION

Based on the foregoing, Plaintiff Highland respectfully requests that the Court deny Defendants' motion to dismiss and Wells Fargo's motion to intervene and dismiss, and grant Highland's cross-motion for summary judgment.

Dated: New York, New York
      June 27, 2008

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
    Michael Stolper

666 Fifth Avenue
New York, NY  10103-0001
(212) 506-5000

Attorneys for Plaintiff Highland Park CDO I
Grantor Trust, Series A

18