Gregory L. Curtner (GC 5395)
Susan I. Robbins (SR 5759)
MILLER, CANFIELD, PADDOCK & STONE, P.L.L.C.
500 Fifth Avenue, Suite 1815
New York, NY 10110
Telephone: (212) 704-4400

Attorneys for Intervenor

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

HIGHLAND PARK CDO I GRANTOR
TRUST, SERIES A,

        Plaintiff,

v.

MATTHEW STUDER, FRED GRAFT,
ERNIE MALAS, AND PETER
CORATOLA,

        Defendants.
_____

Civil Action No. 08 CV 01670

Hon. Naomi Reice Buchwald

**REPLY MEMORANDUM
IN SUPPORT OF MOTION
OF SENIOR LENDER TO
INTERVENE AND ANNEXED
MOTION TO DISMISS THE
COMPLAINT OF MEZZANINE
LENDER**

        Wells Fargo Bank, N.A., as Trustee for the Morgan Stanley Capital I Inc. Commercial Mortgage Pass-Through Certificates Series 2006-XLF (the "Senior Lender") acting through Midland Loan Services, Inc., solely in its capacity as Special Servicer of the Trust, by and through its attorneys, Miller, Canfield, Paddock and Stone, PLLC, for its Reply Memorandum in support of its motion to intervene and annexed motion to dismiss the Complaint of Plaintiff Highland Park CDO I Grantor Trust, Series A (the "Mezzanine Lender") states as follows:

I.      **Introduction**

To understand this case, it is critical that the Court recognize that there are multiple subordination provisions in the Intercreditor Agreement. As a preliminary matter, this requires an understanding of the following types of subordination: (1) subordination of lien, (2) subordination of remedy and (3) subordination of debt (payment).

Subordination of lien commonly arises when a junior creditor agrees to subordinate, or make junior, its lien (typically a mortgage lien) on certain property to a senior creditor's lien against the same property. Although the Intercreditor Agreement contains language subordinating liens, that language is not at issue here. The primary collateral for the Senior Loan is the Columbus, Ohio hotel property. The primary collateral for the Mezzanine Loan is the equity interest of the Borrower and its managing member as owner of the hotel. Senior Lender has initiated a foreclosure action against its primary collateral, *i.e.*, the hotel, whereas Mezzanine Lender has taken no action to proceed against its primary collateral. The Senior Loan Documents include a Guaranty of Payment (the "Senior Guaranty") from Matthew Studer, Fred Graft, Ernie Malas and Peter Coratola (the "Guarantors"). Similarly, the Mezzanine Loan Documents include a Guaranty of Payment (the "Mezzanine Guaranty") from the same individuals. However, a guaranty is an unsecured obligation and as such does not grant any lien rights. Therefore neither the language of the Intercreditor Agreement subordinating lien rights nor the lien subordination cases cited by Mezzanine Lender have any application to this matter.

The primary focus of Senior Lender's motion to dismiss—never addressed by Mezzanine Lender in its response—is the effect of Mezzanine Lender's agreement under Section 8(a) of the Intercreditor Agreement to subordinate all of its rights and remedies under the Mezzanine Loan Documents, including the right to sue on the Mezzanine Guaranty, to the Senior Lender's rights and remedies under the Senior Loan Documents, *i.e.*, Senior Lender's action on the Senior Guaranty. Senior Lender does not contend that Mezzanine Lender can never proceed against the Guarantors on the Mezzanine Guaranty. Rather, Senior Lender contends that Mezzanine Lender agreed to "subordinate and make junior" its rights and remedies and, in so doing, agreed to "stand down"

1

on any suit on the Mezzanine Guaranty until the Senior Loan is paid in full. That is how a mezzanine loan works, and this mezzanine loan was priced accordingly.

Subordination of debt or payments is a common provision in an intercreditor or subordination agreement. These provisions require all payments, regardless whether received by the junior lender or the senior lender, to be delivered to the senior lender and applied against the senior loan until paid in full. Typically, as is the case here, the subordination of payments goes into effect after a loan default and is designed to prevent the "race to the courthouse" which Mezzanine Lender contends is at issue in this action. There is no such race here. The second sentence of Section 9(a) of the Intercreditor Agreement unequivocally requires all payments on the Mezzanine Loan to be paid to the Senior Lender upon a "Senior Loan Event of Default." This obligation is buttressed by the next sentence: "All payments or distributions upon or with respect to the Mezzanine Loan which are received by Mezzanine Lender contrary to the provisions of this Agreement *shall be held in trust by the Mezzanine Lender for the benefit of Senior Lender and shall be paid over to Senior Lender in the same form as so received. . . .*" (emphasis supplied).

