UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
HIGHLAND PARK CDO I GRANTOR
TRUST, SERIES A,

              Plaintiff,         Case No. 08 CV 01670 (NRB)

   v.

MATTHEW STUDER, FRED GRAFT,
ERNIE MALAS, AND PETER
CORATOLA,

              Defendants.
-------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
OR STAY THE PROCEEDINGS AND IN OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ............................................................................................................................ 3

    I.     DEFENDANTS' MOTION TO STAY SHOULD BE GRANTED
         AND PLAINTIFF'S CROSS-MOTION SHOULD BE DENIED ......................... 3

         A.     A Question of Fact Exists With Respect To Highland Park's
               Standing in This Lawsuit, Precluding Summary Judgment in Its Favor ... 3

         B.     Highland Park's Assertion That Defendants May
               Not Assert the Defense of Payment as Raised in
               Defendants' Motion to Stay the New York Action is Erroneous ............... 8

         C.     The Forum Selection Clause in The
               Junior Guaranty is Not Controlling............................................................ 10

         D.     Highland Park's Case Law is Inapplicable
               To the Case at Bar....................................................................................... 12

    II.    ASSUMING *ARGUENDO* THIS COURT PERMITS THIS ACTION TO
         GO FORWARD, WELLS FARGO SHOULD BE JOINED AS A PARTY ....... 13

         A.     Wells Fargo Has Met the Requisite
               Standards for Permissive Intervention ....................................................... 13

         B.     Proceeding in This Action Without Wells Fargo Will Likely
               Lead to Multiple and/or Inconsistent Judgments ...................................... 14

CONCLUSION......................................................................................................................... 15

# TABLE OF AUTHORITIES

## A. CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................................... 3

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970) ........................................................... 3

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York*, 762 F.2d 205, 209 (2d Cir. 1985) ................ 12

*Beal Savings Bank v. Sommer,* 8 N.Y.3d 318, 324 (N.Y. 2007) ..................................................... 9

*Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) ........................................... 3

*Bethlehem Steel Corp. v. Tishman Realty & Constr. Co.*
72 F.R.D. 33, 41 (S.D.N.Y. 1976) ................................................................................................. 11

*Boggess v. Columbian Rope Co.,* 167 F. Supp. 854, 856-857 (S.D.N.Y. 1958) ........................... 11

*Brooks v. Glagg Bros., Inc.*, 63 F.R.D. 409, 415 (S.D.N.Y. 1974) ................................................ 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ........................................................................ 3

*Cent. States Southeast & Southwest Areas Health & Welfare Fund
v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 197-198 (2d Cir. 2005) ...................... 3, 4

*Conntech Dev. Co. v. University of Conn. Educ. Props.*, 102 F.3d 677, 683 (2d Cir. 1996) ........ 12

*Fanbrella, Inc. v. EDT Prods.*, 185 F.R.D. 144, 146 (E.D.N.Y. 1999) ......................................... 12

*HBC Bank USA v. Bayford*, Case No. 3:07-CV-428,
2007 U.S. Dist. LEXIS 86215, at *6 (S.D. Ohio Nov. 21, 2007) ................................................ 4, 5

*In re: Enron Corp.*, 302 B.R. 463, 469 (S.D.N.Y. 2003) ................................................................ 9

*In re Foreclosure Cases*, Case No. 1:07CV2282,
2007 U.S. Dist. LEXIS 84011 (N.D. Ohio Oct. 31, 2007) ........................................................... 4, 5

*Kinville v. Jarvis Real Estate Holdings*
833 N.Y.S.2d 773, 774 (N.Y. App. Div. 4th Dep't 2007) ............................................................. 10

*Kornfeld v. NRX Tech's, Inc.*, 461 N.Y.S.2d 342, (N.Y. App. Div. 1st Dep't 1983) .................... 10

*Marcus Dairy, Inc. v. Jacene Realty Corp.*
638 N.Y.S.2d 779, 780 (N.Y. App. Div. 2nd Dep't 1996) .............................................................. 9

*McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 250-51 (S.D.N.Y. 1989) ................... 13

