Michael Stolper
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103-0001
(212) 506-5000

Attorneys for Plaintiff Highland Park CDO I Grantor Trust, Series A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HIGHLAND PARK CDO I GRANTOR TRUST, SERIES A,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW STUDER, FRED GRAFT, ERNIE MALAS, and PETER CORATOLA,<br><br>Defendants. | Case No. 08 Civ. 01670 (NRB) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. SUMMARY JUDGMENT IS WARRANTED ..... 2

A. Highland Has Standing To Assert Its Rights Under The Guaranty Agreement ..... 2

B. No Issue of Material Fact Exists ..... 3

C. Defendants Cannot Rely On The Intercreditor Agreement ..... 4

D. Judicial Efficiency Dictates Summary Judgment, Not Dismissal ..... 4

II. WELLS FARGO'S REQUESTS FOR ADDITIONAL RELIEF ARE PREDICATED ON FALSE INTERPRETATIONS OF THE INTERCREDITOR AGREEMENT ..... 7

A. Wells Fargo's Request To Stay Is Without Merit ..... 7

B. Wells Fargo's Request To Place Proceeds In Trust Is Also Without Merit ..... 8

CONCLUSION ..... 11

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Page

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.* v. *Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474 (S.D.N.Y. 2007) ........ 6, 7

*Bethlehem Steel Corp. v. Tishman Realty & Construc. Co.* F.R.D. 33 (S.D.N.Y. 1976) ........ 6

*Black & Decker Corp.* v. *Dunsford*, 944 F. Supp. 220 (S.D.N.Y. 1996) ........ 3

*Boggess* v. *Columbian Rope Co.*, 167 F. Supp. 854 (S.D.N.Y. 1958) ........ 6

*Cifarelli* v. *Village of Babylon*, 93 F.3d 47 (2d Cir. 1996) ........ 3

*Darnet Realty Assocs., LLC* v. *136 E. 56th St. Owners, Inc.*, 153 F.3d 21 (2d Cir. 1998) ........ 3

*In re: Enron Corp* 302 B.R. 463 (S.D.N.Y. 2003) ........ 4

*Expoconsul Intern., Inc.* v. *A/E Systems, Inc.*, 755 F. Supp. 1237 (S.D.N.Y. 1991) ........ 3

*In re Jamesway Corp.*, 235 B.R. 329 (Bankr. S.D.N.Y. 1999) ........ 3

*Rayco Manufacturing. Co.* v. *Chicopee Manufacturing. Co.*, 148 F. Supp. 588 (S.D.N.Y. 1957) ........ 5, 6

**STATE CASES**

*Guarantee Bank* v. *Magness Constr. Co.*, 462 A.2d 405 (Del. 1983) ........ 10

*Standard Brands Inc.* v. *Straile*, 260 N.Y.S.2d 913 (N.Y. App. Div. 1st Dep't 1965) ........ 4

Plaintiff Highland Park CDO I Grantor Trust, Series A ("**Highland**") respectfully submits this memorandum of law in further support of Plaintiff's cross-motion for summary judgment.

## PRELIMINARY STATEMENT

For the Defendants, it seems that desperate times have called for desperate measures. Lacking a plausible defense to Plaintiff's $10.5 million claim, the Guarantors[1] resort to the issue of standing. Not only is there no question as to standing, but also Defendants and Wells Fargo have treated Plaintiff as the party in interest in negotiations, including entering into a written agreement in February 2008 to address the Guarantor's default.

Defendants' disregard for the first to file rule and the forum selection clause in arguing in favor of the Ohio Foreclosure Action should cease, as Wells Fargo is submitting tomorrow a voluntary discontinuance against Highland in the Ohio Foreclosure Action. The discontinuance is predicated on Highland's submission of a Notice of Disclaimer, dismissing any interest in the property or contract claims at issue in the Ohio Foreclosure Action.

Defendants' reliance on the Intercreditor Agreement, an agreement which Defendants are not parties to or third party beneficiaries of, is another attempt to delay the inevitable. Even though Defendants contend that a judgment in this action will prejudice the Guarantors and expose them to substantial liability, they offer no justification to support their claim.