In short, Section 8(a) of the Intercreditor Agreement requires a dismissal, without prejudice, of this action until the Senior Loan is paid in full. Mezzanine Lender's proffered Stipulation (Exh. 7 to Stolper Declaration) would require the Senior Lender to "promptly withdraw *with prejudice* its Motion to Intervene and Dismiss the Guaranty Enforcement Action" thereby eviscerating the subordination of remedies provisions of Section 8(a). The proffered Stipulation did require the proceeds of any collection efforts in this action to be held in escrow in an attempt to approximate the trust provisions of Section 9(a)(third sentence) of the Intercreditor Agreement. But under the Stipulation, the funds in the escrow account "shall constitute the property of Highland" whereas the Intercreditor Agreement unequivocally states that monies received by Mezzanine Lender after a "Continuing Senior Loan Event of Default" ". . .shall be held in trust by the Mezzanine Lender *for the benefit of Senior Lender and shall be paid over to the Senior Lender in the same form as so received*. . ." The proffered Stipulation represents Mezzanine Lender's desperate attempt to salvage this action and renegotiate the

2

Intercreditor Agreement in a way that would elevate the Mezzanine Lender from its agreed-upon position as a junior creditor.

In the case at bar, Mezzanine Lender and Senior Lender have clearly and unambiguously agreed that Mezzanine Lender's right to payment and to pursue remedies are subordinated to Senior Lender's rights. Thus, Mezzanine Lender was not entitled to bring the instant action, and any payments that it has received or later receives from the Guarantors are the property of Senior Lender until the Senior Loan is paid in full.

## II. Argument

### A. The Court Should Grant the Senior Lender's Motion to Intervene.

The Mezzanine Lender makes the specious argument that the Senior Lender "has no interest in the transaction at issue." (Mezz. Lender Memo at 10.) This argument puts the cart before the horse, *i.e.*, Mezzanine Lender says it will prevail on its argument, so Senior Lender has no right to even present an argument. Far from defeating a motion to intervene, this over-reaching position by the Mezzanine Lender reinforces the need for Senior Lender to intervene. Clearly, the Mezzanine Lender will not "adequately represent" the interest of the Senior Lender. *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001). Moreover, Senior Lender clearly has an interest in the transaction that is the subject of this litigation – the proceeds of the Mezzanine Loan were used to finance the acquisition and development of the hotel. If the Mezzanine Loan and the Senior Loan were not part of the same transaction, there would have been no need for an Intercreditor Agreement in the first place.

Similarly, the Mezzanine Lender argues that the Intercreditor Agreement does not give the Senior Lender any right to intervene because it is "another contract that is not the subject of the present action." (Mezz. Lender Memo at 11.) The Senior Lender has the right to intervene precisely because the Intercreditor Agreement bars the Mezzanine Lender from the relief and remedy it seeks in this action against the Guarantors or at the very least requires all proceeds to be held in trust for the benefit of the Senior Lender and paid over to the Senior Lender until the Senior Loan is paid in full. As above, the Mezzanine Lender is arguing to this Court that, because it will

3

prevail on its argument, the Senior Lender gets no opportunity even to present its argument and should not be allowed to intervene.[1]  For the reasons stated above and in its moving papers previously filed with the Court, the Senior Lender should be allowed to intervene as of right.

The Mezzanine Lender offers its recently filed Declaratory Judgment Action as "[t]he place for that dispute" regarding the Intercreditor Agreement.  (Mezz. Lender Memo at 11.)  However, if the Senior Lender is not permitted to intervene, that would mean that the Mezzanine Lender could proceed to collect from the Guarantors in this action and only later in the Declaratory Judgment Action would its alleged right to do so be adjudicated.