*Midfirst Bank v. Davenport*, Case No. 3:07-CV-405,
2007 U.S. Dist. LEXIS 87741, at *6 (S.D. Ohio Nov. 29, 2007) ................................................ 5

*Novastar Mortgage, Inc. v. Grooms*, Case No. 3:07-CV-395,
2007 U.S. Dist. LEXIS 86214, at *6 (S.D. Ohio Nov. 21, 2007) ................................................ 5

*Rayco Mfg. Co. v. Chicopee Mfg. Co.*, 148 F. Supp. 588, 593 (S.D.N.Y. 1957) ........................ 11

*SEC v. United States Realty & Improvment Co.*, 310 U.S. 434, 459 (1940) ............................. 13

*Sever v. Glickman*, 298 F. Supp. 2d 267, 275 (D. Conn. 2004) ................................................ 12

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State*
454 U.S. 464, 474-75 (1982) ........................................................................................................ 4

*Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ............................ 4

*Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986) ............................................ 4

**B.   RULES**

Fed. R. Civ. P. 19(a) .................................................................................................................. 14

Rule 19(a)(1)(B)(ii) .................................................................................................................... 15

Fed. R. Civ. P. 24(b) .................................................................................................................. 13

Fed. R. Civ. P. 24(b)(1)(B) ........................................................................................................ 13

Fed. R. Civ. P. 56(f) ................................................................................................................... 13

**C.   SECONDARY SOURCES**

6 MOORE'S FEDERAL PRAC. 3D §24.11 (3d ed. 2008) ............................................................... 12

## **PRELIMINARY STATEMENT**

This reply memorandum of law is respectfully submitted by Defendants Matthew Studer, Fred Graft, Ernie Malas, and Peter Coratola (collectively, "Defendants") in further support of Defendants' motion for an Order, dismissing Plaintiff Highland Park CDO I Grantor Trust, Series' ("Plaintiff" or "Highland Park") Complaint, or, in the alternative, staying the action pending the outcome of a lawsuit filed by the Senior Lender, non-party Wells Fargo Bank, N.A. ("Wells Fargo" or "Senior Lender"), in an Ohio Trial Court, entitled Wells Fargo Bank, N.A. v. Platinum Lodging LLC, et al., Case No. 08CVE03-03668 (Franklin Cty.) (the "Ohio Action").[1] This Reply Memorandum of Law is also submitted in opposition to Plaintiff's Cross-Motion for Summary Judgment, and in support of Wells Fargo Bank N.A.'s ("Wells Fargo") Motion to Intervene (the "Wells Fargo Motion") in this action.

For the reasons set forth below, Defendants' Motion to Stay the Action should be granted, and Plaintiff's Cross-Motion for Summary Judgment should be denied in its entirety, and this action should be dismissed. Specifically, at this early stage of the litigation, before Defendants have even answered Highland Park's Complaint and no discovery has been undertaken, Highland Park has moved the Court for summary judgment based on the mistaken belief that this action involves a simple debt collection matter. However, whether this Court has jurisdiction over Highland Park's claims has not been determined. Critically, Plaintiff has failed to establish whether it has any rights in and to the Junior Mezzanine Loan Agreement ("Junior Loan" or the "Junior Loan Agreement") at issue, or the related junior note (the "Junior Note") or Junior Mezzanine Guaranty of Payment and Guaranty of Recourse Obligations of Borrower (the "Junior Guaranty") (the Junior Loan, Junior Note and Junior Guaranty shall be collectively

Col - 126987.1                    1

referred to as the "Junior Loan Documents"), or whether any purported interest has priority over Wells Fargo's interest in the Junior Loan. The Junior Loan Agreement expressly provides that any assignment of same must be in writing. Similarly, the Junior Guaranty provides than any modification thereof must be in writing. Highland Park has uncontrovertibly failed to present any documentation of a proper written assignment of all of the original lender's rights in and to the Junior Loan Documents, including but not limited to the Junior Guaranty. Instead, Plaintiff's supporting exhibits actually *create* a question of fact as to what, if any, interest it has in the Junior Loan Documents. Further, Plaintiff's arguments that Defendants may not rely on the Intercreditor Agreement to support its Motion, and Plaintiff's reliance on the forum selection clause in the Junior Guaranty exclusively, are fundamentally flawed. Based on the foregoing, at a minimum, the action should be stayed pending the outcome of the Ohio Action.