Similarly, Wells Fargo seeks to delay Highland from collecting against the Guarantors in order to allow Wells Fargo the first bite from the Defendants' limited assets. The

---

[1] Terms in this Reply Memorandum have been previously defined in Plaintiff's Memorandum of Law (I) in Opposition to Defendants' Motion to Dismiss or Stay the Proceedings and (II) Wells Fargo's Motion to Intervene and Dismiss and (III) in Support of Plaintiff's Cross-Motion for Summary Judgment ("**Plaintiff's Opening Memo**").

misplaced arguments of Defendants and Wells Fargo based on the Intercreditor Agreement, which is the subject of a separate declaratory judgment action, should not distract the Court from the fact that Defendants have no defense to summary judgment.

## ARGUMENT

### I. SUMMARY JUDGMENT IS WARRANTED

#### A. Highland Has Standing To Assert Its Rights Under The Guaranty Agreement

The Guarantors assert that Highland has failed to "properly demonstrate its standing in this matter." (Defendants' Reply and Opposition at 8.) From a factual perspective, this argument is without merit. To put the matter to rest, Highland submits a declaration from John Morgan, Partner and Senior Portfolio Manager at Highland Capital Management, ("**Morgan Declaration**"), setting forth the specific chain of assignment from Morgan Stanley to Highland, and attaching in detail each and every document reflecting that assignment. As a result of these assignment agreements, Highland has been assigned all of the rights of the Mezzanine Lender. (Morgan Decl. ¶ 10). Moreover, the Guarantors have repeatedly recognized Highland as the party in interest under the Mezzanine Loan documents. In fact, Defendants executed a February 11, 2008 agreement with Highland in which Plaintiff is identified throughout as the Mezzanine Lender. (Morgan Decl. ¶ 15). Indeed, Wells Fargo's motion papers recognize Highland as the party in interest, both under the Mezzanine Loan documents and the Intercreditor Agreement. (Wells Fargo's Reply at 1-2.) Conversely, it is inconsistent for the Guarantors to take issue with Highland's standing but to accept at face value Wells Fargo's stated assignment from Morgan Stanley and advocate on behalf of Wells Fargo.[2]

---

[2] Highland takes no issue with Wells Fargo's standing. This point is made merely to highlight the hypocrisy and flimsiness of the Guarantors' standing argument.

Guarantors' assert that Morgan Stanley's retention of an "IO Participation" interest pursuant to a promissory note supporting the Mezzanine Loan prevents Highland from bringing suit under the Mezzanine Guaranty. (Defendants' Reply and Opposition at 7.) This argument is incorrect. Highland holds all of Morgan Stanley's rights, title and interest in the promissory note and is entitled to exercise all rights, power and authority of Morgan Stanley. (Morgan Decl. ¶ 12). Morgan Stanley's limited interest in a promissory note does not have any bearing or relevance to Plaintiff's right to enforce the Mezzanine Loan or the Mezzanine Guaranty. (Morgan Decl. ¶ 12).

**B. No Issue of Material Fact Exists**

Defendants cannot manufacture a disputed material fact simply by stating that there is a dispute. "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment[.]" *Darnet Realty Assocs., LLC v. 136 E. 56th St. Owners, Inc.*, 153 F.3d 21, 23 (2d Cir. 1998) (citing *Cifarelli v. Village of Babylon,* 93 F.3d 47, 51 (2d Cir. 1996). They must set forth specific facts demonstrating a genuine issue for trial. *In re Jamesway Corp.*, 235 B.R. 329, 336 (Bankr. S.D.N.Y. 1999). "Ultimately, the non-moving party must demonstrate that some evidence exists which would create a genuine issue of material fact. Conclusory allegations will not suffice to create a genuine issue." *Id.* (internal citations and quotations omitted); *see also Black & Decker Corp. v. Dunsford*, 944 F. Supp. 220, 224 (S.D.N.Y. 1996) (finding no issue of material fact and granting plaintiffs' motion for summary judgment); *Expoconsul Intern., Inc. v. A/E Systems, Inc.*, 755 F. Supp. 1237, 1246-47 (S.D.N.Y. 1991) (same).

Defendants offer no evidence that Highland is not the appropriate assignee; they never discuss their own course of conduct recognizing Highland as the party in interest; and they have nothing to refute the assignment evidence set forth in the Morgan Declaration. An actual

dispute that can overcome summary judgment requires conflicting evidence, which is wholly absent here.