In the alternative, the Senior Lender has moved to intervene as a permissive intervenor under Fed. R. Civ. P. 24(b)(1)(B).  The Mezzanine Lender argues in a footnote that permissive intervention should not be granted essentially because the questions of law under the Mezzanine Guaranty and the Intercreditor Agreement are not the same.  (Mezz. Lender Memo at 10 n. 4.)  This does not make any sense: the Mezzanine Lender wants to proceed against the Guarantors under the Mezzanine Guaranty and the Intercreditor Agreement bars the Mezzanine Lender from so proceeding.  Only in the most literal and meaningless sense are these issues of law different. There is clearly a legal connection between the Mezzanine Guaranty and the Intercreditor Agreement. For these reasons and those stated in its moving papers, the Senior Lender has satisfied the required showing for permissive intervention.

  **B.** **The Court Should Grant Senior Lender's Motion to Dismiss, or, in the Alternative, Stay This Action**

Under New York law, "the intention of the parties may be gathered from the four corners of the instrument and should be enforced according to its terms." *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007). When the terms of a contract are "clear and unambiguous, the intent of the parties must be found with the four corners of the contract." *Costello v. Casale*, 281 A.D.2d 581, 583 723 N.Y.S.2d 44 (2001).

---

[1] The Mezzanine Lender does not dispute the timeliness of the Senior Lender's motion to intervene.

4

Section 8(a) of the Intercreditor Agreement contains the following clear and unambiguous subordination of remedy provision (emphasis added):

> **Mezzanine Lender hereby subordinates and makes junior** the Mezzanine Loan, **the Mezzanine Loan Documents** and the liens and securities created thereby, **and all rights, remedies, terms and covenants contained therein to** (i) the Senior Loan, (ii) the liens and security interests created by the Senior Loan Documents and (iii) **all of the terms, covenants, conditions, rights and remedies contained in the Senior Loan Documents**, and no amendments or modifications to the Senior Loan Documents or waivers of any provisions thereof shall affect the subordination thereof as set forth in this Section 8(a). Mezzanine Lender hereby acknowledges and agrees that the Mezzanine Loan is not secured by a lien on the Premises or any of the other collateral securing the Senior Loan or any other assets of the Borrower.[2] (Exh. C at 17.)[3]

Subordination of remedy is a simple concept. As cited in Mezzanine Lender's response memorandum, Black's Law Dictionary defines "subordination" as "the act or process by which a person's rights are ranked below the rights of others." (Mezz. Lender Memo at 14). Hence, a subordination of remedy is simply an agreement placing one entity's right to pursue remedies below the rights of another entity to pursue remedies. In the instant case, the Mezzanine Lender unambiguously agreed to "subordinate[] and make[] junior" its remedies.

Subordination of remedy is therefore an inherently temporal concept (unlike subordination of lien). That is, the only way to protect Senior Lender's rights as bargained for in the Intercreditor Agreement is to allow Senior Lender to proceed to judgment and collect in full on the Senior Guaranty – all of this must occur *before* Mezzanine Lender can bring an action to enforce the Mezzanine Guaranty. Otherwise, the above-quoted subordination of remedy is effectively read out of the agreement.

In its Memorandum, Mezzanine Lender focuses on the second sentence of 8(a) in which it acknowledges "that the Mezzanine Loan is not secured by a lien on the Premises." This attention is misleading at best. Senior Lender has never suggested that the Mezzanine Loan is secured by the Premises, and this reference to subordination of lien is irrelevant to this case (See Introduction).

---

[2] In its Memorandum of Law, Mezzanine Lender focuses on the fact that the Senior Borrower (Platinum Lodging, LLC) and the Mezzanine Borrower (Platinum Lodging Mezz, LLC) are different entities. However, this distinction is irrelevant to construing the contractual provisions of the Intercreditor Agreement that govern this case. There is nothing in Section 8(a) or 9(a) that is in any way dependent on, restricted by or defined in terms of the identity of the respective borrowers. These sections are clear and unambiguous without reference to the identity of the borrowers. The Mezzanine Lender is asking the Court to insert terms into this section of the Intercreditor Agreement that are not there, were not negotiated for and were not agreed upon by the Senior and Mezzanine Lenders.

[3] Exhibits herein refer to those accompanying the Curtner Declaration, docket number 25, filed 6/10/08.