Assuming *arguendo* that this Court permits this action to go forward, and in support of the Wells Fargo Motion, Wells Fargo should be permitted to intervene and joined as a party in this lawsuit because (i) Wells Fargo is a necessary party who has sought permissive intervention in this matter; and (ii) Wells Fargo and Highland Park share a common question of mixed law and fact as to who is entitled to recover any judgment entered in this lawsuit against Defendants.

### STATEMENT OF FACTS

For the sake of brevity, the Court is respectfully directed to the Affidavit of Daniel E. Katz, Esq., duly sworn to on May 23, 2008, and submitted in support of Defendants' Motion to Dismiss the Complaint or Stay the Proceedings, for a recitation of the facts and circumstances underlying this action.

---

[1] To the extent Wells Fargo prevails in its Motion to Intervene in this action, Defendants' motion to dismiss the action for failure to name a necessary party will be rendered moot. Accordingly, Defendants support Wells Fargo's Motion.

Col - 126987.1                                       2

## ARGUMENT

## POINT I

### DEFENDANTS' MOTION TO STAY SHOULD BE GRANTED AND PLAINTIFF'S CROSS-MOTION SHOULD BE DENIED

A.     **A Question of Fact Exists With Respect To Highland Park's Standing in This Lawsuit, Precluding Summary Judgment in Its Favor**

Summary judgment is appropriate only when, viewing all evidence and inferences in the light most favorable to the nonmoving party, there is no genuine dispute as to material facts which may affect the outcome of a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). In addition, the movant bears the initial burden of establishing its entitlement to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant must identify the portions of the pleadings and discovery that demonstrate the absence of a genuine dispute of material fact. *Id.*

It is axiomatic that a plaintiff must have constitutional standing in order for a federal court to have jurisdiction. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). Moreover, there are prudential limitations on a federal court's ability to exercise jurisdiction. *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 197-198 (2d Cir. 2005). The Second Circuit Court of Appeals recently explained the intersection of these two concerns regarding a federal plaintiff's standing and has noted:

> In both dimensions it is founded in concern about the proper - and properly limited - role of the courts in a democratic society. In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the

> standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.

(*Id.*) (citing *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (internal citations omitted)). Accordingly, a plaintiff who invokes federal court jurisdiction must establish, not only that a justiciable controversy exists, but that he or she is the proper proponent of the asserted right and that the right asserted belongs to the claimant rather than to a third party. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 474-75 (1982).

Moreover, a failure to properly assert standing raises questions of a federal court's diversity jurisdiction. *In re Foreclosure Cases*, Case No. 1:07CV2282, 2007 U.S. Dist. LEXIS 84011, at *7, n.3 (N.D. Ohio Oct. 31, 2007). A federal court's jurisdiction is only appropriate under 28 U.S.C. § 1332(a) where there is diversity of citizenship between the parties. A party invoking federal court diversity jurisdiction bears the burden of establishing diversity. *Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986).

With respect to a mortgage lender's standing to file suit, recent federal district court decisions show a distinct trend toward strictly holding such lenders to their burden of proof on their ability to file suit, or, if the lenders cannot meet that burden, dismissing their claims. *See, e.g., In re Foreclosure Cases*, 2007 U.S. Dist. LEXIS 84011 (noting that conclusory statements in affidavits that a plaintiff is the owner of a note and mortgage do not satisfy plaintiff's burden of demonstrating standing at the time of the filing of the Complaint); *HBC Bank USA v. Bayford*,