C. Defendants Cannot Rely On The Intercreditor Agreement

Defendants' reliance on the Intercreditor Agreement to which it is neither a party nor third party beneficiary is an attempt to delay the proceedings. As previously stated, Defendants' reliance runs afoul of well settled New York law. "However important the construction of the subordination clause may be a between subordinated and senior creditors, its ambiguity affords no defense to an action brought by a creditor on the personal guaranty of the individual defendant[s]." *Standard Brands Inc. v. Straile*, 260 N.Y.S.2d 913, 915 (N.Y. App. Div. 1st Dep't 1965). Under New York law, Defendants cannot use the Intercreditor Agreement to dismiss or stay this action.

Defendants cite *In re: Enron Corp.,* to argue that they can use the Intercreditor Agreement to prevent Highland from enforcing its rights under the Guaranty Agreement. 302 B.R. 463 (S.D.N.Y. 2003). *In re: Enron Corp.* is easily distinguished as the plaintiffs, members of a lending syndicate, "irrevocably appointed" an agent with the sole power to file a lawsuit. Additionally, the court found that the plaintiffs had no rights against the defendants. *Id.* at 476. Unlike here, In *Enron*, there was no privity of contract between plaintiffs and defendants. Plaintiffs sought to enforce a contractual right that they never possessed. Here, the dispute is based upon the contract between plaintiff and defendants and bringing suit is the only remedy Highland has to enforce the Guaranty Agreement.

D. Judicial Efficiency Dictates Summary Judgment, Not Dismissal

Guarantors continue to allege that this action will result in multiple and inconsistent results and therefore should be dismissed or stayed. Highland stipulates that the Guarantors are involved in "multiple lawsuits," two to be exact, one in Ohio and this one. As

stated in Plaintiff's Opening Memo, there is absolutely nothing inefficient or duplicative of the Ohio and New York actions. In fact, since submitting Plaintiff's Opening Memo, Highland has retained Ohio counsel and is in the process of obtaining a dismissal of the Ohio action. Stolper Supp. Decl. at 2. There is absolutely no basis for Highland to be a party to that action. Contrary to the Guarantors' Brief, Highland is not seeking "to enforce its rights simultaneously in two separate forums." (Defendants' Reply and Opposition at 11.) Neither is there anything inconsistent about the possible outcomes in the Ohio and New York actions. The Senior Lender should prevail in its Ohio foreclosure claim against the Premises and in its breach of contract claim against the Guarantors. Highland should similarly prevail in this breach of contract action against the Guarantors. These anticipated results, regardless of timing, are not inconsistent, do not require the Guarantors to pay double and do not subject the Guarantors to additional liability.

Guarantors state, without explanation or citation, that they will "risk further substantial liability to Wells Fargo for payment on the Senior Loan." (Defendants' Reply and Opposition at 14.) As mentioned in Plaintiff's Opening Memo, the Guarantors cannot cite to a single contractual provision that the Senior Lender could assert against the Guarantors for honoring the Mezzanine Guaranty, even if it requires reimbursing Highland before the Senior Lender. Guarantors' argument wrongly assumes that they owe on just one loan rather than two separate loans to separate lenders on different dates to different borrowers for different amounts.

Defendants rely on *Rayco Manufacturing. Co. v. Chicopee Manufacturing. Co.*, 148 F. Supp. 588, 593 (S.D.N.Y. 1957) to support their contention that courts are reluctant to favor a first-filed lawsuit's choice of forum. *Rayco Manufacturing. Co.* is distinguishable, as the relevant contract did not include a forum selection clause, there were no relevant contacts to the forum and there was "readily apparent 'forum shopping,' by the jumbled plaintiffs and

defendants in this case." 148 F. Supp. at 593-4. The Guarantors' reliance on *Boggess v. Columbian Rope Co.,* 167 F. Supp. 854 (S.D.N.Y. 1958) is similarly misplaced. There was no forum selection clause and more importantly, the court followed the first-filed rule and granted a stay of the second proceeding, finding that the second court was "merely a forum for which the plaintiff has shopped[.]" *Boggess,* 167 F. Supp. at 857. Here, there was no forum shopping, Highland sued in the only state where the Guarantors had submitted to personal jurisdiction.