5

Mezzanine Lender cites *Kinville v. Jarvis Real Estate Holdings, LLC* for the proposition that a senior lender cannot use an Intercreditor Agreement to block a junior lender's suit on a guaranty. 833 N.Y.S.2d 773 (N.Y. App. 2007). This case is easily distinguished based on the terms of its subordination agreements. In *Kinville*, two subordination agreements barred the plaintiff junior lender from "init[iating] or participat[ing]" in any action against the borrower. *Id.* at 775. The court found that the guarantor was not immune from suit because the relevant provision only referred to the borrower. Section 8(a) of the instant Intercreditor Agreement is much broader in scope than the agreements at issue in *Kinville*. Specifically, 8(a) subordinates the Mezzanine Loan, the Mezzanine Loan Documents and **all** of Mezzanine Lender's rights and remedies under the Mezzanine Loan Documents to the Senior Loan Documents and all of Senior Lender's rights and remedies contained therein. These defined terms expressly encompass the Mezzanine Guaranty;[4] the only meaningful "right or remedy" under the Mezzanine Guaranty is a suit for collection. Any contrary argument is absurd.

Both Mezzanine Lender and Senior Lender clearly have a collection remedy against the Guarantors. However, Mezzanine Lender's collection remedy has been subordinated to Senior Lender's collection remedy. Therefore, Mezzanine Lender cannot pursue its remedy against Guarantors until Senior Lender has brought suit,[5] obtained a final adjudication against the Guarantors and collected its debt in full. Mezzanine Lender's complaint must therefore be dismissed, albeit without prejudice.

The Mezzanine Lender makes the strange argument that the Intercreditor Agreement does not bar its action against the Guarantors because no bankruptcy proceedings have been initiated. (Mezz. Lender Memo at

---

[4] "Mezzanine Loan Documents" is defined in the Intercreditor Agreement to include "all documents and instruments set forth on Exhibit C." (Exh. C. at 5). Exhibit C to the Intercreditor Agreement expressly includes the "Guaranty of Payment and Guaranty of Recourse Obligations made by Guarantor for the benefit of Mezzanine Lender in connection with certain obligations under the Mezzanine Loan." (Exh. C. at C-1).
"Senior Loan Documents" is defined in the Intercreditor Agreement to include "the instruments and documents set forth on Exhibit B hereto." (Exh. C. at 8). Exhibit B to the Intercreditor Agreement expressly includes the "Guaranty of Payment and Recourse Obligations made by Guarantor for the benefit of Senior Lender in connection with certain obligations under the Senior Loan." (Exh. C at B-1).

[5] As part of its ongoing foreclosure litigation in Ohio, Senior Lender has brought suit to enforce its guaranty against Defendant Guarantors. There is a pending motion for summary judgment against these same Guarantors in the Ohio action. *See* Franklin County Court of Common Pleas, Case No. 08 CVE 0303668.

12-13.) In so doing, the Mezzanine Lender quotes the following language from Section 9(a) of the Intercreditor Agreement:

> If a **Proceeding** shall have occurred or a Continuing Senior Loan Event of Default shall have occurred and be continuing, Senior Lender shall be entitled to receive payment and performance in full of all amounts due or to become due to Senior Lender before Mezzanine Lender is entitled to receive any payment on account of the Mezzanine Loan.

(Mezz. Lender Memo at 12 (emphasis by Mezzanine Lender)). What makes the argument strange and untenable on its face is that the Mezzanine Lender then baldly and falsely states that this language "relates only to a 'Proceeding' which is defined in the Intercreditor Agreement as bankruptcy proceedings against the Senior Borrower." (Mezz. Lender Memo at 13.) Inexplicably, the Mezzanine Lender completely overlooks the **Continuing Senior Loan Event of Default**[6] which, in the alternative to bankruptcy proceedings, triggers the Senior Lender's contractual entitlement "to receive payment and performance in full of all amounts due or to become due to Senior Lender <u>before Mezzanine Lender is entitled to receive any payment on account of the Mezzanine Loan</u>." (Mezz. Lender Memo at 12, emphasis supplied.).

This contractual entitlement is so clear and unambiguous that perhaps it is not so strange after all that the Mezzanine Lender wants to rewrite the Intercreditor Agreement to delete the reference to the Continuing Senior Loan Event of Default. However, this is precisely the sort of rewriting of the parties' contract that courts eschew. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990).