Case No. 3:07-CV-428, 2007 U.S. Dist. LEXIS 86215, at *6 (S.D. Ohio Nov. 21, 2007) (ordering the plaintiff to produce proof of assignment or risk dismissal of its claim); *Midfirst Bank v. Davenport*, Case No. 3:07-CV-405, 2007 U.S. Dist. LEXIS 87741, at *6 (S.D. Ohio Nov. 29, 2007) (same); *Novastar Mortgage, Inc. v. Grooms*, Case No. 3:07-CV-395, 2007 U.S. Dist. LEXIS 86214, at *6 (S.D. Ohio Nov. 21, 2007) (same). These decisions recognize that a lack of subject matter jurisdiction, prudential standing and diversity jurisdiction results when a plaintiff fails to meet its burden to prove its proper standing. *See, e.g., In re Foreclosure Cases*, 2007 U.S. Dist. LEXIS 84011; *HBC Bank USA v. Bayford*, 2007 U.S. Dist. LEXIS 86215.

Highland Park has failed to establish that it is the party who has suffered any alleged concrete injury in this matter and that no third-party may assert the rights it has claimed in this lawsuit because it has failed to submit any evidence of a written assignment of the original lender's rights in the Junior Loan to Highland Park, as explicitly required by the Junior Loan Documents. Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley") is the lender named on both the Junior Loan and the Junior Guaranty, and Highland Park is not a named entity in any of the agreements at issue. (*See* Exhibits 1 and 2 to the Declaration of Michael Stolper ("Stolper Declaration")). Section 11.27(a) of Junior Loan Agreement provides that "[t]he Lender may assign to one or more Persons all or a portion of its rights and obligations under this Loan Agreement and the Loan *pursuant to a written instrument or instruments* (the "Assignment and Acceptance")." (Stolper Declaration at Ex. 1, § 11.27(a) (emphasis added).) The Junior Guaranty similarly provides that it "may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Lender or Borrower, *but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought*." (*Id.* at

Ex. 2, ¶ 18 (emphasis added).) As such, both the Junior Loan Agreement and the Junior Guaranty require writings evidencing an assignment or modification of the rights and obligations associated with those documents.

Highland Park has offered no evidence of a *written* assignment as required by the clear terms of the terms of the Junior Loan Agreement. Nor has Highland Park offered any evidence of a written modification or "change" to the Junior Guaranty as is required by its terms. Indeed, a review of the documents annexed to Highland Park's Cross-Motion strongly suggests that Highland Park may not actually possess the entire interest it has asserted a right to enforce in this action. For example, in Highland Park's letter notifying Defendants of the Junior Loan Borrower's purported default and demanding payment from Defendants (Exhibit 5 to the Stolper Declaration), Highland Park never states that it is enforcing its rights as the assignee of the original lender's rights in and to the Junior Loan pursuant to a written assignment. To this end, Highland Park's demand letter substantively provides, in an attempt to explain the details of its interest in the Junior Loan, as follows:

> Reference is also made to. . . that certain Mezzanine Loan Sale and Participation Agreement, dated as of December 5, 2006, by and between Morgan Stanley Mortgage Capital Inc., as "Initial Lender," HFT RE CDO 2006-2, Ltd., as "Whole Note Purchaser," HFT RE CDO 2006-2, Ltd. as "PI Participant" and Morgan Stanley Mortgage Capital Inc. as "IO Participant," (the Mezzanine Loan Sale and Participation Agreement"), pursuant to which Initial Lender sold the Mezzanine Note to Whole Note Purchaser and simultaneously therewith, Whole Note Purchaser created two separate certificated pari passu participation interests in the Mezzanine Note, the IO Participation Interest and the PI Participant Interest, and in its capacity as PI Participant, Whole Note purchaser retained the PI Participant Interest and transferred the IO Participation to IO Participant. **As a result of certain other assignments, all interest of Initial Lender, other than the IO Participation, have been assigned to Mezzanine Lender**.

(Stolper Declaration at Ex. 5, Letter from Jeffery D. Hermann dated February 12, 2008 at pp. 2-3 (emphasis added).)

A review of this evidence establishes only that (A) written assignments exist – but only to a different entity named HFT RE CDO 2006-2, Ltd.; and (B) that Highland Park has received a certain *portion* of Morgan Stanley's original interest, i.e. ". . . all interests of Initial Lender other than the IO Participation," ***"[a]s a result of certain other assignments***," which have gone unspecified and unidentified in this matter. (*See* Stolper Declaration at Ex. 5, pp. 2-3 (emphasis added).) This evidence does not establish Highland Park's standing in this action, but rather, it raises a question as to whether Highland Park has the rights it asserts in the Complaint.