The Guarantors also rely on *Bethlehem Steel Corp. v. Tishman Realty & Construc. Co.*, a case that is easily distinguishable because unlike the present situation, the defendant sought to stay a federal proceeding pending a determination of a state lawsuit brought by the same plaintiff, "seeking identical relief" on the same contracts. 72. F.R.D. 33, 34 (S.D.N.Y. 1976). The court found that the issues in the state court "entirely subsume the issues presented" to the federal court. *Id.* at 41. Here, the Foreclosure Action is brought by a different party (Wells Fargo), based upon different documents (the Senior Loan) and seeks different relief (foreclosure) than the instant action.

Guarantors contend that "there is no connection between New York and the parties herein[.]" (Defendants' Reply and Opposition at 11.) In fact, there are significant connections to New York. In addition to the forum selection clause where Guarantors "irrevocably submit[ed]" to the jurisdiction of New York, the Guaranty Agreement was entered into by a New York corporation, "pursuant to the laws of [New York.]" (Stolper Decl. Exhibit 2 ¶¶ 11, 19). Furthermore, the Intercreditor Agreement is "governed by and construed in accordance with, the internal laws of the State of New York applicable to agreements intended to be fulfilled ***wholly performed within the State of New York.***" (Stolper Decl. Exhibit 4 at 26) (emphasis added). "The public interest here favors resolving the dispute now, as New York has

an undoubted interest in regulating [a] contract negotiated, executed, and administered in New York by a New York Company." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 491 (S.D.N.Y. 2007).

## II. WELLS FARGO'S REQUESTS FOR ADDITIONAL RELIEF ARE PREDICATED ON FALSE INTERPRETATIONS OF THE INTERCREDITOR AGREEMENT

In its reply brief, Wells Fargo asks for two new forms of relief: (i) a stay pending resolution of the Declaratory Judgment Action; or (ii) that any proceeds received by Highland from the Guarantors be placed in trust for the benefit of Wells Fargo. (Wells Fargo's Reply at 7-8.) Wells Fargo requests the relief without explanation or cites to authority.

### A. Wells Fargo's Request To Stay Is Without Merit

As stated in Plaintiff's Opening Memo, any stay of this action would be extremely prejudicial to Highland. Guarantors admit that "their collective personal assets [may not] fully satisfy" the debt at issue. (Defendant's Motion to Dismiss at 17.) Therefore, Highland must obtain and enforce a judgment before Defendants' limited assets are depleted. A stay of the proceedings at this critical junction would prevent Highland from ever collecting from the Defendants under the Mezzanine Guaranty.

Highland has previously explained why permitting this action to proceed would not harm the Guarantors or Wells Fargo. As mentioned above, the Guarantors cannot cite to a single contractual provision that the Senior Lender could assert against the Guarantors for honoring the Mezzanine Guaranty, even if it requires reimbursing Highland before the Senior Lender.

There is no similar authority that would allow Wells Fargo, a non-party, to intervene based on an alleged breach of a contract that is not the subject of the present action. Wells Fargo's brief is devoid of a single citation in support of its proposition. Similarly, Wells

Fargo did not address the fact that it has recourse against Highland in the event Wells Fargo prevails in the Declaratory Judgment Action.

### B. Wells Fargo's Request To Place Proceeds In Trust Is Also Without Merit

By asking for all monies collected by Highland to be placed in trust for Well Fargo's benefit, Wells Fargo is in effect asking for summary judgment in the Declaratory Judgment Action. The trust provision in Section 9(a) of the Intercreditor Agreement, upon which Wells Fargo relies, states that any payments "received by the Mezzanine Lender ***contrary to the provisions of this Agreement*** shall be held in trust...." (Stolper Decl. as Exhibit 4 ¶ 17). (emphasis added). The operative language in the sentence is "contrary to the provisions of this Agreement." Because Section 9(a) only applies to payments from the Senior Borrower and not payments from the Guarantors, the trust provision is inapplicable.

Wells Fargo's argument for a trust is also predicated on its interpretation of Section 8(a) of the Intercreditor Agreement. Wells Fargo contends that Section 8(a) clearly and unambiguously subordinates Highland's remedies under the Mezzanine Guaranty. (Wells Fargo's Reply at 5.) Wells Fargo then posits its interpretation of Section 8(a):

> **Mezzanine Lender cannot pursue its remedy against Guarantors until (i) Senior Lender has brought suit, (ii) obtained a final adjudication against the Guarantors and (iii) collected its debt in full.**

(Wells Fargo's Reply at 6, emphasis and numbers added.)