Apart from granting the Senior Lender's motion to dismiss, the only alternative ways to resolve the dispute over the Intercreditor Agreement without prejudicing the Senior Lender (and possibly the Guarantors) are to (1) stay the present matter until a decision in the Declaratory Judgment Action is reached and the Court declares

---

[6] The Intercreditor Agreement provides the following definition:

> "<u>Continuing Senior Loan Event of Default</u>" means an Event of Default under the Senior Loan for which (1) Senior Lender has provided notice of such Event of Default to Mezzanine Lender in accordance with <u>Section 11(a)</u> of this Agreement and (ii) the cure period provided to Mezzanine Lender in <u>Section 11(a)</u> of this Agreement has expired.

(Exh. C at 3). The Senior Lender provided the requisite notices of default on February 6, 2008 and February 12, 2008. The Mezzanine Lender's opportunity to cure default under Section 11(a) expired without cure on February 21, 2008. Instead, the Mezzanine Lender improperly filed its complaint against the Guarantors on February 20, 2008, in violation of the Intercreditor Agreement and without notice to the Senior Lender.

who has the rights under the Intercreditor Agreement to pursue the Guarantors, or (2) alternatively to impose a trust on the Mezzanine Lender as discussed below.

      **C.    In the Alternative, Section 9(a) of the Intercreditor Agreement Subordinates Mezzanine Lender's Rights of Payment to Senior Lender's Rights of Payment and Directs Imposition of a Trust.**

Section 9(a) of the Intercreditor Agreement contains the following clear and unambiguous subordination of payment provision: "all of Mezzanine Lender's rights to payment of the Mezzanine Loan and the obligations evidenced by the Mezzanine Loan Documents are hereby subordinated to all of Senior Lender's rights to payment by Borrower of the Senior Loan and the obligations secured by the Senior Loan Documents." (Exh. C at 17.)

Section 9(a) then goes on to state in its second and third sentences that:

> If a Proceeding shall have occurred or a Continuing Senior Loan Event of Default shall have occurred and be continuing, Senior Lender shall be entitled to receive payment and performance in full of all amounts due or to become due to Senior Lender before Mezzanine Lender is entitled to receive any payment on account of the Mezzanine Loan.
>
> **All payments or distributions upon or with respect to the Mezzanine Loan** which are received by Mezzanine Lender contrary to the provisions of this Agreement **shall be received and held in trust by the Mezzanine Lender for the benefit of Senior Lender and shall be paid over to Senior Lender** in the same form as so received (with any necessary endorsement) to be applied (in the case of cash) to, or held as collateral (in the case of non-cash property or securities) for, the payment or performance of the Senior Loan in accordance with the terms of the Senior Loan Documents.

(Exh. C. at 17-18, emphasis added).[7]

Importantly, "Mezzanine Loan Documents" is defined to include the guaranty the Mezzanine Lender relies on.[8] Moreover, "Senior Loan Documents" is defined to include the guaranty that Senior Lender relies on.[9] Thus, the language of the Intercreditor Agreement (in the first sentence of 9(a)) expressly includes the Mezzanine Guaranty among those rights of the Mezzanine Lender subordinated to Senior Lender's rights.

It could not be any clearer that the Mezzanine Lender's rights to payment are subordinated to the rights of the Senior Lender. This was the express agreement of the parties: "If … a Continuing Senior Loan Event of

---

[7] The third sentence is conspicuously absent from Mezzanine Lender's Memorandum of Law. As to the second sentence Mezzanine Lender disingenuously argues that 'Proceeding' means a bankruptcy action, knowing full well that no bankruptcy has been filed but there is indisputably a "Continuing Senior Loan Event of Default." *See* Section II(B)(4), *infra*.
[8] *See* Footnote 4.
[9] *See* Footnote 4.

8

Default shall have occurred and be continuing, Senior Lender shall be entitled to receive payment and performance in full of all amounts due or to become due Senior Lender before Mezzanine Lender is entitled to receive any payment on account of the Mezzanine Loan." (Exh. C at 17-18.) This court should appropriately recognize this lawsuit for what it is: the Mezzanine Lender's attempted "end-around" the Intercreditor Agreement which subordinates all of the Mezzanine Lender's rights to pursue remedies and to receive payments.[10]

The Mezzanine Lender is improperly attempting to turn the Intercreditor Agreement upside down by turning the competing claims against the Guarantors into a race against the Guarantors' assets. All payments are due to the Senior Lender until the Senior Loan is paid in full.