Thus, from its own rendition of the purported assignment of the Junior Loan documents, there is no reference to a written agreement assigning it the right to proceed in collection of payment for any purported default of the Junior Loan or Note. Rather, Highland Park vaguely references "certain other assignments" that provide it with the right to demand payment from Defendants. No written assignments were attached to its demand letter. Moreover, the information that is provided indicates that Highland Park does not possess a portion of the rights originally associated with the Junior Note because it was purportedly only assigned the interests of the Initial Lender "other than the IO Participation." Although it is not clear exactly what remaining interests (if any) of the Initial Lender may have been transferred by written assignment to Highland Park after the time it sold its PI interest to a different entity known as the "Whole Note Purchaser," the evidence provided by Highland Park has failed to support a written assignment of its rights associated with the Junior Loan, Junior Note and/or the Junior Guaranty at issue.

Based on the foregoing, Highland Park's failure to properly demonstrate its standing in this matter deprives this Court of subject matter jurisdiction over this suit. Highland Park's Cross-Motion should be denied because there is a genuine dispute regarding its standing to file this suit and a consequent failure to establish the subject matter jurisdiction of this Court. Defendants further submit that Highland Park's claim should be dismissed.[2]

**B.    Highland Park's Assertion That Defendants May Not Assert the Defense of Payment as Raised in Defendants' Motion to Stay the New York Action is Erroneous**

In its opposition to Defendants' Motion to Dismiss the Complaint or Stay the Proceedings, Highland Park alleges that Defendants cannot rely on the Intercreditor Agreement to "assert set-offs or *defenses.* . . ." (*See* Highland Park's Response Brief and Cross Motion at 4-5, 7.) Contrary to Highland Park's contentions, Defendants' reliance on the Intercreditor Agreement in conjunction with the other agreements at issue herein is perfectly proper. Defendants' argument is simply that a stay of this action is appropriate to ensure the order and priority set forth in the Intercreditor Agreement and to avoid any prejudice that will inure to Defendants via inconsistencies that might develop over a potential ruling on payment of the Junior Guaranty at issue in this lawsuit before an Ohio Action ruling on the Senior Guaranty can issue.[3]

---

[2] It should be noted that Highland Park's rush to judgment has complicated these proceedings. As no discovery has been undertaken in this matter, and Defendants have not yet answered Highland Park's Complaint, it is difficult to assess the merits of Highland Park's conclusory statements that an assignment exists to it of Morgan Stanely's rights to the Junior Loan Documents. Should this Court deem it proper, discovery may be undertaken via Fed. R. Civ. P. 56(f) to remedy any difficulties in assessing Highland Park's standing to pursue its claim at the time it filed its Complaint.

[3] Recently, Platinum Lodging has received a letter of intent from a proposed buyer on the water park property that is the purpose of the Junior and Senior Loans at issue in these briefs. As a result, further briefing before this Court regarding payment on any of the loans or guaranties at issue may soon be a moot point whether or not a stay is eventually issued.

Moreover, Highland Park's assertion that Defendants are not permitted to rely on the Intercreditor Agreement is inconsistent with New York Law. Indeed, New York courts have considered the terms of governing lending agreements (in addition to the underlying loan documents at issue) to determine whether or not a lender is properly before a court in the motion to dismiss context. *See, e.g., In re: Enron Corp.*, 302 B.R. 463, 469 (S.D.N.Y. 2003) (considering debtors' and creditors' objections to standing of plaintiff lender's right to file claim when it participated in syndicated lending agreement with multiple lenders and holding that plaintiff lender lacked standing to maintain adversary proceeding). *See also Beal Savings Bank v. Sommer*, 8 N.Y.3d 318, 324 (N.Y. 2007) (affirming motion to dismiss sought by creditors).