The obvious problem with Wells Fargo's three conditions is that the words are simply not in the Intercreditor Agreement. Section 8(a) of the Intercreditor Agreement states that the "Mezzanine Lender hereby subordinates and makes junior the Mezzanine Loan, the Mezzanine Loan Documents and the liens and securities created thereby, and all rights, remedies, terms and covenants contained therein[.]" (Stolper Decl. Exhibit 4 at 17). As stated in

Highland's Memo, the term "subordinate" can mean different things, and needed to be spelled out as had been done in Section 9(a). Section 8(a), however, does not define or explain what it means for the Mezzanine Loan Documents to be subordinated. There is no standard subordination term or provision, as Wells Fargo suggests in its Brief.

To read the term "subordinate" to include the three conditions, while aspirational, makes no sense and raises several practical problems. According to Wells Fargo, Highland could not "pursue its remedy against the Guarantors until" each of the three aforementioned conditions were satisfied. That would require Highland to stand down until the Senior Lender "brought suit" and achieved a "final adjudication." What if the Senior Lender never brought suit? What if the Senior Lender was repaid before ever filing a lawsuit or before the lawsuit achieved a final adjudication? Adjudication requires a final court decision and most lawsuits settle prior to a final adjudication.

In addition, why would the adjudication by the Senior Lender have to be against the Guarantors, as Wells Fargo contends? Wells Fargo could be repaid by the Senior Borrower or from the foreclosure action and not by the Guarantors. Indeed, the Guarantors contend that a potential sale of the Premises could resolve all outstanding debts. (Defendants' Reply and Opposition at 8 n.3).

Similarly, why should Highland have to wait until Wells Fargo "collected its debt in full"? In the likely event that the Senior Lender accepts less than the total amount owed and gives releases, under Wells Fargo's reading of the Intercreditor Agreement Highland would still be unable to proceed against the Guarantors. Highland's express right to pursue the Guarantors cannot be based on the vicissitude of Wells Fargo.

Moreover, the idea that payment from the Guarantors to Highland is meant to be upheld indefinitely conflicts with Section 9(a) entitled "Subordination of Payments," which addresses subordination of payments only from the Senior Borrower and not payments from the Guarantors. Section 9(a) states:

> Except (i) as otherwise provided in this Agreement and (ii) in connection of the exercise by Mezzanine Lender of its rights and remedies with respect to the Separate Collateral in accordance with the terms of this Agreement, all of Mezzanine Lender's rights to payment of the Mezzanine Loan and the obligations evidenced by the Mezzanine Loan Documents are ***hereby subordinated*** to all of Senior Lender's rights to ***payment by [Senior] Borrower*** of the Senior Loan and the obligations secured by the Senior Loan Documents, and Mezzanine Lender shall not accept or receive payments (including, without limitation, whether in cash or other property and whether received directly, indirectly or by set-off, counterclaim or otherwise) ***from [Senior] Borrower*** and/or from the Premises prior to the date that all obligations of [Senior] Borrower to Senior Lender under the senior Loan Documents are paid.

(Stolper Decl. Exhibit 4 at 17) (emphasis added). In other words, how could Highland's right to a "remedy" under the Mezzanine Guaranty be blocked indefinitely by the Senior Lender but not the right to collect payment from the Guarantors? Not surprisingly, Wells Fargo ignores this language as well as the argument in the Plaintiff's Opening Memo on this point.

These questions are posited to reflect why Wells Fargo's "clear" interpretation of the Intercreditor Agreement is anything but clear. This is exactly why such provisions are narrowly construed. *Guarantee Bank v. Magness Constr. Co.*, 462 A.2d 405, 409 (Del. 1983) ("In construing the terms of a subordination clause in a purchase money mortgage Delaware law requires such agreements to be strictly construed where their terms are unambiguous.").

**CONCLUSION**

Based on the foregoing, Plaintiff Highland respectfully requests that the Court grant Highland's cross-motion for summary judgment and deny Wells Fargo's new requests for relief.

Dated: New York, New York
July 21, 2008

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: [signature]
Michael Stolper

666 Fifth Avenue
New York, NY 10103-0001
(212) 506-5000

*Attorneys for Plaintiff Highland Park CDO I Grantor Trust, Series A*