The Mezzanine Lender's proposal to allow this action against the Guarantors to continue and hold the proceeds in an escrow account merely restates an existing obligation of the Mezzanine Lender. That is, if Mezzanine Lender receives any payments or distributions from the Mezzanine Loan, the third sentence of Section 9(a) of the Intercreditor Agreement unequivocally requires that such funds be held in trust by the Mezzanine Lender for the benefit of Senior Lender.

Therefore, any payments or distributions collected by the Mezzanine Lender from the Guarantors, either pursuant to this action or otherwise, are the rightful property of the Senior Lender, and must be held in trust for Senior Lender's benefit and paid to Senior Lender until the Senior Loan is paid in full.

In sum, the Mezzanine Lender wants the Court to ignore the plain language of the Intercreditor Agreement, insert language that was not bargained for or agreed to, and delete language that is present in the Intercreditor Agreement. This request is untenable given New York law regarding interpretation of contracts. "[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Reiss v. Financial Performance Corp.*, 97

---

[10] The Mezzanine Lender also had the right to purchase the Senior Lender's Senior Loan at a discount (without the yield maintenance premium) under Section 13 of the Intercreditor Agreement. (Exh. C at 22-23.) The Mezzanine Lender's failure to exercise this right is evidence that the Mezzanine Lender is merely attempting to circumvent the superior rights of the Senior Lender.

9

Case 1:08-cv-01670-NRB   Document 30   Filed 07/14/2008   Page 11 of 12

N.Y.2d 195, 199, 764 N.E.2d 958 (2001). *See also In re Musicland Holding Corp.*, 374 B.R. 113, 121 (Bktcy. S.D.N.Y. 2007)("The Court cannot rewrite the contract to fulfill [plaintiffs'] unspoken expectation").

### III. Conclusion and Relief Requested

The Senior Lender requests that this Court award the Senior Lender its costs and attorneys fees and:

A. Allow the Senior Lender to intervene (for appeal purposes, if necessary) and dismiss the Complaint of the Mezzanine Lender without prejudice until the Senior Loan is paid in full, or in the alternative,

B. Allow the Senior Lender to intervene and stay this action pending a decision in the declaratory judgment action which is pending in this court between the Mezzanine Lender and the Senior Lender, or in the alternative,

C. Allow the Senior Lender to intervene and declare that all proceeds received by the Mezzanine Lender, including all proceeds from the collection efforts in this action "shall be received and held in trust by the Mezzanine Lender for the benefit of the Senior Lender and shall be paid over to the Senior Lender in the same form as so received" until the Senior Loan is paid in full.

Dated: July 14, 2008

    Respectfully submitted,

    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

    By: s/Gregory L. Curtner
        Gregory L. Curtner (GC 5395)
        Counsel for Intervenor Wells Fargo Bank, N.A., as Trustee
        Miller, Canfield, Paddock and Stone, P.L.C.
        500 Fifth Avenue, Suite 1815
        New York, New York 10110
        Telephone: (212) 704-4400
        Email: curtner@millercanfield.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2008, I electronically filed the foregoing paper with the Clerk of the court using the ECF system, which will send notification of such filing to the following:

Michael T. Stolper, Esq. mstolper@orrick.com;

Dennis Michael O'Bryan, Esq. dob@obryanlaw.net;

Yasmin Rukhshanda Saeed, Esq. ysaeed@bkgllplaw.com; and

Marc J. Kessler, Esq. mkessler@hahnlaw.com

s/Gregory L. Curtner
Gregory L. Curtner (GC 5395)
Counsel for Intervenor Wells Fargo Bank, N.A., as Trustee for the Morgan Stanley Capital I Inc. CommercIntercreditor Agreementl Mortgage Pass-Through Certificates Series 2006-XLF
Miller, Canfield, Paddock and Stone, P.L.C.
500 Fifth Avenue, Suite 1815
New York, New York 10110
Telephone: (212) 704-4400
Email: curtner@millercanfield.com

BHLIB:603503.6\131318-00022