Highland Park relies on *Marcus Dairy, Inc. v. Jacene Realty Corp.*, 638 N.Y.S.2d 779, 780 (N.Y. App. Div. 2nd Dep't 1996), in support of the proposition that subordination agreements may not be used as a defense to payment on a guaranty. However, *Marcus Dairy* is distinguishable on its facts and does not hold that set-offs are per-se not allowed in all guaranty collection proceedings. Specifically, the *Marcus Dairy* Court found that the guaranty at issue could not allow for set-offs because "neither the note nor the guarantee made any reference to the inventory sold pursuant to the underlying agreement." *Marcus Dairy, Inc.*, 638 N.Y.S.2d at 780. Conversely, in the instant case, Defendants did not guarantee a given or stated amount of money for payment upon default, as the *Marcus Dairy* defendant had. Rather, Defendants guaranteed payment of "Debt," which is defined as the "principal sum evidenced by the Note and the Loan Agreement...or so much thereof as may be outstanding from time to time..." (Defendants' Motion to Dismiss the Complaint or Stay at p.7, referencing the Junior Guaranty at ¶¶ 1 and 3.) As such, set-offs to allow for credit for any payment toward the principal of the Junior Loan would be permissible in the Junior Guaranty at issue.

Each of the remaining cases Highland Park cited are equally unavailing because they decide this issue in the summary judgment context, are based on the specific language of each subordination agreement or guaranty at issue, and are otherwise inapplicable to Defendants' Motion to Dismiss or Stay. *See* Highland Park's Memorandum of Law (*Kinville v. Jarvis Real Estate Holdings*, 833 N.Y.S.2d 773, 774 (N.Y. App. Div. 4th Dep't 2007) (considering appeal after summary judgment granted and looking to specific language of subordination agreements at issue in order to conclude that they did not apply as bar); *Standard Brands v. Straile*, 260 N.Y.S.2d 913, 916 (N.Y. App. Div. 1st Dep't 1965) (reversing after summary judgment granted for defendant and noting that express terms of subordination agreement only subordinated given note at issue and not guaranty); *Kornfeld v. NRX Tech's, Inc.*, 461 N.Y.S.2d 342, (N.Y. App. Div. 1st Dep't 1983) (affirming summary judgment and considering subordination term contained only in note).

C.  **The Forum Selection Clause in The Junior Guaranty is Not Controlling**

Highland Park also argues that it has the right to immediately pursue its claims in this New York action based on the forum selection clause in the Junior Guaranty. First, Defendants do not dispute that they are subject to personal jurisdiction in New York courts as a result of the forum selection clause in the Junior Guaranty. Defendants also do not dispute that Highland Park may choose to pursue its claim against them in New York.[4] However, equities and judicial economy require the Ohio Action to proceed to judgment before this action.

---

[4] Notably, the forum selection clause in the Junior Guaranty is non-exclusive, and Highland Park could proceed on its claim against the Junior Guarantors anywhere it desires, including in the Ohio Action to which it has already been joined as a party. (*See* Wells Fargo's Motion to Intervene and Annexed Motion to Dismiss, p. 5 (referencing Ohio Action order at Ex. 2 attached thereto)).

Courts are reluctant to favor a first-filed lawsuit's choice of forum when the forum provides little connection to the factual circumstances surrounding the lawsuit. *See Rayco Mfg. Co. v. Chicopee Mfg. Co.*, 148 F. Supp. 588, 593 (S.D.N.Y. 1957). A plaintiff's choice of forum should not take precedence over a more appropriate forum where it appears that the plaintiff's chosen forum is located in a district without any particular local interest in the parties or the subject matter. *Boggess v. Columbian Rope Co.,* 167 F. Supp. 854, 856-857 (S.D.N.Y. 1958). Additionally, district courts in New York may stay first-filed lawsuits in favor of state court lawsuits in order to avoid "needless waste of judicial energies." *Bethlehem Steel Corp. v. Tishman Realty & Constr. Co.*, 72 F.R.D. 33, 41 (S.D.N.Y. 1976).

In seeking to advance the Courts' interest in avoiding multiple litigation and in judicial economy, the Court should give precedence to the Ohio Action over the instant action, notwithstanding that the instant lawsuit was filed just weeks prior to the Ohio Action. As it currently stands, there is no connection between New York and the parties herein, or the personal property of Defendants sought as payment on the Junior Guaranty. Furthermore, the real property at issue in the Ohio Action, which the Senior Loan and the Junior Loan were designed to benefit, is located in the same jurisdiction where the Ohio Action is filed. Moreover, Highland Park has already been joined as a party in the Ohio Action (*see* Ex. 2 to Wells Fargo's Motion to Intervene), and there is no legitimate basis for permitting Highland Park to enforce its rights simultaneously in two separate forums. Under these circumstances, judicial economy and the interest of avoiding duplicitous litigation requires that this action be stayed pending the outcome of the Ohio Action.

D.     **Highland Park's Case Law is <u>Inapplicable To the Case At Bar</u>**

The cases relied upon by Highland Park are factually inapposite. Indeed, none of these cases involve an overlying agreement, such as the Intercreditor Agreement, that governs an agreement at issue on joinder of a necessary party, permissive intervention, or of a party's request to stay proceedings.[5] In fact, one case cited by Highland Park did consider the terms of several relevant agreements and looked to the intention expressed within those agreements and refused joinder on the basis that "the express language" of two relevant agreements expressed the intent to keep the third-party at "arm's length" from one of the agreements. *Conntech Dev. Co. v. University of Conn. Educ. Props.*, 102 F.3d 677, 683 (2d Cir. 1996). Here, we have the opposite situation where it appears that the intent of the parties was to negotiate the Junior Guaranty simultaneously with the Intercreditor Agreement, which specifically governs the relationship between the Senior and Junior Lenders. Nothing about the nature of the two loans at issue here could be said to have been performed to keep the Senior and Junior Lender at "arm's-length" to each other.

---

[5] *See, e.g., Conntech Dev. Co. v. University of Conn. Educ. Props.*, 102 F.3d 677, 683 (2d Cir. 1996) (considering Rule 19, but in context of real estate development project with no agreement linking the intervenor to the parties in the action); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York*, 762 F.2d 205, 209 (2d Cir. 1985) (considering Rule 19 in insurance subrogation context); *Fanbrella, Inc. v. EDT Prods.*, 185 F.R.D. 144, 146 (E.D.N.Y. 1999) (considering Rule 19, but in context of third-party competing umbrella producer who had no relationship as all to parties except as competitor*); Sever v. Glickman*, 298 F. Supp. 2d 267, 275 (D. Conn. 2004) (analyzing Rule 19, but finding that no contracts existed whatsoever).

## POINT II

## ASSUMING *ARGUENDO* THIS COURT PERMITS THIS ACTION TO GO FORWARD, WELLS FARGO SHOULD BE JOINED AS A PARTY[6]

A.  **Wells Fargo Has Met the Requisite Standards for Permissive Intervention**

As Wells Fargo contends, pursuant to Fed. R. Civ. P. 24(b) regarding permissive intervention, it need only show that its "claim or defense and the main action have questions of law or fact in common." Fed. R. Civ. P. 24(b)(1)(B); *see also, McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 250-51 (S.D.N.Y. 1989); *Brooks v. Glagg Bros., Inc.*, 63 F.R.D. 409, 415 (S.D.N.Y. 1974). The decision whether to grant intervention under Rule 24(b) is fact specific to each case and is entirely within the court's discretion. 6 MOORE'S FEDERAL PRAC. 3D §24.11 (3d ed. 2008). In addition, permissive intervention plainly dispenses with any requirement that the intervenor have a direct personal or pecuniary interest in the subject of the litigation. *SEC v. United States Realty & Improvment Co.*, 310 U.S. 434, 459 (1940).

In the case at bar, there is a mixed question of law and fact that has been presented to the Court regarding an interpretation of the Intercreditor Agreement that is in every brief thus filed before the Court. Namely, the issue concerns what creditor should receive priority in their quest to enforce their respective Guaranties to reach the Defendants' personal assets. That issue is in both Defendants' Motion to Dismiss the Complaint or Stay the Proceedings and Wells Fargo's Motion to Dismiss rests on the same question regarding the interpretation of the Intercreditor Agreement. (*See* Defendants' Motion to Dismiss the Complaint or Stay the Proceedings at p.16, (referencing Intercreditor Agreement); Wells Fargo's Motion to Intervene and Annexed Motion

---

[6] As previously noted in Footnote 1, *supra*, to the extent Wells Fargo prevails in its Motion to Intervene in this action, Defendants' motion to dismiss the action for failure to name a necessary party will be rendered moot. Accordingly, because Wells Fargo's position in its Motion is consistent with Defendants' position herein, Defendants support Wells Fargo's Motion.

to Dismiss at Docket 24, p. 6 ("Here, the Intercreditor Agreement is not merely integral to but dispositive of the Mezzanine Lender's claims.").) Highland Park has identified that issue via its "Declaratory Judgment Action," which it filed subsequent to Defendants' and Wells Fargo's opening briefs in this matter. (*See* Highland Park's Reply Brief and Cross-Motion for Summary Judgment at 11; Stolper Declaration at Ex. 6, ¶4 filed on June 27, 2008.) The questions raised by Highland Park in this "separate" action have been impliedly before this Court all along. Highland Park had to have relied on its interpretation of the Intercreditor Agreement in determining it could pursue this lawsuit. With the question of the interpretation of the Intercreditor Agreement at issue in this matter, and, apparently a new related matter, permissive intervention of Highland Park is appropriate.

### B. Proceeding in This Action Without Wells Fargo Will Likely Lead To Multiple and/or Inconsistent Judgments

Defendants support Wells Fargo's Motion to Intervene in this action on the grounds that Wells Fargo is a necessary party pursuant to Fed. R. Civ. P. 19(a). Wells Fargo has unequivocally stated that it will seek to hold Defendants and Highland Park liable if any judgment rendered in this action is not paid directly to Wells Fargo's account. (*See* Defendants' Motion to Dismiss the Complaint or Stay, p.7, referencing Wells Fargo's Notice of Claim of Interest at Docket 9.) In addition, Wells Fargo has filed a separate motion for summary judgment based on the Senior Guaranty for the Senior Loan in the Ohio Action against the same Defendants in this lawsuit. Thus, should this Court enter judgment in favor of Highland Park before the Ohio Action renders a judgment, Defendants risk further substantial liability to Wells Fargo for payment on the Senior Loan, including, interest and other damages that may be associated with late payment.

Because there is a substantial risk that proceeding in this action without Wells Fargo will result in multiple and/or inconsistent obligations on behalf of Defendants, Wells Fargo should be joined in this action under Rule 19(a)(1)(B)(ii). Accordingly, the Wells Fargo Motion should be granted.

## CONCLUSION

For all of the foregoing reasons and based upon the authorities cited herein, it is respectfully submitted that Defendants' Motion to Dismiss or Stay the Proceedings should be granted, and Highland Park's Cross-Motion for Summary Judgment should be denied. Further, in the event the Court elects to stay this action pending the outcome of the Ohio Action, or permits this action to go forward, Wells Fargo's Motion to Intervene should be granted. In addition, Defendants should be awarded such other and further relief as this Court deems just and proper under the circumstances.

Dated: New York, New York
      July 11, 2008

Respectfully Submitted,

BAUMAN KATZ & GRILL LLP
*Attorneys for Defendants*

By: _____
    Daniel E. Katz (7222)
28 West 44th Street, Suite 900
New York, New York 10036
(212) 684-0300

Of Counsel:

Yasmin R. Saeed (1921)
   -and-
Marc J. Kessler (2137)
Hahn Loeser & Parks, LLP
65 East State Street, Suite 1400
Columbus, Ohio  43215-4209
(614) 221-0240

Col - 126987.1                                            15

## CERTIFICATE OF SERVICE

I certify that on this 14th day of July, 2008, a copy of Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Complaint or Stay the Proceedings, and in Opposition to Plaintiff's Cross-Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____
Yasmin R. Saeed (1921)