Michael Stolper
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000

Attorneys for Highland Park CDO I Grantor Trust,
Series A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HIGHLAND PARK CDO I GRANTOR
TRUST, SERIES A,

               Plaintiff,

    v.

MATTHEW STUDER, FRED GRAFT, ERNIE
MALAS, and PETER CORATOLA,

               Defendants.

Case No. 08 Civ. 01670

**DECLARATION OF
JOHN MORGAN IN SUPPORT
OF PLAINTIFF'S CROSS-
MOTION FOR SUMMARY
JUDGMENT**

I, John Morgan, CFA, declare:

1.      I am a Partner and Senior Portfolio Manager at Highland Capital

Management, L.P. ("**Highland**"), an investment adviser registered with the U.S. Securities and

Exchange Commission and specializing in alternative fixed-income investment strategies. In this

position, I am responsible for overseeing Highland's real estate debt investments, which include

collateralized mortgage-backed securities, whole loans, B-notes, mezzanine notes and real estate

loans. Before joining Highland in March 2000, I served in similar capacities evaluating various

investment opportunities with other firms. Through the positions I have held, I have acquired

substantial experience in all aspects of the investment process: initial underwriting and due

diligence, acquisition, surveillance and asset management and disposition. I have personal knowledge of the following facts and, if called upon to do so, could and would competently testify thereto.

## THE AGREEMENTS

2.    Matthew Studer, Fred Graft, Ernie Malas and Peter Coratola (the "**Guarantors**") are the guarantors of a $10.5 million loan (the "**Mezzanine Loan**") made by Morgan Stanley Mortgage Capital Inc. ("**Morgan Stanley**") to Platinum Lodging Mezz, LLC, an Ohio limited liability company (the "**Mezzanine Borrower**"), on or about August 3, 2006, for the purpose of funding the development of a former Holiday Inn hotel property, presently known as Fort Rapids Indoor Waterpark Resort ("**Fort Rapids**"), located in Columbus, Ohio.

3.    The personal guaranties were set forth in an agreement entitled "Mezzanine Guaranty of Payment and Guaranty of Recourse Obligations of Borrower" dated as of August 3, 2006 ("**Mezzanine Guaranty**") in favor of Morgan Stanley, together with its successors and assigns.

4.    The Mezzanine Borrower has defaulted on the Mezzanine Loan and the Guarantors have failed to honor the Mezzanine Guaranty.

## THE ASSIGNMENTS

5.    I understand that in opposition to a motion for summary judgment, the Guarantors have questioned Plaintiff's standing under the Mezzanine Guaranty. This puzzles me because the Guarantors know that through a loan sale and a series of assignments among Highland entities that occurred in December 2006, Morgan Stanley's interests in the Mezzanine Loan and Mezzanine Guaranty were transferred to Plaintiff Highland Park CDO I Grantor Trust, Series A.

6.      The initial assignment with Morgan Stanley is captured in an agreement entitled "Omnibus Assignment and Assumption Agreement" dated as of December 5, 2006 with a Highland entity known as HFT RE CDO 2006-2, Ltd. (the "**First Assignment Agreement**"). Pursuant to the First Assignment Agreement, which is attached hereto as Exhibit A, Morgan Stanley assigned to HFT RE CDO 2006-2, Ltd its interests arising under the Mezzanine Loan, the Mezzanine Guaranty and other loan documents listed on Schedule A thereto.

7.      Eight days later, HFT RE CDO 2006-2, Ltd. entered into an agreement entitled " Omnibus Assignment and Assumption Agreement" dated as of December 13, 2006 with Highland Holding Grantor Trust, Series A (the "**Second Assignment Agreement**"). Pursuant to the Second Assignment Agreement, which is attached hereto as Exhibit B, HFT RE CDO 2006-2, Ltd. assigned to Highland Holding Grantor Trust, Series A its interests arising under the Mezzanine Loan, the Mezzanine Guaranty and other loan documents listed on Schedule A thereto.

8.      The following week, Highland Holding Grantor Trust, Series A entered into an agreement entitled "Omnibus Assignment and Assumption Agreement" dated as of December 20, 2006 with Highland Park CDO I, Ltd. (the "**Third Assignment Agreement**"). Pursuant to the Third Assignment Agreement, which is attached hereto as Exhibit C, Highland Holding Grantor Trust, Series A assigned to Highland Park CDO I, Ltd its interests arising under the Mezzanine Loan, the Mezzanine Guaranty and other loan documents listed on Schedule A thereto.

9.      On that same day, Highland Park CDO I, Ltd. entered into an agreement entitled "Omnibus Assignment and Assumption Agreement" dated as of December 20, 2006 with Plaintiff Highland Park CDO I Grantor Trust, Series A (the "**Fourth Assignment Agreement**").

Pursuant to the Fourth Assignment Agreement, which is attached hereto as Exhibit D, Highland

Park CDO I, Ltd. assigned to Plaintiff its interests arising under the Mezzanine Loan, the

Mezzanine Guaranty and other loan documents listed on Schedule A thereto.

   10. As a result of these assignments, Plaintiff has been assigned the rights and

assumed the obligations of the Mezzanine Lender.  These assignments among the Highland

entities were necessitated by tax considerations and internal restructuring of various investment

vehicles.  These assignments were done in the regular course of business and are not uncommon

in complicated financings such as those involved here.

   11. I note that in their opposition to summary judgment, the Guarantors have

focused on the fact that Morgan Stanley has retained what is known as an "IO Participation"

interest in a promissory note given by the Mezzanine Borrower in favor of Morgan Stanley.

Pursuant to a Mezzanine Loan Sale and Participation Agreement dated as of December 5, 2006

(the "**Mezzanine Loan Sale Agreement**"), Morgan Stanley sold the entire note to the Highland

entity HFT RE CDO 2006-2, Ltd., the same entity that entered into the First Assignment

Agreement with Morgan Stanley.  HFT RE CDO 2006-2, Ltd., as whole note purchaser, created

two separate certificated *pari passu* participation interests in the promissory note -- the IO

participation interest and the PI participation interest -- and transferred the IO participation back

to Morgan Stanley.  A true and correct copy of the Mezzanine Loan Sale Agreement is attached

hereto as Exhibit E.

   12. The Mezzanine Loan Sale Agreement grants HFT RE CDO 2006-2, Ltd.

all of Morgan Stanley's "right, title and interest in" the promissory note (see Section 2(a)) and the

entitlement to "exercise all rights, power and authority of [Morgan Stanley]" (see Section 2(e)).

Morgan Stanley's IO Participation interest only entitles Morgan Stanley to interest based on

certain formulas, and nothing more. This limited interest in a promissory note does not have any bearing or relevance to Plaintiff's express right to enforce the Mezzanine Loan or the Mezzanine Guaranty.

13.    Moreover, the Guarantors and Wells Fargo have consistently treated Plaintiff as the party in interest under the Mezzanine Loan Documents.

14.    For example, on February 11, 2008, three of the four Guarantors (except for Defendant Ernie Malas) and representatives of Wells Fargo gave Plaintiff's representatives a tour of the Fort Rapids property in Columbus, Ohio.

15.    The following day, the same group as well as Defendant Malas met in Columbus, Ohio to discuss the default under the Mezzanine Loan and the Guarantors' failure to honor the Mezzanine Guaranty. These discussions culminated in the Guarantors' execution of a Pre-Negotiation Agreement, which specifies the manner in which discussions and negotiations regarding the Mezzanine Borrower's default would proceed. The Pre-Negotiation Agreement, which is attached hereto as Exhibit F, makes explicit reference to Morgan Stanley's assignments to Plaintiff of all of its interests under the Mezzanine Loan, the Mezzanine Guaranty and related documents. In fact, the Mezzanine Lender is identified throughout the Pre-Negotiation Agreement as Plaintiff Highland Park CDI Grantor Trust, Series A.

16.    Between February and July 2008, the Guarantors and Wells Fargo (or their representatives) have communicated with Highland personnel by telephone and by electronic mail, each time recognizing directly or implicitly Plaintiff (or Highland generally) as the successor-in-interest to Morgan Stanley. Not once did anyone on behalf of the Guarantors or Wells Fargo question Plaintiff's standing or interest under the operative agreements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 21, 2008 in Dallas, Texas.

_____

John Morgan

# EXHIBIT A

MSMCI Loan No.: 06-26034

## OMNIBUS ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS OMNIBUS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Assignment**"), made as of the 5th day of December, 2006 by **MORGAN STANLEY MORTGAGE CAPITAL INC.**, a New York corporation, having an address at 1221 Avenue of the Americas, New York, New York 10020 ("**Assignor**"), to **HFT RE CDO 2006-2, LTD.**, a Cayman Islands limited liability company, having an address at c/o Highland Capital Management, L.P., Two Galleria Tower, 13455 Noel Road, Suite 800, Dallas, Texas 75240 ("**Assignee**");

WHEREAS, PLATINUM LODGING MEZZ, LLC, an Ohio limited liability company ("**Borrower**"), is indebted to Assignor with respect to a loan in the original principal amount of $10,500,000.00 (the "**Loan**") made to Borrower pursuant to that certain Mezzanine Loan Agreement (as amended, modified, supplemented or restated from time to time, the "**Loan Agreement**"), dated as of August 3, 2006, by and between Borrower and Assignor;

WHEREAS, Assignor has agreed to sell, transfer and assign to Assignee all of Assignor's right, title and interest in and to the Loan and Assignee has agreed to acquire and assume such right, title and interest.

KNOW ALL MEN BY THESE PRESENTS, that in consideration of the sum of TEN DOLLARS ($10.00) lawful money of the United States and other good and valuable consideration, to it in hand paid at or before the ensealing and delivery of these presents, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    Assignment and Assumption.

(a)    Assignor, by these presents, does hereby grant, bargain, sell, assign, transfer and set over unto Assignee, without recourse and without covenant, representation or warranty in any respect (except as expressly set forth herein and in any of the other instruments entered into in connection with the sale, transfer and assignment of the Loan from Assignor to Assignee), all of Assignor's right, title and interest in and to the following:

(i)    the Loan; and

(ii)    the loan documents listed on **Schedule A** attached hereto and made a part hereof (collectively, the "***Loan Documents***") and all of Assignor's right, title and interest in, to and under the Loan and the Loan Documents, and all of Assignor's right, title and interest, if any, in, to and under all other documents executed and/or delivered in connection with the loan evidenced and/or secured by the Loan Documents, including, without limitation, all of Assignor's right, title and interest in any mezzanine loan policies, opinions delivered in connection with the Loan Documents, certificates, collateral, certificates of deposit, letters of credit, demands, causes of action, all related certificates, bank accounts, operating accounts, reserve accounts, escrow accounts and other accounts, opinions, financial statements of Borrower and any guarantees and any other collateral executed and/or delivered in or to or with respect to the Loan Documents, and all claims and choses in action related to the Loan

Documents, and all of Assignor's right, title and interest in, to and under such claims and choses in action.

TO HAVE AND TO HOLD unto Assignee, its successors, and assigns forever.

(b)    Assignee hereby accepts the assignment set forth in clause (a) of this Paragraph 1 and hereby assumes all of the obligations of Assignor, as the lender under the Loan Documents, arising from and after the date hereof with respect to the period from and after the date hereof.

2.    <u>Assignor Representations and Warranties</u>.    Assignor hereby represents and warrants to Assignee as of the date hereof that:

(i) Assignor is duly organized, validly existing and in good standing under the laws of the jurisdiction under which it was organized with full power to execute and deliver this Assignment,

(ii) Assignor has duly authorized the execution, delivery and performance of this Assignment and the sale of the Loan and has duly executed and delivered this Assignment. To Assignor's knowledge, no consent, approval, authorization or order of any court or governmental agency or any other person or entity is required for the execution and delivery of this Assignment by Assignor or for the performance by Assignor of its obligations hereunder, or if required, such consent, approval, authorization or order has been obtained,

(iii) the execution and delivery of this Assignment and the sale of the Loan by Assignor, and the performance of, and compliance with, the terms of this Assignment by Assignor, will not violate Assignor's organizational documents or, to Assignor's knowledge, constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which Assignor is a party or that is applicable to Assignor or any of Assignor's assets,

(iv) <u>Schedule A</u> represents a complete list of all material Loan Documents delivered by Borrower in connection with the Loan Agreement, and that true, correct and complete counterpart originals of the Loan Documents have been delivered by Assignor to Assignee,

(v)    to Assignor's knowledge, there currently exists no default or event which, with the giving of notice or lapse of time, or both, would constitute a default under any of the Loan Documents,

(vi) the proceeds of the Loan have been fully disbursed, and there is no requirement for future advances thereunder,

(vii) the principal amount outstanding under the Loan Documents as of the execution and delivery of this Assignment is $10,500,000.00,

(viii) interest and any other amounts payable under the Loan Documents has been paid through and including December 14, 2006,

(ix) the Loan is not cross-defaulted with any loan other than the Mortgage Loan (as defined in the Loan Documents),

(x) Assignor is the legal and beneficial owner of the entire Loan, free and clear of any lien, security interest, option or other charge or encumbrance on, in or to the Loan. Assignor has the full right, power and authority to sell, assign and transfer the Loan to Assignee,

(xi) Assignor has not dealt with any broker, investment banker, agent or other person, other than Assignee and its affiliates, that may be entitled to any commission or compensation in connection with the sale of the Loan, and

(xii) Assignor has not received any actual written notice of (a) a default under the Mortgage Loan or (b) a waiver of any material default, breach, violation or event of acceleration existing under the Mortgage Loan.

3.    Assignee Representations and Warranties.  Assignee represents and warrants to Assignor, as of the date hereof, as follows:

(a)    Assignee is duly organized, validly existing and in good standing under the laws of the Cayman Islands,

(b)    The execution and delivery of this Assignment and the purchase of the Loan by Assignee, and the performance of, and compliance with, the terms of this Assignment by Assignee, will not violate Assignee's organizational documents or, to Assignee's knowledge, constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which Assignee is a party or that is applicable to Assignee or any of Assignee's assets,

(c)    Assignee has duly authorized the execution, delivery and performance of this Assignment and the purchase of the Loan and has duly executed and delivered this Assignment.  To Assignee's knowledge, no consent, approval, authorization or order of any court or governmental agency or any other person or entity is required for the execution and delivery of this Assignment by Assignee or for the performance by Assignee of its obligations hereunder, or if required, such consent, approval, authorization or order has been obtained, and

(d)    Assignee has not dealt with any broker, investment banker, agent or other person, other than Assignor and its affiliates, that may be entitled to any commission or compensation in connection with the sale of the Loan.

4.    <u>Miscellaneous</u>

     (a)    It is hereby understood and agreed that any and all commitment and loan origination fees collected by Assignor are not being transferred hereby and that Assignor shall have the sole rights thereto.

     (b)    This Assignment is being delivered subject to the Intercreditor Agreement referenced on Schedule A.

     (c)    This Assignment may be executed by one or more parties to this Assignment in any number of counterparts and all said counterparts taken together shall be deemed to constitute one and the same instrument.

     (d)    This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, the Assignor and Assignee have caused this Agreement to be duly executed as of the day and year first above written.

ASSIGNOR:

MORGAN STANLEY MORTGAGE CAPITAL INC., a New York corporation

By: _____
Name:
Title:     **Steven R. Maeglin**
           **Vice President**

[SIGNATURE PAGES CONTINUE ON FOLLOWING PAGE]

Signature Page to Omnibus Assignment

## SCHEDULE A

(All documents are dated as of August 3, 2006, unless otherwise noted)

1.  Mezzanine Loan Agreement by and between PLATINUM LODGING MEZZ, LLC, an Ohio limited liability company ("**Borrower**") and Morgan Stanley Mortgage Capital Inc., a New York corporation ("**Lender**")

2.  Mezzanine Promissory Note in the original principal sum of $10,500,000.00 made by Borrower to Lender

3.  Pledge and Security Agreement (Mezzanine) made by Borrower in favor of Lender

4.  Mezzanine Subordination of Management Agreement among Borrower, FOCUS LODGING GROUP, LLC, an Ohio limited liability company ("**Manager**"), and Lender.

5.  Mezzanine Guaranty of Payment and Guaranty of Recourse Obligations of Borrower by Matthew Studer, Fred Graft, Ernie Malas and Peter Coratola (collectively, "**Guarantor**") in favor of Lender

6.  Mezzanine Environmental Indemnity Agreement given by Borrower and Guarantor in favor of Lender

7.  Mezzanine Assignment of Interest Rate Cap Agreement and Security Agreement made by Borrower in favor of Lender and acknowledged by IXIS Financial Products, Inc., as cap seller.

8.  Membership Certificate for Platinum Lodging, LLC

9.  Stock Certificate for Water Park Management Company, Inc.

10. One (1) UCC-1 Financing Statement with respect to the Pledge and Security Agreement (Mezzanine) by Borrower, as debtor, and Lender, as secured party, filed with the Secretary of State of the State of Ohio

11. Intercreditor Agreement among Lender, as holder of the Mortgage Loan, and Lender, as holder of the Mezzanine Loan

12. Post Closing Obligations Letter

13. Mezzanine Authorization to Wire Funds

14. Mezzanine Borrower's Certification

# EXHIBIT B

MSMCI Loan No.: 06-26034

## OMNIBUS ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS OMNIBUS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Assignment**"), made as of the 13th day of December, 2006 by **HFT RE CDO 2006-2, LTD.**, a Cayman Islands limited liability company, having an address at c/o Highland Capital Management, L.P., 13455 Noel Road, Suite 800, Dallas, Texas 75240 ("**Assignor**"), and **HIGHLAND HOLDING GRANTOR TRUST, Series A** ("**Assignee**");

WHEREAS, PLATINUM LODGING MEZZ, LLC, an Ohio limited liability company ("**Borrower**"), is indebted to Assignor with respect to a loan in the original principal amount of $10,500,000.00 (the "**Loan**") made to Borrower pursuant to that certain Mezzanine Loan Agreement (as amended, modified, supplemented or restated from time to time, the "**Loan Agreement**"), dated as of August 3, 2006, by and between Borrower and MORGAN STANLEY MORTGAGE CAPITAL INC., a New York corporation;

WHEREAS, MORGAN STANLEY MORTGAGE CAPITAL INC. assigned all of its right, title and interest in and to the Loan to Assignor, pursuant to that certain Omnibus Assignment and Assumption Agreement, dated as of December 5, 2006, by and between MORGAN STANLEY MORTGAGE CAPITAL INC. and Assignor, and Assignor agreed to acquire and assume such right, title and interest; and

WHEREAS, Assignor has agreed to sell, transfer and assign to Assignee all of Assignor's right, title and interest in and to the Loan and Assignee has agreed to acquire and assume such right, title and interest.

KNOW ALL MEN BY THESE PRESENTS, that in consideration of the sum of TEN DOLLARS ($10.00) lawful money of the United States and other good and valuable consideration, to it in hand paid at or before the ensealing and delivery of these presents, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    <u>Assignment and Assumption.</u>

(a)    Assignor, by these presents, does hereby grant, bargain, sell, assign, transfer and set over unto Assignee, without recourse and without covenant, representation or warranty in any respect (except as expressly set forth herein and in any of the other instruments entered into in connection with the sale, transfer and assignment of the Loan from Assignor to Assignee), all of Assignor's right, title and interest in and to the following:

(i)    the Loan; and

(ii)    the loan documents listed on **Schedule A** attached hereto and made a part hereof (collectively, the "***Loan Documents***") and all of Assignor's right, title and interest in, to and under the Loan and the Loan Documents, and all of Assignor's right, title and interest, if any, in, to and under all other documents executed and/or delivered in connection with the loan evidenced and/or secured by the Loan Documents, including, without limitation, all of Assignor's, right, title and interest in any mezzanine loan policies, opinions delivered in connection with the Loan Documents, certificates, collateral, certificates of deposit, letters of

credit, demands, causes of action, all related certificates, bank accounts, operating accounts, reserve accounts, escrow accounts and other accounts, opinions, financial statements of Borrower and any guarantees and any other collateral executed and/or delivered in or to or with respect to the Loan Documents, and all claims and choses in action related to the Loan Documents, and all of Assignor's right, title and interest in, to and under such claims and choses in action.

TO HAVE AND TO HOLD unto Assignee, its successors, and assigns forever.

(b)     Assignee hereby accepts the assignment set forth in clause (a) of this Paragraph 1 and hereby assumes all of the obligations of Assignor, as the lender under the Loan Documents, arising from and after the date hereof with respect to the period from and after the date hereof.

2.     <u>Assignor Representations and Warranties</u>.     Assignor hereby represents and warrants to Assignee as of the date hereof that:

(i)     Assignor is duly organized, validly existing and in good standing under the laws of the jurisdiction under which it was organized with full power to execute and deliver this Assignment,

(ii)     Assignor has duly authorized the execution, delivery and performance of this Assignment and the sale of the Loan and has duly executed and delivered this Assignment. To Assignor's knowledge, no consent, approval, authorization or order of any court or governmental agency or any other person or entity is required for the execution and delivery of this Assignment by Assignor or for the performance by Assignor of its obligations hereunder, or if required, such consent, approval, authorization or order has been obtained,

(iii)     the execution and delivery of this Assignment and the sale of the Loan by Assignor, and the performance of, and compliance with, the terms of this Assignment by Assignor, will not violate Assignor's organizational documents or, to Assignor's knowledge, constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which Assignor is a party or that is applicable to Assignor or any of Assignor's assets,

(iv)     <u>Schedule A</u> represents a complete list of all material Loan Documents delivered by Borrower in connection with the Loan Agreement, and that true, correct and complete counterpart originals of the Loan Documents have been delivered by Assignor to Assignee,

(v)     to Assignor's knowledge, there currently exists no default or event which, with the giving of notice or lapse of time, or both, would constitute a default under any of the Loan Documents,

(vi)     the proceeds of the Loan have been fully disbursed, and there is no requirement for future advances thereunder,

(vii)   the principal amount outstanding under the Loan Documents as of the execution and delivery of this Assignment is $10,500,000.00,

(viii)   interest and any other amounts payable under the Loan Documents has been paid through and including December 13, 2006,

(ix)   the Loan is not cross-defaulted with any loan other than the Mortgage Loan (as defined in the Loan Documents),

(x)   Assignor is the legal and beneficial owner of the entire Loan, free and clear of any lien, security interest, option or other charge or encumbrance on, in or to the Loan. Assignor has the full right, power and authority to sell, assign and transfer the Loan to Assignee,

(xi)   Assignor has not dealt with any broker, investment banker, agent or other person, other than Assignee and its affiliates, that may be entitled to any commission or compensation in connection with the sale of the Loan, and

(xii)   Assignor has not received any actual written notice of (a) a default under the Mortgage Loan or (b) a waiver of any material default, breach, violation or event of acceleration existing under the Mortgage Loan.

3.   Assignee Representations and Warranties.  Assignee represents and warrants to Assignor, as of the date hereof, as follows:

(a)   Assignee is duly organized, validly existing and in good standing under the laws of the Cayman Islands,

(b)   The execution and delivery of this Assignment and the purchase of the Loan by Assignee, and the performance of, and compliance with, the terms of this Assignment by Assignee, will not violate Assignee's organizational documents or, to Assignee's knowledge, constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which Assignee is a party or that is applicable to Assignee or any of Assignee's assets,

(c)   Assignee has duly authorized the execution, delivery and performance of this Assignment and the purchase of the Loan and has duly executed and delivered this Assignment.  To Assignee's knowledge, no consent, approval, authorization or order of any court or governmental agency or any other person or entity is required for the execution and delivery of this Assignment by Assignee or for the performance by Assignee of its obligations hereunder, or if required, such consent, approval, authorization or order has been obtained, and

(d)   Assignee has not dealt with any broker, investment banker, agent or other person, other than Assignor and its affiliates, that may be entitled to any commission or compensation in connection with the sale of the Loan.

4.   Miscellaneous.

OHS West:260142115.3                                      3

      (a)     It is hereby understood and agreed that any and all commitment and loan origination fees collected by Assignor are not being transferred hereby and that Assignor shall have the sole rights thereto.

      (b)     This Assignment is being delivered subject to the Intercreditor Agreement references on Schedule A.

      (c)     This Assignment may be executed by one or more parties to this Assignment in any number of counterparts and all said counterparts taken together shall be deemed to constitute one and the same instrument.

      (d)     The Bank of New York Trust Company, National Association (the "Trustee"), solely in its capacity as Trustee for the Highland Holding Grantor Trust Series A, and not in its individual capacity has executed this Assignment at the express direction of the Assignor as provided under the Master Trust Agreement, dated December 13, 2006 and will perform this Assignment solely in its capacity as Trustee under the Grantor Trust Documents and shall have no individual liability for any of the obligations or claims arising under this Assignment. No party shall have no direct right of action against the Assignee in its individual capacity for any action or omission by the Trustee under this Assignment.

      (e)     This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Assignor and Assignee have duly executed this Assignment as of the 13th day of December, 2006.

ASSIGNOR:

HFT RE CDO 2006-2, LTD.

By:   Highland Capital Management, L.P.,
      as Servicer

      By:   Strand Advisors, Inc.,
            its general partner

            By: _____
            Name:
            Title: J. Kevin Ciavarra, Officer
                   Highland Capital Management, L.P.
                   By: Its General Partner,
                   Strand Advisors, Inc.

ASSIGNEE:

HIGHLAND HOLDING GRANTOR TRUST, SERIES A

By:  The Bank of New York Trust Company, National
     Association, as Trustee

By: _____
    Name:
    Title:

By:  The Bank of New York Trust Company, National
     Association, as Securities Intermediary

By: _____
    Name:
    Title:

Signature page to Assignment and Assumption Agreement

IN WITNESS WHEREOF, Assignor and Assignee have duly executed this Assignment as of the 13th day of December, 2006.

ASSIGNOR:

**HFT RE CDO 2006-2, LTD.**

By:  Highland Capital Management, L.P.,
      as Servicer

      By:  Strand Advisors, Inc.,
            its general partner

            By: _____
                 Name:
                 Title:

ASSIGNEE:

**HIGHLAND HOLDING GRANTOR TRUST,
SERIES A**

By: The Bank of New York Trust Company, National
     Association, solely in its capacity as Trustee for the
     Highland Holding Grantor Trust, Series A, and not in
     its individual capacity

By: _____
     Name:
     Title:        SHELLY A. STERLING
                   VICE PRESIDENT

Signature page to Assignment and Assumption Agreement

## SCHEDULE A

(All documents are dated as of August 3, 2006, unless otherwise noted)

1. Mezzanine Loan Agreement by and between PLATINUM LODGING MEZZ, LLC, an Ohio limited liability company ("**Borrower**") and MORGAN STANLEY MORTGAGE CAPITAL INC., a New York corporation ("**Lender**")

2. Mezzanine Promissory Note in the original principal sum of $10,500,000.00 made by Borrower to Lender

3. Pledge and Security Agreement (Mezzanine) made by Borrower in favor of Lender

4. Mezzanine Subordination of Management Agreement among Borrower, FOCUS LODGING GROUP, LLC, an Ohio limited liability company ("**Manager**"), and Lender.

5. Mezzanine Guaranty of Payment and Guaranty of Recourse Obligations of Borrower by Matthew Studer, Fred Graft, Ernie Malas and Peter Coratola (collectively, "**Guarantor**") in favor of Lender

6. Mezzanine Environmental Indemnity Agreement given by Borrower and Guarantor in favor of Lender

7. Mezzanine Assignment of Interest Rate Cap Agreement and Security Agreement made by Borrower in favor of Lender and acknowledged by IXIS Financial Products, Inc., as cap seller

8. Membership Certificate for Platinum Lodging, LLC

9. Stock, Certificate for Water Park Management Company, Inc.

10. One (1) UCC-1 Financing Statement with respect to the Pledge and Security Agreement (Mezzanine) by Borrower, as debtor, and Lender, as secured party, filed with the Secretary of State of the State of Ohio

11. Intercreditor Agreement among Lender, as holder of the Mortgage Loan, and Lender, as holder of the Mezzanine Loan

12. Post Closing Obligations Letter

13. Mezzanine Authorization to Wire Funds

14. Mezzanine Borrower's Certification

# EXHIBIT C

MSMCI Loan No.: 06-26034

## OMNIBUS ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS OMNIBUS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Assignment"), made as of the 20th day of December, 2006 by HIGHLAND HOLDING GRANTOR TRUST, SERIES A ("Assignor"), and HIGHLAND PARK CDO I, LTD. ("Assignee");

WHEREAS, PLATINUM LODGING MEZZ, LLC, an Ohio limited liability company ("Borrower"), is indebted to Assignor with respect to a loan in the original principal amount of $10,500,000.00 (the "Loan") made to Borrower pursuant to that certain Mezzanine Loan Agreement (as amended, modified, supplemented or restated from time to time, the "Loan Agreement"), dated as of August 3, 2006, by and between Borrower and MORGAN STANLEY MORTGAGE CAPITAL INC., a New York corporation;

WHEREAS, MORGAN STANLEY MORTGAGE CAPITAL INC. assigned all of its right, title and interest in and to the Loan to Assignor, pursuant to that certain Omnibus Assignment and Assumption Agreement, dated as of December 5, 2006, by and between MORGAN STANLEY MORTGAGE CAPITAL INC. and Assignor, and Assignor agreed to acquire and assume such right, title and interest;

WHEREAS, HFT RE CDO 2006-2, LTD. assigned all of its right, title and interest in and to the Loan to Assignor, pursuant to that certain Omnibus Assignment and Assumption Agreement, dated as of December 13, 2006, by and between HFT RE CDO 2006-2, LTD. and Assignor, and Assignor agreed to acquire and assume such right, title and interest; and

WHEREAS, Assignor has agreed to sell, transfer and assign to Assignee all of Assignor's right, title and interest in and to the Loan and Assignee has agreed to acquire and assume such right, title and interest.

KNOW ALL MEN BY THESE PRESENTS, that in consideration of the sum of TEN DOLLARS ($10.00) lawful money of the United States and other good and valuable consideration, to it in hand paid at or before the ensealing and delivery of these presents, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    Assignment and Assumption.

(a)    Assignor, by these presents, does hereby grant, bargain, sell, assign, transfer and set over unto Assignee, without recourse and without covenant, representation or warranty in any respect (except as expressly set forth herein and in any of the other instruments entered into in connection with the sale, transfer and assignment of the Loan from Assignor to Assignee), all of Assignor's right, title and interest in and to the following:

(i)    the Loan; and

(ii)    the loan documents listed on **Schedule A** attached hereto and made a part hereof (collectively, the "*Loan Documents*") and all of Assignor's right, title and interest in, to and under the Loan and the Loan Documents, and all of Assignor's right, title and interest, if

any, in, to and under all other documents executed and/or delivered in connection with the loan evidenced and/or secured by the Loan Documents, including, without limitation, all of Assignor's, right, title and interest in any mezzanine loan policies, opinions delivered in connection with the Loan Documents, certificates, collateral, certificates of deposit, letters of credit, demands, causes of action, all related certificates, bank accounts, operating accounts, reserve accounts, escrow accounts and other accounts, opinions, financial statements of Borrower and any guarantees and any other collateral executed and/or delivered in or to or with respect to the Loan Documents, and all claims and choses in action related to the Loan Documents, and all of Assignor's right, title and interest in, to and under such claims and choses in action.

TO HAVE AND TO HOLD unto Assignee, its successors, and assigns forever.

(b)    Assignee hereby accepts the assignment set forth in clause (a) of this Paragraph 1 and hereby assumes all of the obligations of Assignor, as the lender under the Loan Documents, arising from and after the date hereof with respect to the period from and after the date hereof.

2.    <u>Assignor Representations and Warranties</u>.    Assignor hereby represents and warrants to Assignee as of the date hereof that:

(i)    Assignor is duly organized, validly existing and in good standing under the laws of the jurisdiction under which it was organized with full power to execute and deliver this Assignment,

(ii)    Assignor has duly authorized the execution, delivery and performance of this Assignment and the sale of the Loan and has duly executed and delivered this Assignment. To Assignor's knowledge, no consent, approval, authorization or order of any court or governmental agency or any other person or entity is required for the execution and delivery of this Assignment by Assignor or for the performance by Assignor of its obligations hereunder, or if required, such consent, approval, authorization or order has been obtained,

(iii)    the execution and delivery of this Assignment and the sale of the Loan by Assignor, and the performance of, and compliance with, the terms of this Assignment by Assignor, will not violate Assignor's organizational documents or, to Assignor's knowledge, constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which Assignor is a party or that is applicable to Assignor or any of Assignor's assets,

(iv)    <u>Schedule A</u> represents a complete list of all material Loan Documents delivered by Borrower in connection with the Loan Agreement, and that true, correct and complete counterpart originals of the Loan Documents have been delivered by Assignor to Assignee,

(v)    to Assignor's knowledge, there currently exists no default or event which, with the giving of notice or lapse of time, or both, would constitute a default under any of the Loan Documents,

(vi)    the proceeds of the Loan have been fully disbursed, and there is no requirement for future advances thereunder,

(vii)    the principal amount outstanding under the Loan Documents as of the execution and delivery of this Assignment is $10,500,000.00,

(viii)    interest and any other amounts payable under the Loan Documents has been paid through and including December 20, 2006,

(ix)    the Loan is not cross-defaulted with any loan other than the Mortgage Loan (as defined in the Loan Documents),

(x)    Assignor is the legal and beneficial owner of the entire Loan, free and clear of any lien, security interest, option or other charge or encumbrance on, in or to the Loan. Assignor has the full right, power and authority to sell, assign and transfer the Loan to Assignee,

(xi)    Assignor has not dealt with any broker, investment banker, agent or other person, other than Assignee and its affiliates, that may be entitled to any commission or compensation in connection with the sale of the Loan, and

(xii)    Assignor has not received any actual written notice of (a) a default under the Mortgage Loan or (b) a waiver of any material default, breach, violation or event of acceleration existing under the Mortgage Loan.

3.    Assignee Representations and Warranties.  Assignee represents and warrants to Assignor, as of the date hereof, as follows:

(a)    Assignee is duly organized, validly existing and in good standing under the laws of the Cayman Islands,

(b)    The execution and delivery of this Assignment and the purchase of the Loan by Assignee, and the performance of, and compliance with, the terms of this Assignment by Assignee, will not violate Assignee's organizational documents or, to Assignee's knowledge, constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which Assignee is a party or that is applicable to Assignee or any of Assignee's assets,

(c)    Assignee has duly authorized the execution, delivery and performance of this Assignment and the purchase of the Loan and has duly executed and delivered this Assignment.  To Assignee's knowledge, no consent, approval, authorization or order of any court or governmental agency or any other person or entity is required for the execution and delivery of this Assignment by Assignee or for the performance by Assignee of its obligations hereunder, or if required, such consent, approval, authorization or order has been obtained, and

(d)    Assignee has not dealt with any broker, investment banker, agent or other person, other than Assignor and its affiliates, that may be entitled to any commission or compensation in connection with the sale of the Loan.

4.    <u>Miscellaneous</u>

(a)    It is hereby understood and agreed that any and all commitment and loan origination fees collected by Assignor are not being transferred hereby and that Assignor shall have the sole rights thereto.

(b)    This Assignment is being delivered subject to the Intercreditor Agreement references on Schedule A.

(c)    This Assignment may be executed by one or more parties to this Assignment in any number of counterparts and all said counterparts taken together shall be deemed to constitute one and the same instrument.

(d)    The Bank of New York Trust Company, National Association (the "Trustee"), solely in its capacity as Trustee for the Highland Holding Grantor Trust, Series A, and not in its individual capacity has executed this Assignment at the express direction of the HFT RE CDO 2006-2, Ltd. as provided under the Master Trust Agreement, dated December 13, 2006 and will perform this Assignment solely in its capacity as Trustee under the Grantor Trust Documents and shall have no individual liability for any of the obligations or claims arising under this Assignment. No party shall have no direct right of action against the Assignor in its individual capacity for any action or omission by the Trustee under this Assignment.

(e)    This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Assignor and Assignee have duly executed this Assignment as of the date and year first written above.

ASSIGNOR:

**HIGHLAND HOLDING GRANTOR TRUST, SERIES A**

By: The Bank of New York Trust Company,
    National Association, solely in its
    capacity as Trustee for the Highland
    Holding Grantor Trust, Series A, and
    not in its individual capacity

By: _____
    Name:    SHELLY A. STERLING
    Title:   VICE PRESIDENT

ASSIGNEE:

**HIGHLAND PARK CDO I, LTD.**

By: _____
    Name:
    Title:

## SCHEDULE A

(All documents are dated as of August 3, 2006, unless otherwise noted)

1.  Mezzanine Loan Agreement by and between PLATINUM LODGING MEZZ, LLC, an Ohio limited liability company ("**Borrower**") and MORGAN STANLEY MORTGAGE CAPITAL INC., a New York corporation ("**Lender**")

2.  Mezzanine Promissory Note in the original principal sum of $10,500,000.00 made by Borrower to Lender

3.  Pledge and Security Agreement (Mezzanine) made by Borrower in favor of Lender

4.  Mezzanine Subordination of Management Agreement among Borrower, FOCUS LODGING GROUP, LLC, an Ohio limited liability company ("**Manager**"), and Lender.

5.  Mezzanine Guaranty of Payment and Guaranty of Recourse Obligations of Borrower by Matthew Studer, Fred Graft, Ernie Malas and Peter Coratola (collectively, "**Guarantor**") in favor of Lender

6.  Mezzanine Environmental Indemnity Agreement given by Borrower and Guarantor in favor of Lender

7.  Mezzanine Assignment of Interest Rate Cap Agreement and Security Agreement made by Borrower in favor of Lender and acknowledged by IXIS Financial Products, Inc., as cap seller

8.  Membership Certificate for Platinum Lodging, LLC

9.  Stock, Certificate for Water Park Management Company, Inc.

10. One (1) UCC-1 Financing Statement with respect to the Pledge and Security Agreement (Mezzanine) by Borrower, as debtor, and Lender, as secured party, filed with the Secretary of State of the State of Ohio

11. Intercreditor Agreement among Lender, as holder of the Mortgage Loan, and Lender, as holder of the Mezzanine Loan

12. Post Closing Obligations Letter

13. Mezzanine Authorization to Wire Funds

14. Mezzanine Borrower's Certification

# EXHIBIT D

MSMCI Loan No.: 06-26034

## OMNIBUS ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS OMNIBUS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Assignment**"), made as of the 20th day of December, 2006 by **HIGHLAND PARK CDO I, LTD.** ("**Assignor**"), and **HIGHLAND PARK CDO I GRANTOR TRUST, SERIES A** ("**Assignee**");

WHEREAS, PLATINUM LODGING MEZZ, LLC, an Ohio limited liability company ("**Borrower**"), is indebted to Assignor with respect to a loan in the original principal amount of $10,500,000.00 (the "**Loan**") made to Borrower pursuant to that certain Mezzanine Loan Agreement (as amended, modified, supplemented or restated from time to time, the "**Loan Agreement**"), dated as of August 3, 2006, by and between Borrower and MORGAN STANLEY MORTGAGE CAPITAL INC. ("**Morgan Stanley**"), a New York corporation;

WHEREAS, Morgan Stanley assigned all of its right, title and interest in and to the Loan to HFT RE CDO 2006-2, Ltd. ("**HFT**"), a Cayman Islands limited liability company, pursuant to that certain Omnibus Assignment and Assumption Agreement, dated as of December 5, 2006, by and between Morgan Stanley and HFT, and HFT agreed to acquire and assume such right, title and interest;

WHEREAS, HFT assigned all of its right, title and interest in and to the Loan to Highland Holding Grantor Trust, Series A, pursuant to that certain Omnibus Assignment and Assumption Agreement, dated as of December 13, 2006, by and between HFT and Highland Holding Grantor Trust, Series A, and Highland Holding Grantor Trust, Series A agreed to acquire and assume such right, title and interest;

WHEREAS, Highland Holding Grantor Trust, Series A assigned all of its right, title and interest in and to the Loan to Assignor, pursuant to that certain Omnibus Assignment and Assumption Agreement, dated as of December 20, 2006, by and between Highland Holding Grantor Trust, Series A and Assignor, and Assignor agreed to acquire and assume such right, title and interest; and

WHEREAS, Assignor has agreed to sell, transfer and assign to Assignee all of Assignor's right, title and interest in and to the Loan and Assignee has agreed to acquire and assume such right, title and interest.

KNOW ALL MEN BY THESE PRESENTS, that in consideration of the sum of TEN DOLLARS ($10.00) lawful money of the United States and other good and valuable consideration, to it in hand paid at or before the ensealing and delivery of these presents, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    Assignment and Assumption.

(a)    Assignor, by these presents, does hereby grant, bargain, sell, assign, transfer and set over unto Assignee, without recourse and without covenant, representation or warranty in any respect (except as expressly set forth herein and in any of the other instruments

entered into in connection with the sale, transfer and assignment of the Loan from Assignor to Assignee), all of Assignor's right, title and interest in and to the following:

        (i)     the Loan; and

        (ii)     the loan documents listed on **Schedule A** attached hereto and made a part hereof (collectively, the **"*Loan Documents*"**) and all of Assignor's right, title and interest in, to and under the Loan and the Loan Documents, and all of Assignor's right, title and interest, if any, in, to and under all other documents executed and/or delivered in connection with the loan evidenced and/or secured by the Loan Documents, including, without limitation, all of Assignor's, right, title and interest in any mezzanine loan policies, opinions delivered in connection with the Loan Documents, certificates, collateral, certificates of deposit, letters of credit, demands, causes of action, all related certificates, bank accounts, operating accounts, reserve accounts, escrow accounts and other accounts, opinions, financial statements of Borrower and any guarantees and any other collateral executed and/or delivered in or to or with respect to the Loan Documents, and all claims and choses in action related to the Loan Documents, and all of Assignor's right, title and interest in, to and under such claims and choses in action.

        TO HAVE AND TO HOLD unto Assignee, its successors, and assigns forever.

        (b)     Assignee hereby accepts the assignment set forth in clause (a) of this Paragraph 1 and hereby assumes all of the obligations of Assignor, as the lender under the Loan Documents, arising from and after the date hereof with respect to the period from and after the date hereof.

        2.     <u>Assignor Representations and Warranties</u>.  Assignor hereby represents and warrants to Assignee as of the date hereof that:

        (i)     Assignor is duly organized, validly existing and in good standing under the laws of the jurisdiction under which it was organized with full power to execute and deliver this Assignment,

        (ii)     Assignor has duly authorized the execution, delivery and performance of this Assignment and the sale of the Loan and has duly executed and delivered this Assignment. To Assignor's knowledge, no consent, approval, authorization or order of any court or governmental agency or any other person or entity is required for the execution and delivery of this Assignment by Assignor or for the performance by Assignor of its obligations hereunder, or if required, such consent, approval, authorization or order has been obtained,

        (iii)     the execution and delivery of this Assignment and the sale of the Loan by Assignor, and the performance of, and compliance with, the terms of this Assignment by Assignor, will not violate Assignor's organizational documents or, to Assignor's knowledge, constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which Assignor is a party or that is applicable to Assignor or any of Assignor's assets,

(iv)    Schedule A represents a complete list of all material Loan Documents delivered by Borrower in connection with the Loan Agreement, and that true, correct and complete counterpart originals of the Loan Documents have been delivered by Assignor to Assignee,

(v)    to Assignor's knowledge, there currently exists no default or event which, with the giving of notice or lapse of time, or both, would constitute a default under any of the Loan Documents,

(vi)    the proceeds of the Loan have been fully disbursed, and there is no requirement for future advances thereunder,

(vii)    the principal amount outstanding under the Loan Documents as of the execution and delivery of this Assignment is $10,500,000.00,

(viii)    interest and any other amounts payable under the Loan Documents has been paid through and including December 20, 2006,

(ix)    the Loan is not cross-defaulted with any loan other than the Mortgage Loan (as defined in the Loan Documents),

(x)    Assignor is the legal and beneficial owner of the entire Loan, free and clear of any lien, security interest, option or other charge or encumbrance on, in or to the Loan. Assignor has the full right, power and authority to sell, assign and transfer the Loan to Assignee,

(xi)    Assignor has not dealt with any broker, investment banker, agent or other person, other than Assignee and its affiliates, that may be entitled to any commission or compensation in connection with the sale of the Loan, and

(xii)    Assignor has not received any actual written notice of (a) a default under the Mortgage Loan or (b) a waiver of any material default, breach, violation or event of acceleration existing under the Mortgage Loan.

3.    Assignee Representations and Warranties.  Assignee represents and warrants to Assignor, as of the date hereof, as follows:

(a)    Assignee is duly organized, validly existing and in good standing under the laws of the Cayman Islands,

(b)    The execution and delivery of this Assignment and the purchase of the Loan by Assignee, and the performance of, and compliance with, the terms of this Assignment by Assignee, will not violate Assignee's organizational documents or, to Assignee's knowledge, constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which Assignee is a party or that is applicable to Assignee or any of Assignee's assets,

(c)    Assignee has duly authorized the execution, delivery and performance of this Assignment and the purchase of the Loan and has duly executed and delivered this

Assignment. To Assignee's knowledge, no consent, approval, authorization or order of any court or governmental agency or any other person or entity is required for the execution and delivery of this Assignment by Assignee or for the performance by Assignee of its obligations hereunder, or if required, such consent, approval, authorization or order has been obtained, and

(d)    Assignee has not dealt with any broker, investment banker, agent or other person, other than Assignor and its affiliates, that may be entitled to any commission or compensation in connection with the sale of the Loan.

4.    <u>Miscellaneous</u>

(a)    It is hereby understood and agreed that any and all commitment and loan origination fees collected by Assignor are not being transferred hereby and that Assignor shall have the sole rights thereto.

(b)    This Assignment is being delivered subject to the Intercreditor Agreement references on Schedule A.

(c)    This Assignment may be executed by one or more parties to this Assignment in any number of counterparts and all said counterparts taken together shall be deemed to constitute one and the same instrument.

(d)    This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

(e)    The Bank of New York Trust Company, National Association (the "Trustee"), solely in its capacity as Trustee for the Highland Park CDO 1 Grantor Trust, Series A, and not in its individual capacity has executed this Assignment at the express direction of the Assignor as provided under the Master Trust Agreement, dated December 20, 2006 and will perform this Assignment solely in its capacity as Trustee under the Grantor Trust Documents and shall have no individual liability for any of the obligations or claims arising under this Assignment. No party shall have no direct right of action against the Trustee in its individual capacity for any action or omission by the Trustee under this Assignment.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Assignor and Assignee have duly executed this Assignment as of the date and year first written above.

ASSIGNOR:

**HIGHLAND PARK CDO I, LTD.**

By: _____

    Name:

    Title:    **Chris** Marett

           Director

ASSIGNEE:

**HIGHLAND PARK CDO I GRANTOR TRUST, SERIES A**

By: The Bank of New York Trust Company, National Association, solely in its capacity as trustee for the Highland Park CDO I Grantor Trust, Series A, and not in its individual capacity

    By: _____

        Name:

        Title:

IN WITNESS WHEREOF, Assignor and Assignee have duly executed this Assignment as of the date and year first written above.

ASSIGNOR:

**HIGHLAND PARK CDO I, LTD.**

By: _____
     Name:
     Title:

ASSIGNEE:

**HIGHLAND PARK CDO I GRANTOR TRUST, SERIES A**

By: The Bank of New York Trust Company, National
     Association, solely in its capacity as trustee for the
     Highland Park CDO I Grantor Trust, Series A, and not
     in its individual capacity

     By: _____
        Name:  SHELLY A. STERLING
        Title:    VICE PRESIDENT

## SCHEDULE A

(All documents are dated as of August 3, 2006, unless otherwise noted)

1.  Mezzanine Loan Agreement by and between PLATINUM LODGING MEZZ, LLC, an Ohio limited liability company ("**Borrower**") and MORGAN STANLEY MORTGAGE CAPITAL INC., a New York corporation ("**Lender**")

2.  Mezzanine Promissory Note in the original principal sum of $10,500,000.00 made by Borrower to Lender

3.  Pledge and Security Agreement (Mezzanine) made by Borrower in favor of Lender

4.  Mezzanine Subordination of Management Agreement among Borrower, FOCUS LODGING GROUP, LLC, an Ohio limited liability company ("**Manager**"), and Lender.

5.  Mezzanine Guaranty of Payment and Guaranty of Recourse Obligations of Borrower by Matthew Studer, Fred Graft, Ernie Malas and Peter Coratola (collectively, "**Guarantor**") in favor of Lender

6.  Mezzanine Environmental Indemnity Agreement given by Borrower and Guarantor in favor of Lender

7.  Mezzanine Assignment of Interest Rate Cap Agreement and Security Agreement made by Borrower in favor of Lender and acknowledged by IXIS Financial Products, Inc., as cap seller

8.  Membership Certificate for Platinum Lodging, LLC

9.  Stock, Certificate for Water Park Management Company, Inc.

10. One (1) UCC-1 Financing Statement with respect to the Pledge and Security Agreement (Mezzanine) by Borrower, as debtor, and Lender, as secured party, filed with the Secretary of State of the State of Ohio

11. Intercreditor Agreement among Lender, as holder of the Mortgage Loan, and Lender, as holder of the Mezzanine Loan

12. Post Closing Obligations Letter

13. Mezzanine Authorization to Wire Funds

14. Mezzanine Borrower's Certification

# EXHIBIT E

MEZZANINE LOAN SALE AND PARTICIPATION AGREEMENT

Dated as of December 5, 2006

by and among

**MORGAN STANLEY MORTGAGE CAPITAL INC.**
**(Initial Lender)**

and

**HFT RE CDO 2006-2, LTD.**
**(Whole Note Purchaser)**

and

**HFT RE CDO 2006-2, LTD.**
**(PI Participant)**

and

**MORGAN STANLEY MORTGAGE CAPITAL INC.**
**(IO Participant)**

For Mezzanine Promissory Note with an Initial Principal Amount of
$10,500,000

Regarding the following address:

Holiday Inn Hotel and Suites
4560 Hilton Corporate Drive
Columbus, Ohio

# TABLE OF CONTENTS

Page

1.  <u>Definitions.</u>  Whenever used in this Agreement, the following terms shall have the respective meanings set forth below.  In addition, any capitalized term defined in the recitals to or in any other section of this Agreement, but not listed below, shall have the meaning assigned to such term in the recitals to or in such other section of this Agreement.  Furthermore, any capitalized term used but not defined in this Agreement shall have the meaning assigned to such term, or otherwise have the same meaning that such term would, in the Intercreditor Agreement.............................2

2.  <u>Sale of Note; Issuance of Participation Interests; Servicing; Major Decisions.</u> .................5

3.  <u>Payments on the Participant Interests.</u> ................................................................7

4.  <u>Limitation on Liability of the Participants.</u>  The Participants shall have no liability to one another or to the Initial Lender except with respect to acts or omissions caused by or resulting from the gross negligence or willful misconduct of such Participant or a breach of this Agreement.  The Initial Lender shall have no liability to the Participants except with respect to acts or omissions caused by, or resulting from the gross negligence or willful misconduct of the Initial Lender or its breach of this Agreement.  Nothing in this <u>Section 4</u> is intended to limit the liability of the Initial Lender under the Loan Assignment Documents.  Legal title to, and custody of, the Subject Note shall remain vested in, and be held exclusively by, the Whole Loan Purchaser for the benefit of each of the PI Participant and the IO Participant in accordance with their respective interests in the Subject Note.  The IO Participant and PI Participant acknowledge and agree that Whole Note Purchaser may appoint a third party pursuant to the Servicing Agreement or another agreement to hold the Subject Note and Subject Loan Documents and if so, shall provide IO Participant with the name and address of such party.  Each of the PI Participant and IO Participant hereby acknowledges and agrees that the Whole Note Purchaser or Servicer holding the Subject Note for the benefit of the PI Participant and the IO Participant is not intended, and shall not be construed, to create an express, implied or constructive trust or other fiduciary relationship or obligations running from the Noteholder to either the PI Participant or the IO Participant. .............................................................8

5.  <u>Representations of the Participants.</u> .......................................................................8

6.  <u>Representations of the Initial Lender.</u>  The Initial Lender represents and warrants to the Participants, as of the Purchase Date, that:..................................................9

7.  <u>Independent Analysis of the Participants.</u>  Each of the Participants acknowledges that it has, independently and without reliance upon the Initial Lender or any other Participant and based on such documents and information as such Participant has deemed appropriate, made such Participant's own credit analysis and decision to purchase its Participant Interest and enter into this Agreement.  Each Participant hereby acknowledges that (except as set forth hereinabove) neither the Initial Lender nor any other Participant has made any representations or warranties with respect to the Subject Note or the Subject Loan (other than any additional express representations and warranties made by the Initial Lender in the Subject Loan Assignment Documents), and that such Participant assumes all risk of loss in

connection with its Participant Interest hereunder. Each Participant acknowledges and agrees that no other Participant shall be liable with respect to representations or warranties of the Initial Lender contained herein. Nothing herein shall absolve any party from its willful misconduct, gross negligence or fraud. ................................... 10

8.    No Creation of a Partnership or Exclusive Purchase Right. Nothing contained in this Agreement, and no action taken pursuant hereto shall be deemed to constitute a partnership, association, joint venture or other entity. Neither the Initial Lender, Whole Loan Purchaser nor their respective Affiliate shall have any obligation whatsoever to offer to the Participants the opportunity to purchase an interest in any future loans originated, purchased or otherwise acquired by the Initial Lender, Whole Loan Purchaser or their respective Affiliates and if the Initial Lender, Whole Loan Purchaser or their respective Affiliates chooses to offer to any Participant the opportunity to purchase an interest in any future loans originated, purchased or otherwise acquired by the Initial Lender, Whole Loan Purchaser or their respective Affiliates, such offer shall be at such purchase price and interest rate as the Initial Lender, Whole Loan Purchaser or their respective Affiliates, as applicable, chooses, in its sole and absolute discretion. No Participant and no Affiliate of a Participant shall have any obligation whatsoever to offer to the Initial Lender or any other Participant the opportunity to purchase an interest in any future loans originated, purchased or otherwise acquired by any Participant or its Affiliates and if any Participant or its Affiliates chooses to offer to the Initial Lender or any other Participant the opportunity to purchase an interest in any future loans originated, purchased or otherwise acquired by any such Participant or its Affiliates, such offer shall be at such purchase price and interest rate as such Participant or its Affiliates, as applicable, chooses, in its sole and absolute discretion. ......................................................................................................... 10

9.    Not a Security. The Participant Interests created hereunder shall not be deemed to be securities within the meaning of the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934. Notwithstanding the foregoing, no Participant will solicit offers for, or offer to sell, its Participant Interest by any form of general solicitation or general advertising (as those terms are used in Regulation D under the Securities Act) or in any manner involving a public offering within the meaning of Section 4(2) of the Securities Act, and no Participant will offer or sell its Participant Interest in a manner that, if such Participant Interest were determined to be a security, would violate any applicable federal or state securities laws. .................................................................... 11

10.   Sale of the Subject Note/Participant Interests. .............................................. 11

11.   Other Business Activities of the Participants. The Participants each acknowledge that each party hereto may make loans or otherwise extend credit to or purchase loans to, and generally engage in any kind of business with, the Subject Borrower and its Affiliates, and receive payments on such originations, extensions of credit or acquisitions of loans to the Subject Borrower and its Affiliates and otherwise act with respect thereto freely and without accountability in the same manner as if this Agreement and the transactions contemplated hereby were not in effect. However, in no event shall any Participant transfer its Participant Interest to the Subject Borrower or any Affiliate thereof. ................................................................ 12

12.    Intentionally Omitted ..................................................................................... 12
13.    No Pledge or Loan.  This Agreement shall not be deemed to represent a pledge of
       any interest in the Subject Loan by the Initial Lender to any Participant, or a loan
       from any Participant to the Initial Lender. ...................................................... 13
14.    Property Held as Security for the Subject Loan.  Each Participant agrees that no
       individual Participant shall have any individual interest in any property taken as
       security for the Subject Loan provided, however, that if any such property or the
       proceeds thereof shall be applied in reduction of the PI Balance of the Subject
       Note, then each Participant shall be entitled to receive its share of such application
       in accordance with the terms of this Agreement. ............................................ 13
15.    Governing Law; Waiver of Jury Trial.  THIS AGREEMENT AND THE
       RESPECTIVE RIGHTS AND OBLIGATIONS OF THE PARTIES
       HEREUNDER SHALL BE CONSTRUED IN ACCORDANCE WITH AND
       GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE
       TO CONTRACTS NEGOTIATED, MADE AND TO BE PERFORMED
       ENTIRELY WITHIN SUCH STATE.  EACH OF THE PARTIES HEREBY
       IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY
       ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF
       RELATING TO THIS AGREEMENT. ............................................................. 13
16.    Modifications.  This Agreement shall not be modified, cancelled or terminated
       except by an instrument in writing signed by the parties hereto. ...................... 13
17.    Successors and Assigns; Third-Party Beneficiaries.  This Agreement shall inure to
       the benefit of and be binding upon the parties hereto and their respective
       successors and permitted assigns.  Except as expressly provided in this
       Agreement, none of the provisions of this Agreement shall be for the benefit of or
       enforceable by any Person not a party hereto ................................................. 13
18.    Counterparts; Facsimile Execution.  This Agreement may be executed in any
       number of counterparts and all of such counterparts shall together constitute one
       and the same instrument.  This Agreement may be executed by signature(s)
       transmitted by facsimile ................................................................................. 13
19.    General Interpretive Principles.  For purposes of this Agreement, except as
       otherwise expressly provided or unless the context otherwise requires:  (i) the
       terms defined in this Agreement include the plural as well as the singular, and the
       use of any gender herein shall be deemed to include the other gender; (ii)
       accounting terms not otherwise defined herein have the meanings assigned to
       them in accordance with generally accepted accounting principles; (iii) references
       herein to "Articles", "Sections", "Subsections", "Paragraphs", recitals and other
       subdivisions without reference to a document are to designated Articles, Sections,
       Subsections, Paragraphs, recitals and other subdivisions of this Agreement; (iv) a
       reference to a Subsection without further reference to a Section is a reference to
       such Subsection as contained in the same Section in which the reference appears,
       and this rule shall also apply to Paragraphs and other subdivisions; (v) the words
       "herein", "hereof", "hereunder", "hereto", "hereby" and other words of similar
       import refer to this Agreement as a whole and not to any particular provision; and
       (vi) the terms "include" or "including" shall mean without limitation by reason of
       enumeration.  The titles, captions and headings of the respective sections,

subsections and paragraphs of this Agreement have been inserted for convenience of reference only and are not intended to summarize or otherwise describe the subject matter of those sections, subsections and paragraphs and shall not be given any consideration in the construction of this Agreement. ........................................13

20.    Notices.  All notices required hereunder shall be given in writing and personally delivered or sent by facsimile transmission, reputable overnight delivery service or certified United States mail, postage prepaid, and addressed to the respective parties at their addresses set forth on Exhibit B hereto, or at such other address as any party shall hereafter inform the other party by written notice given as aforesaid.  All written notices so given shall be deemed effective upon receipt or, if mailed, upon the earlier to occur of receipt or the expiration of the fourth day following the date of mailing.........................................................................................14

21.    Participant Register.  Ownership of the Subject Note, the PI Participant Interest and the IO Participation shall be registered as to both the principal and interest and may be transferred by a Participant to a third person only in compliance with the terms and provisions of this Agreement and by surrendering the related IO Participation Certificate or the PI Participation Certificate, as applicable and the issuance by or on behalf of the Whole Loan Purchaser of a new obligation to the transferee, as required under the U.S. Treasury Regulations Section 1.871-14(c). The Whole Loan Participant may appoint a custodian, a servicer or its agent to maintain, or cause to be maintained, a register (a "Register") within the meaning of U.S. Treasury Regulations Section 5(f).103-1(c) on which it will record the names and addresses of, and wire transfer instruction for, the Participants and the holder of the Subject Note.  Any transfer of all or a portion of the IO Participation and/or the PI Participant Interest in accordance with the terms and provisions hereof shall be recorded in the Register.  The Whole Loan Purchaser and the Participants shall be entitled to treat each person whose name is recorded in such Register pursuant to the terms hereof as the applicable Participant and the absolute owner of the related IO Participation or PI Participant Interest, as applicable, for all purposes under this Agreement, and the Whole Loan Purchaser shall not be affected by any notice to the contrary (other than a notice given in connection with a transfer of all or a portion of the IO Participation and/or the PI Participant Interest in accordance with terms of this Agreement).  The Register shall be available for inspection from time to time by any Participant upon reasonable prior notice to the Whole Loan Purchaser (or any agent on its behalf)...........14

22.    Servicing Agreement.  Whole Note Purchaser shall provide each of the Participants a copy of the executed Servicing Agreement, which shall be reasonably acceptable to all Participants. ........................................................................14


EXHIBIT A    Participant Interest Schedule
EXHIBIT B    Notice Information
EXHIBIT C    Form of IO Participation Certificate
EXHIBIT D    Form of PI Participation Certificate

THIS MEZZANINE LOAN SALE AND PARTICIPATION AGREEMENT (this "Agreement"), dated as of December 5, 2006, by and among MORGAN STANLEY MORTGAGE CAPITAL INC. ("Initial Lender"), HFT RE CDO 2006-2, LTD. (as "Whole Note Purchaser" or, together with any future holders of the PI Participant Interest, the "PI Participant"), and MORGAN STANLEY MORTGAGE CAPITAL INC. (together with any future holders of the IO Participation, "IO Participant").

## WITNESSETH:

WHEREAS, there currently exists a mezzanine debt obligation in the aggregate principal amount of $10,500,000, (as such may have been amended or restated to the date hereof and may hereafter be further amended, restated, supplemented or otherwise modified from time to time, the "Subject Loan") that is evidenced by (among other things) that certain Promissory Note, dated August 3, 2006 in the original principal amount of $10,500,000 (as such may have been amended or restated to the date hereof and may hereafter be further amended, restated, supplemented or otherwise modified from time to time, "Subject Note"), and that certain Mezzanine Loan Agreement, dated as of August 3, 2006 (as such may have been amended or restated to the date hereof and may hereafter be further amended, restated, supplemented or otherwise modified from time to time, the "Subject Loan Agreement"); and is secured by, among other things, that certain Pledge and Security Agreement, dated as of August 3, 2006 (as such may have been amended or restated to the date hereof and may hereafter be further amended, restated, supplemented or otherwise modified from time to time, collectively, the "Pledge Agreement") made by Platinum Lodging Mezz, LLC, an Ohio limited liability company ("Subject Borrower"), pledging all of Subject Borrower's equity ownership interests in Platinum Lodging, LLC, an Ohio limited liability company ("Mezzanine Borrower");

WHEREAS, prior to the origination of the Subject Loan, the Initial Lender or an affiliate thereof (in such capacity, the "Originator") also originated a loan (as the same may be amended, modified, restated or in effect from time to time, the "Mortgage Loan") evidenced by that certain Promissory Note, dated July 18, 2006, that certain Loan Agreement, dated as of July 18, 2006 and secured by, among other things, that certain Mortgage and Security Agreement made by Platinum Lodging, LLC, an Ohio limited liability company ("Mortgage Borrower") and dated as of July 18, 2006 on a fee simple interest in the real property identified on the cover page to this Agreement, which Mortgage Loan was assigned to Morgan Stanley Capital I Inc. Commercial Mortgage Pass Through Certificate Series 2006-XLF.

WHEREAS, prior to the execution and delivery of this Agreement, in order to set forth the respective rights and obligations of the holders of the Mortgage Loan and the Subject Loan, the Originator and the Initial Lender executed and delivered that certain Intercreditor Agreement, dated as of August 3, 2006 (the "Intercreditor Agreement");

WHEREAS, pursuant to the terms and conditions hereof, (i) the Initial Lender desires to sell the Subject Note to Whole Note Purchaser; and (ii) simultaneously therewith, the Whole Note Purchaser desires to (A) create two (2) separate certificated *pari passu* participation interests in its interest in the Subject Note, the IO Participation and the PI Participant Interest (as defined herein), (B) in its capacity as PI Participant, retain the PI Participant Interest, and (C) transfer the IO Participation to the IO Participant, all on the terms and conditions described herein;

WHEREAS, the parties desire to set forth their respective interests in the Subject Note and the Subject Loan Documents and their relationship to each other in respect of the Subject Note and the agreements regarding the administration, servicing and enforcement of the Subject Note and the Subject Loan Documents.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto mutually agree as follows:

1.      <u>Definitions</u>.  Whenever used in this Agreement, the following terms shall have the respective meanings set forth below.  In addition, any capitalized term defined in the recitals to or in any other section of this Agreement, but not listed below, shall have the meaning assigned to such term in the recitals to or in such other section of this Agreement.  Furthermore, any capitalized term used but not defined in this Agreement shall have the meaning assigned to such term, or otherwise have the same meaning that such term would, in the Intercreditor Agreement.

"<u>Affiliate</u>" means, as to any particular Person, any Person directly or indirectly, through one or more intermediaries, controlling, Controlled by or under common control with the Person or Persons in question.

"<u>Agreement</u>" shall mean this Participation Agreement, all exhibits and schedules hereto and all amendments hereof and supplements hereto.

"<u>Business Day</u>" means any day other than a Saturday, a Sunday or a legal holiday on which national banks are not open for general business in (i) the State of New York or (ii) the state where the servicing offices of the Servicer are located.

"<u>Control</u>" means the ownership, directly or indirectly, in the aggregate of more than fifty percent (50%) of the beneficial ownership interests of an entity and the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of an entity, whether through the ability to exercise voting power, by contract or otherwise. "Controlled by," "controlling" and "under common control with" shall have the respective correlative meaning thereto.

"<u>Initial Lender</u>" shall have the meaning assigned to such term in the first paragraph of this Agreement.

"<u>Intercreditor Agreement</u>" shall have the meaning assigned to such term in the recitals.

"<u>Interest Period</u>" shall have the meaning assigned to such term in the Subject Loan Agreement.

"<u>IO Interest Rate</u>" shall mean, with respect to any Interest Period, a *per annum* interest rate equal to 175 basis points.

"<u>IO Notional Amount</u>" shall mean, with respect to the IO Participant, at any time of determination, a notional amount equal to the PI Balance as of such date of determination.

"IO Participant" shall have the meaning assigned to such term in the first paragraph of this Agreement.

"IO Participation" shall mean the individual participation interest with respect to the Subject Note in the initial notional amount of $10,500,000, which entitles the holder thereof to receive (x) payments of interest calculated at the IO Interest Rate on the IO Notional Amount in accordance with the terms and provisions of this Agreement and (y) all other amounts to which the IO Participant is entitled to receive pursuant to this Agreement.

"IO Participation Certificate" shall have the meaning assigned to such term in Section 2(d).

"LIBOR" shall have the meaning assigned to such term in the Subject Loan Agreement.

"Loan Pledgee" shall mean any entity which has extended a credit facility to Whole Note Purchaser and/or PI Participant that is a Qualified Transferee or a financial institution whose long-term unsecured debt is rated at least "A" (or the equivalent) or better by each Rating Agency.

"Major Decisions" shall have the meaning assigned to such term in Section 2(f).

"Monthly Payment Date" shall have the meaning assigned to such term in the Subject Loan Agreement.

"Note" shall mean the Subject Note.

"Originator" shall have the meaning assigned to such term in the recitals.

"Participant Interests" shall mean, together, the PI Participant Interest and the IO Participation.

"Participants" shall mean, together, the PI Participant and the IO Participant.

"Person" means any individual, sole proprietorship, corporation, general partnership, limited partnership, limited liability company or partnership, joint venture, association, joint stock company, bank, trust, estate unincorporated organization; any federal, state, county or municipal government (or any agency or political subdivision thereof) endowment fund or any other form of entity.

"PI Balance" shall mean, at any time of determination, the amount set forth on Exhibit A hereto under the caption "Initial Principal Balance of PI Participant Interest", less any payments of principal on the Subject Note, plus any reinstatement of the PI Balance pursuant to Section 3(f), less any other reductions to the principal balance of the Subject Note whether by application of funds received, including without limitation insurance or condemnation proceeds or, subject to the provisions of Section 2(f) hereof, pursuant to any modification, amendment or restructuring of the Subject Note by agreement of the parties thereto or pursuant to order or any court, including, without limitation, any restructured principal balance as a result of bankruptcy.

"PI Interest Rate" shall mean, with respect to any Interest Period, an interest rate equal to (x) LIBOR plus 550 basis points, minus (y) the Servicing Fee Rate for such Interest Period.

"PI Notional Amount" shall mean, with respect to the PI Participant, at any time of determination, a notional amount equal to the PI Balance as of such date of determination.

"PI Participant" shall have the meaning assigned to such term in the first paragraph of this Agreement.

"PI Participant Interest" shall mean the individual participation interest with respect to the Subject Note in the initial principal amount of $10,500,000, as the same may be reduced by principal payments on the Subject Note or as otherwise provided in the Intercreditor Agreement, entitling the holder thereof to the net economic and undivided, beneficial participation interest of PI Participant in the Subject Note after giving effect to the IO Participation Interest, and entitling PI Participant to the other rights and privileges of PI Participant specified in this Agreement, in each case, subject to and in accordance with the terms and provisions of this Agreement.

"PI Participation Certificate" shall have the meaning assigned to such term in Section 2(c).

"Prepayment Premium" shall mean any prepayment premium, yield/spread maintenance premium or similar fee required to be paid in connection with a prepayment of the Subject Loan.

"Purchase Date" shall mean the date of this Agreement.

"Purchase Price" shall mean the amount that the Whole Loan Purchaser is required to pay to the Initial Lender to acquire the Subject Loan, as set forth on Exhibit A hereto.

"Qualified Transferee" shall have the meaning assigned to such term in the Intercreditor Agreement.

"Regular Interest Rate" shall have the meaning assigned to the term "Applicable Interest Rate" in the Subject Loan Agreement.

"Servicer" shall have the meaning assigned to such term in Section 2(e).

"Servicing Agreement" shall mean (i) initially the existing servicing agreement entered into by the Initial Lender, (ii) then upon execution, that certain Loan/CDO Servicing Agreement, to be dated on or about December 20, 2006, by and among Highland Capital Management, L.P., as collateral servicer and special servicer; HFT Real Estate CDO 2006-1, Ltd., as issuer, Keycorp Real Estate Capital Markets, Inc., as servicer, as advancing agent and as back-up special servicer, The Bank of New York Trust Company, National Association, as trustee, and The Bank of New York, as back-up Loan/CDO Servicer (the "Highland Servicing Agreement"), or (iii) such other servicing agreement entered into by the Whole Note Purchaser with respect to the Subject Loan.

"Servicing Fee" shall mean the servicing fee payable to the Servicer pursuant to the Servicing Agreement.

"Servicing Fee Rate" shall mean the Servicing Fee, expressed as a *per annum* percentage rate.

"Subject Loan" shall have the meaning assigned to such term in the recitals.

"Subject Loan Agreement" shall have the meaning assigned to such term in the recitals.

"Subject Loan Assignment Documents" shall mean: (i) that certain Allonge To Promissory Note, dated the date hereof, given by the Initial Lender to the Whole Note Purchaser; (ii) that certain Assignment and Assumption Agreement, dated as of the date hereof, between the Initial Lender and the Whole Note Purchaser; and (iii) that certain Omnibus Assignment and Assumption Agreement, dated as of the date hereof, between the Initial Lender and the Whole Note Purchaser.

"Subject Loan Documents" shall have the meaning assigned to the term "Mezzanine Loan Documents" in the Intercreditor Agreement.

"Subject Note" shall have the meaning assigned to such term in the recitals.

"Whole Note Purchaser" shall have the meaning assigned to such term in the first paragraph of this Agreement.

2.    Sale of Note: Issuance of Participation Interests; Servicing; Major Decisions.

(a)    Sale of Note. As of the Purchase Date and in accordance with the Subject Loan Assignment Documents, the Initial Lender is simultaneously selling and transferring to the Whole Note Purchaser and the Whole Note Purchaser is purchasing and assuming from the Initial Lender all of Initial Lender's right, title and interest in, and all of Initial Lender's obligations in respect of, the Subject Note and the Subject Loan for the Purchase Price set forth in Exhibit A hereto. The Whole Note Purchaser is the owner of 100% of the Subject Note and of an undivided ownership interest in the Subject Loan and the other Subject Loan Documents (including, without limitation, sole and absolute legal title to each of the foregoing), subject in all instances to the terms and conditions of this Agreement. The Whole Note Purchaser shall hold and retain sole and absolute record legal title to the Subject Note, subject in all instances to the terms and conditions of this Agreement.

(b)    Issuance of Participation Interests. The Whole Note Purchaser hereby creates the following beneficial participating interests in the Subject Note: (i) a PI Participant Interest and (ii) the IO Participation. The PI Participant Interest is hereby issued in the original principal amount of the PI Balance of the Subject Note, and shall entitle the PI Participant to (x) interest on the PI Balance at the PI Participant Interest Rate, (y) all amounts of principal payable in respect of the Subject Note and Subject Loan and (z) all other amounts to which the PI Participant is entitled to receive pursuant to this Agreement, all on the terms and conditions described herein. The IO Participation is hereby issued in the original notional amount of the IO

Notional Amount, and shall entitle the IO Participant to (x) interest payable on the IO Notional Amount at the IO Interest Rate and (y) all other amounts to which the IO Participant is entitled to receive pursuant to this Agreement, all on the terms and conditions described herein.

(c)    Retention of PI Participant Interest.  On the Purchase Date, the Whole Note Purchaser shall retain its respective PI Participant Interest represented by a participation certificate in the form annexed hereto as Exhibit D (the "PI Participation Certificate").

(d)    Transfer of IO Participation.  On the Purchase Date, the Whole Note Purchaser shall transfer to the IO Participant the IO Participation, which is represented by a participation certificate in the form annexed hereto as Exhibit C (the "IO Participation Certificate").

(e)    Administration.  Servicer or such other Person appointed by the PI Participant and reasonably acceptable to the IO Participant (as evidenced by the IO Participant's prior written consent to such appointment) shall service and administer the Subject Note in accordance with the Servicing Agreement or, any other servicing agreement entered into by PI Participant (with the prior written consent of the IO Participant, which shall not be unreasonably withheld) in accordance with the Subject Loan Documents.  Subject to the rights of the IO Participant and the PI Participant as provided herein, the Whole Note Purchaser:  (i) shall be entitled to exercise all rights, power and authority of the Subject Note Holder, including (solely out of its own funds without any cost or expense to or reimbursement from IO Participant) the exercise, of any cure rights or purchase option under the Intercreditor Agreement with respect to the Mortgage Loan; (ii) shall be responsible for performing all obligations of the Subject Note Holder under the Intercreditor Agreement; and (iii) shall submit any Major Decisions for the approval of the IO Participant.  For purposes of this Agreement, the term "Servicer" shall mean, (i) Midland Loan Services, L.P. as the existing servicer of the Subject Loan, (ii) KeyCorp Real Estate Capital Markets, Inc., upon the execution of the Highland Servicing Agreement and (iii) any subsequent servicer of the Subject Loan pursuant to the terms hereof.

(f)    Major Decisions.  The Participants and the other parties hereto hereby agree that, the Whole Note Purchaser shall not, and shall not cause, authorize or permit any other party to, waive any material provisions of, modify or amend or terminate the Servicing Agreement, the Intercreditor Agreement and/or any of the Subject Loan Documents (a "Major Decision") without the prior written consent of the IO Participant if the effect of such modification or amendment would (i) reduce, delay or otherwise adversely affect the IO Participant's receipt of interest on the IO Notional Amount at the IO Interest Rate or any other payments to which the holder of the IO Participation is entitled to receive pursuant to the terms hereof or (ii) otherwise adversely effect the rights of IO Participant.

(g)    Participant Voting.  Subject to Section 2(f), in the event that there are multiple PI Participants, any determination that is required to be made pursuant to this Agreement by the PI Participant, shall be determined by a vote of the PI Participants in accordance with an agreement to be entered into among such PI Participants. No PI Participant shall have any liability hereunder for any act or omission taken by any other PI Participant without its consent.  The IO Participant shall not have any voting rights except as set forth in Section 2(f).

6

3.    Payments on the Participant Interests.

(a)    Payments of Interest.  Payments to the Subject Note Holder of accrued and unpaid interest on the Subject Note at the Regular Interest Rate shall in turn be allocated on a *pari passu* basis between the IO Participant and the PI Participant such that with respect to each Interest Period, the IO Participant will receive the portion of such unpaid interest accrued on the IO Notional Amount at the IO Interest Rate and the PI Participant shall receive (net of any amounts that may be retained by any Persons, including Servicer, that the Subject Note Holder may engage to service and administer the Subject Loan) the portion of such unpaid interest accrued on the PI Balance at the PI Participant Interest Rate.  PI Participant agrees that all Servicing Fees shall be borne by the PI Participant Interest and deducted from amounts distributable from interest payments in respect of the PI Participant Interest hereunder, and PI Participant hereby authorizes the Servicer to deduct such amounts prior to making any distribution of interest in respect of the PI Participant Interest.  In no event shall the amount of any Servicing Fee be borne by the IO Participant or the IO Participation, or deducted from, any amount distributable to the IO Participant or in respect of the IO Participation hereunder.

(b)    Payments of Prepayment Premiums.  Prepayment Premiums received in respect of the Subject Loan shall be payable solely to the PI Participant.

(c)    Payments of Other Amounts.  Payments to the Subject Note Holders that are in addition to those described in Section 3(a) and/or Section 3(b) above shall in turn be allocated entirely to the PI Participant (or, in the case of reimbursements of cure payments, to the Whole Note Purchaser).  The IO Participant shall not be entitled to fees of any nature payable in respect of the Subject Loan.

(d)    Termination of Payments.  Notwithstanding the terms of this Agreement, the IO Participant shall not be entitled to receive any further payments on account of the IO Participation and this Agreement shall terminate upon the occurrence of the repayment in full of the Subject Note (following payment to the IO Participant of all amounts to which it is entitled hereunder in respect of such repayment).

(e)    Payment Procedure.  The Servicer shall pay or cause the payment of all remittances to the PI Participant and the IO Participant in accordance with subsections (a), (b) and (c) of this Section 3, with such payments to be made to separate accounts designated in writing for such payments by each Participant.  The Servicer shall pay or cause the payment of such funds to the applicable accounts so designated by each of the Participants within one (1) Business Day of receipt of such funds.

(f)    Return of Funds.  If a court of competent jurisdiction orders, at any time, that any amount received or collected in respect of the Subject Note must, pursuant to any insolvency, bankruptcy, fraudulent conveyance, preference or similar law, be returned to the Subject Borrower or be paid to another Participant, or to any other Person, then, notwithstanding any other provision of this Agreement, the Servicer shall not be required to distribute any portion thereof to the Participants (unless otherwise so directed by such court), and, to the extent necessary to comply with such court order, the Participants, as applicable, will promptly on demand by the Servicer repay to another Participant or the Whole Note Purchaser, as applicable, any portion of any such amounts that the Servicer shall have theretofore distributed to such

Participant, as applicable, together with interest thereon at such rate, if any, as the Subject Note Holder shall have been required to pay to Subject Borrower, another Participant or such other person or entity with respect thereto pursuant to the terms hereof. If, for any reason, the Servicer makes any payment to the Participants before the Servicer has received the corresponding payment (it being understood that the Servicer is under no obligation to do so), and the Servicer does not receive the corresponding payment within five (5) Business Days of its payment to a Participant, then such Participant will, at the Servicer's request, promptly return that payment to the Servicer (together with interest on that payment at the Regular Interest Rate for each day from the making of that payment to the PI Participant or the IO Participant, as applicable, until it is returned to the Servicer). Each Participant agrees that if at any time it shall receive from any sources whatsoever any payment on account of the Subject Note in excess of its distributable share thereof, it will promptly remit such excess to the Servicer.

4.    <u>Limitation on Liability of the Participants</u>. The Participants shall have no liability to one another or to the Initial Lender except with respect to acts or omissions caused by or resulting from the gross negligence or willful misconduct of such Participant or a breach of this Agreement. The Initial Lender shall have no liability to the Participants except with respect to acts or omissions caused by, or resulting from the gross negligence or willful misconduct of the Initial Lender or its breach of this Agreement. Nothing in this <u>Section 4</u> is intended to limit the liability of the Initial Lender under the Loan Assignment Documents. Legal title to, and custody of, the Subject Note shall remain vested in, and be held exclusively by, the Whole Loan Purchaser for the benefit of each of the PI Participant and the IO Participant in accordance with their respective interests in the Subject Note. The IO Participant and PI Participant acknowledge and agree that Whole Note Purchaser may appoint a third party pursuant to the Servicing Agreement or another agreement to hold the Subject Note and Subject Loan Documents and if so, shall provide IO Participant with the name and address of such party. Each of the PI Participant and IO Participant hereby acknowledges and agrees that the Whole Note Purchaser or Servicer holding the Subject Note for the benefit of the PI Participant and the IO Participant is not intended, and shall not be construed, to create an express, implied or constructive trust or other fiduciary relationship or obligations running from the Noteholder to either the PI Participant or the IO Participant.

5.    <u>Representations of the Participants</u>.

(a)    Each Participant hereby represents and warrants to the Initial Lender and the other Participants, as of the Purchase Date, that:

(i)    Such Participant is duly formed or organized, validly existing and in good standing under the laws of the jurisdiction of such Participant's organization or formation.

(ii)    The execution and delivery of this Agreement by such Participant, and the performance of, and compliance with, the terms of this Agreement by such Participant, will not violate such Participant's organizational documents or constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which such Participant is a party or which is applicable to it or any of such Participant's assets.

(iii)    Such Participant has the full power and authority to enter into and consummate all transactions contemplated by this Agreement, has duly authorized the execution, delivery and performance of this Agreement and has duly executed and delivered this Agreement.

(iv)    Such Participant has not dealt with any broker, investment banker, agent or other Person (other than the Initial Lender and its Affiliates) that may be entitled to any commission or compensation in connection with the consummation of any of the transactions contemplated hereby.

(v)    The financial records of such Participant will report the purchase of its Participant Interest as a purchase by such Participant.

(vi)    Such Participant is purchasing its Participant Interest as an investment and this Agreement does not constitute a loan agreement pursuant to which any Participant is making an extension of credit.

The foregoing representations and warranties survive the purchase of the Subject Loan by the Whole Note Purchaser pursuant to the Subject Loan Assignment Documents.

(b)    By its acceptance of its rights with respect to a Participant Interest, any transferee of a Participant Interest or an interest therein shall be deemed to represent and warrant to, and agree with, the Initial Lender and the other Participants that:

(i)    Such transferee, by its acceptance of such Participant Interest, has agreed to be bound by the terms of this Agreement.

(ii)    The performance of, and compliance with, the terms of this Agreement by such transferee, will not violate such transferee's organizational documents or constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which it is a party or which is applicable to it or any of its assets.

The foregoing representations and warranties of each transferee shall survive the transfer of a Participant Interest and/or rights with respect to a Participant Interest to such transferee.

6.    <u>Representations of the Initial Lender</u>.  The Initial Lender represents and warrants to the Participants, as of the Purchase Date, that:

(a)    The Initial Lender is a corporation duly organized, validly existing and in good standing under the laws of the State of New York, and is in compliance with the laws of the jurisdiction of its formation to the extent necessary to ensure the enforceability of the Subject Loan and to perform its obligations under this Agreement.

(b)    The execution and delivery of this Agreement by the Initial Lender, and the performance of, and compliance with, the terms of this Agreement by the Initial Lender, will not violate the Initial Lender's organizational documents or constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of,

any material agreement of other instrument to which it is a party or which is applicable to it or any of its assets.

(c)    The Initial Lender has the full power and authority to enter into and consummate all transactions contemplated by this Agreement, has duly authorized the execution, delivery and performance of this Agreement, and has duly executed and delivered this Agreement.

(d)    The Initial Lender has not dealt with any broker, investment banker, agent or other person that may be entitled to any commission or compensation in connection with the sale of the Subject Note or the consummation of any of the other transactions contemplated hereby.

(e)    Upon the closing of the transactions contemplated hereby and by the Loan Assignment Documents, the Initial Lender will report on its financial records the transfer of the Subject Note made by it as a sale under generally accepted accounting principles.

(f)    Immediately prior to the consummation of the transactions contemplated under this Agreement, the Initial Lender is the legal and beneficial owner of the Subject Note and owns the Subject Note and a corresponding interest in the Subject Loan free and clear of all liens, pledges, security interests, charges, claims, restrictions and encumbrances of any nature whatsoever. The outstanding principal balance of the Subject Note is $10,500,000.

The foregoing representations and warranties of the Initial Lender shall survive the purchase of the Subject Loan by the Whole Note Purchaser pursuant to the Subject Loan Assignment Documents.

7.    Independent Analysis of the Participants.    Each of the Participants acknowledges that it has, independently and without reliance upon the Initial Lender or any other Participant and based on such documents and information as such Participant has deemed appropriate, made such Participant's own credit analysis and decision to purchase its Participant Interest and enter into this Agreement. Each Participant hereby acknowledges that (except as set forth hereinabove) neither the Initial Lender nor any other Participant has made any representations or warranties with respect to the Subject Note or the Subject Loan (other than any additional express representations and warranties made by the Initial Lender in the Subject Loan Assignment Documents), and that such Participant assumes all risk of loss in connection with its Participant Interest hereunder. Each Participant acknowledges and agrees that no other Participant shall be liable with respect to representations or warranties of the Initial Lender contained herein. Nothing herein shall absolve any party from its willful misconduct, gross negligence or fraud.

8.    No Creation of a Partnership or Exclusive Purchase Right.    Nothing contained in this Agreement, and no action taken pursuant hereto shall be deemed to constitute a partnership, association, joint venture or other entity. Neither the Initial Lender, Whole Loan Purchaser nor their respective Affiliate shall have any obligation whatsoever to offer to the Participants the opportunity to purchase an interest in any future loans originated, purchased or otherwise acquired by the Initial Lender, Whole Loan Purchaser or their respective Affiliates and if the Initial Lender, Whole Loan Purchaser or their respective Affiliates chooses to offer to any Participant the opportunity to purchase an interest in any future loans originated, purchased or otherwise acquired by the Initial Lender, Whole Loan Purchaser or their respective Affiliates,

LEGAL02/30170502v8

such offer shall be at such purchase price and interest rate as the Initial Lender, Whole Loan Purchaser or their respective Affiliates, as applicable, chooses, in its sole and absolute discretion. No Participant and no Affiliate of a Participant shall have any obligation whatsoever to offer to the Initial Lender or any other Participant the opportunity to purchase an interest in any future loans originated, purchased or otherwise acquired by any Participant or its Affiliates and if any Participant or its Affiliates chooses to offer to the Initial Lender or any other Participant the opportunity to purchase an interest in any future loans originated, purchased or otherwise acquired by any such Participant or its Affiliates, such offer shall be at such purchase price and interest rate as such Participant or its Affiliates, as applicable, chooses, in its sole and absolute discretion.

         9.    <u>Not a Security</u>.  The Participant Interests created hereunder shall not be deemed to be securities within the meaning of the Securities Act of 1933 (the "<u>Securities Act</u>") or the Securities Exchange Act of 1934.  Notwithstanding the foregoing, no Participant will solicit offers for, or offer to sell, its Participant Interest by any form of general solicitation or general advertising (as those terms are used in Regulation D under the Securities Act) or in any manner involving a public offering within the meaning of Section 4(2) of the Securities Act, and no Participant will offer or sell its Participant Interest in a manner that, if such Participant Interest were determined to be a security, would violate any applicable federal or state securities laws.

         10.    <u>Sale of the Subject Note/Participant Interests</u>.

         (a)    No Participant shall sell, assign, transfer, pledge, syndicate, participate, sell, hypothecate, contribute, encumber or otherwise dispose of (each, a "<u>Transfer</u>") all or any portion of its Participant Interest (or rights with respect to its Participant Interest hereunder) without the prior written consent of the other Participant, except as provided in this Section. The Whole Note Purchaser and/or PI Participant shall have the right, without the prior written consent of the IO Participant, to Transfer the Subject Note and/or the PI Participant Interest, as applicable (including, without limitation, the right to pledge its interest in the Subject Note and/or the PI Participant Interest, pursuant to or consistent with Section 15 of the Intercreditor Agreement), in whole or in part, to a Qualified Transferee upon at least fifteen (15) days prior written notice to IO Participant, provided that such Transfer does not violate the terms of either the Intercreditor Agreement related to Transfers of the Subject Loan, and provided further that any such Transfer shall be subject to this Agreement and the IO Participation created herein. Subject to compliance with the conditions contained in this Section, the IO Participant shall have the right, without the prior written consent of the PI Participant, to Transfer, in whole, but not in part, its Participant Interest to a Qualified Transferee upon at least fifteen (15) days' prior written notice to the PI Participant; provided, such Transfer (1) shall not violate the terms of the Intercreditor Agreement and (2) without the prior written consent of the PI Participant, shall not be to any of the lenders or any of the borrowers under any of the other Mortgage Loan. Any transferee of a Participant Interest hereunder shall execute an assignment and assumption agreement whereby such transferee assumes all of the obligations of the Whole Note Purchaser or such Participant, as applicable, under this Agreement from and after the date of such assignment (or, in the case of a pledge, collateral assignment or other encumbrance by such Participant of its Participant Interest hereunder solely as security for a loan to such Participant made by a third-party lender whereby such Participant remains fully liable under this Agreement,

such third-party lender shall not be required to so assume such obligations prior to realizing on any collateral granted pursuant to such pledge, collateral assignment or other encumbrance (by foreclosure or otherwise).

(b)     Upon written notice by the Whole Note Purchaser or PI Participant to the IO Participant that it has pledged its interest (or sold its interests into a repurchase facility) in the Subject Note and/or the PI Participant Interest, as applicable, in accordance with Section 15 of the Intercreditor Agreement, the IO Participant agrees to acknowledge receipt of such notice and thereafter agrees: (a) to give the Loan Pledgee (as defined in the Intercreditor Agreement) written notice of any default under this Agreement of which the IO Participant has actual knowledge; (b) to allow the Loan Pledgee a period of ten (10) days (in respect of a monetary default) and a period of thirty (30) days (in respect of a non-monetary default) to cure a default by the Whole Note Purchaser and/or PI Participant in respect of its obligations to the IO Participant hereunder, but the Loan Pledgee shall not be obligated to cure any such default; (c) that no amendment, modification, waiver or termination of this Agreement shall be effective against the Loan Pledgee without the written consent of the Loan Pledgee, which consent shall not be unreasonably withheld; and (d) that, upon reasonable request, the IO Participant shall deliver to the Loan Pledgee a written statement stating whether to the IO Participant's knowledge any default exists under this Agreement. The Loan Pledgee shall be permitted to fully exercise its rights and remedies against the Whole Note Purchaser and/or PI Participant, and realize on any and all collateral granted by the Whole Note Purchaser and/or PI Participant to the Loan Pledgee (and accept an assignment in lieu of foreclosure as to such collateral), in accordance with applicable law. In such event, the IO Participant Lender shall recognize the Loan Pledgee (and any transferee which is also a Qualified Transferee at any foreclosure or similar sale held by the Loan Pledgee or any transfer in lieu of such foreclosure), and its successors and assigns, as the successor to the Whole Note Purchaser's and/or PI Participant's rights, remedies and obligations under this Agreement and any such Loan Pledgee or Qualified Transferee shall assume in writing the obligations of the Whole Note Purchaser and/or PI Participant hereunder accruing from and after such Transfer and agrees to be bound by the terms and provisions hereof (it being agreed that, notwithstanding anything to the contrary contained herein, such Loan Pledgee shall not be required to so assume the Whole Note Purchaser's and/or PI Participant's obligations hereunder prior to such realization on such collateral). The rights of Loan Pledgee under this Section 10 shall remain effective unless and until the Loan Pledgee shall have notified the IO Participant in writing that its interest in the Subject Loan and/or PI Participant Interest has terminated.

11.    Other Business Activities of the Participants.  The Participants each acknowledge that each party hereto may make loans or otherwise extend credit to or purchase loans to, and generally engage in any kind of business with, the Subject Borrower and its Affiliates, and receive payments on such originations, extensions of credit or acquisitions of loans to the Subject Borrower and its Affiliates and otherwise act with respect thereto freely and without accountability in the same manner as if this Agreement and the transactions contemplated hereby were not in effect. However, in no event shall any Participant transfer its Participant Interest to the Subject Borrower or any Affiliate thereof.

12.    Intentionally Omitted.

13.    No Pledge or Loan.  This Agreement shall not be deemed to represent a pledge of any interest in the Subject Loan by the Initial Lender to any Participant, or a loan from any Participant to the Initial Lender.

14.    Property Held as Security for the Subject Loan.  Each Participant agrees that no individual Participant shall have any individual interest in any property taken as security for the Subject Loan provided, however, that if any such property or the proceeds thereof shall be applied in reduction of the PI Balance of the Subject Note, then each Participant shall be entitled to receive its share of such application in accordance with the terms of this Agreement.

15.    Governing Law; Waiver of Jury Trial.  THIS AGREEMENT AND THE RESPECTIVE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS NEGOTIATED, MADE AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.  EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF RELATING TO THIS AGREEMENT.

16.    Modifications.  This Agreement shall not be modified, cancelled or terminated except by an instrument in writing signed by the parties hereto.

17.    Successors and Assigns; Third-Party Beneficiaries.  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns.  Except as expressly provided in this Agreement, none of the provisions of this Agreement shall be for the benefit of or enforceable by any Person not a party hereto.

18.    Counterparts; Facsimile Execution.  This Agreement may be executed in any number of counterparts and all of such counterparts shall together constitute one and the same instrument.  This Agreement may be executed by signature(s) transmitted by facsimile.

19.    General Interpretive Principles.  For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires: (i) the terms defined in this Agreement include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender; (ii) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles; (iii) references herein to "Articles", "Sections", "Subsections", "Paragraphs", recitals and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs, recitals and other subdivisions of this Agreement; (iv) a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions; (v) the words "herein", "hereof", "hereunder", "hereto", "hereby" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and (vi) the terms "include" or "including" shall mean without limitation by reason of enumeration. The titles, captions and headings of the respective sections, subsections and paragraphs of this Agreement have been inserted for convenience of reference only and are not intended to summarize or otherwise describe the subject matter of those sections, subsections and paragraphs and shall not be given any consideration in the construction of this Agreement.

20.   Notices.  All notices required hereunder shall be given in writing and personally delivered or sent by facsimile transmission, reputable overnight delivery service or certified United States mail, postage prepaid, and addressed to the respective parties at their addresses set forth on Exhibit B hereto, or at such other address as any party shall hereafter inform the other party by written notice given as aforesaid. All written notices so given shall be deemed effective upon receipt or, if mailed, upon the earlier to occur of receipt or the expiration of the fourth day following the date of mailing.

21.   Participant Register.  Ownership of the Subject Note, the PI Participant Interest and the IO Participation shall be registered as to both the principal and interest and may be transferred by a Participant to a third person only in compliance with the terms and provisions of this Agreement and by surrendering the related IO Participation Certificate or the PI Participation Certificate, as applicable and the issuance by or on behalf of the Whole Loan Purchaser of a new obligation to the transferee, as required under the U.S. Treasury Regulations Section 1.871-14(c). The Whole Loan Participant may appoint a custodian, a servicer or its agent to maintain, or cause to be maintained, a register (a "Register") within the meaning of U.S. Treasury Regulations Section 5(f).103-1(c) on which it will record the names and addresses of, and wire transfer instruction for, the Participants and the holder of the Subject Note. Any transfer of all or a portion of the IO Participation and/or the PI Participant Interest in accordance with the terms and provisions hereof shall be recorded in the Register. The Whole Loan Purchaser and the Participants shall be entitled to treat each person whose name is recorded in such Register pursuant to the terms hereof as the applicable Participant and the absolute owner of the related IO Participation or PI Participant Interest, as applicable, for all purposes under this Agreement, and the Whole Loan Purchaser shall not be affected by any notice to the contrary (other than a notice given in connection with a transfer of all or a portion of the IO Participation and/or the PI Participant Interest in accordance with terms of this Agreement). The Register shall be available for inspection from time to time by any Participant upon reasonable prior notice to the Whole Loan Purchaser (or any agent on its behalf).

22.   Servicing Agreement.  Whole Note Purchaser shall provide each of the Participants a copy of the executed Servicing Agreement, which shall be reasonably acceptable to all Participants.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, the Initial Lender, the Whole Note Purchaser, the PI Participant and the IO Participant have caused this Agreement to be duly executed as of the day and year first above written.

INITIAL LENDER

MORGAN STANLEY MORTGAGE
CAPITAL INC., a New York corporation

By: _____

Name:
Title:            Steven R. Maeglin
                   Vice President

IO PARTICIPANT:

MORGAN STANLEY MORTGAGE
CAPITAL INC., a New York corporation

By: _____

Name:            Steven R. Maeglin
Title:            Vice President

[SIGNATURES CONTINUE ON NEXT PAGE]

Signature Page to Mezzanine Loan Sale and Participation Agreement

**WHOLE NOTE PURCHASER:**

HFT RE CDO 2006-2, LTD., a Cayman Islands
limited liability company

By: Highland Capital Management, L.P., as
Servicer

    By: Strand Advisors, Inc., its General
    Partner

    By:
    Name:   Brian Lohrding, Treasurer
    Title:    Strand Advisors, Inc.,
          General Partner of
          Highland Capital Management, L.P.

**PRINCIPAL PARTICIPANT:**

HFT RE CDO 2006-2, LTD., a Cayman Islands
limited liability company

By: Highland Capital Management, L.P., as
Servicer

    By: Strand Advisors, Inc., its General
    Partner

    By:
    Name:
    Title:    Brian Lohrding, Treasurer
          Strand Advisors, Inc.,
          General Partner of
          Highland Capital Management, L.P.

## EXHIBIT A

### Participant Interest Schedule

| PI Participant | Initial Principal Balance of PI Participant Interest | Purchase Price | Percentage Interest in Subject Note* |
|---|---|---|---|
| HFT RE CDO 2006-2, LTD | $10,500,000 | $10,500,000 | 100% |

\*     Subject to IO Participation.

## EXHIBIT B

### Notice Addresses

**If to Initial Lender:**

MORGAN STANLEY MORTGAGE CAPITAL INC.
1221 Avenue of the Americas
New York, New York 10022
Attention: Stephen Holmes

**If to PI Participant:**

HFT RE CDO 2006-2, LTD.
c/o Highland Capital Management, L.P.
13455 Noel Rd., Ste. 800
Dallas, TX 75240
Attention: Kim Wilcox
Facsimile No.: 972-628-4155

**If to IO Participant:**

MORGAN STANLEY MORTGAGE CAPITAL INC.
1221 Avenue of the Americas
New York, New York 10022
Attention: Stephen Holmes

**If to Whole Note Purchaser:**

HFT RE CDO 2006-2, LTD.
c/o Highland Capital Management, L.P.
13455 Noel Rd., Ste. 800
Dallas, TX 75240
Attention: Kim Wilcox
Facsimile No.: 972-628-4155

**EXHIBIT C**

**Form of IO Participation Certificate**

**(Exhibit Begins on Next Page)**

**<u>EXHIBIT D</u>**

**<u>Form of PI Participation Certificate</u>**

**(Exhibit Begins on Next Page)**



**ORRICK**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 10

**MEZZANINE LENDER:**
**HIGHLAND PARK CDO I GRANTOR**
**TRUST, SERIES A**

By: HIGHLAND CAPITAL
    MANAGEMENT, L.P.,
    as Special Servicer of the Mezzanine Loan

    By: STRAND ADVISORS, INC.,
       as General Partner

    By: _____
       Name: *Michael Colvin*
       Title: *Secretary*

With Mezzanine Lender Copies to:

Jeffery D. Hermann, Esq.
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017-5855
jhermann@orrick.com

*Senior Lender/IO Participant*
Morgan Stanley Mortgage Capital Inc.
~~1221 Avenue of the Americas~~
27th Floor
New York, New York 10020
Attention: Stephen Holmes

*Counsel to Senior Lender*
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
Attention: Ellen M. Goodwin, Esq.

OHS West:260383171.3

# EXHIBIT  F

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CALIFORNIA  90017

*tel*  +1-213-629-2020
*fax*  +1-213-612-2499

WWW.ORRICK.COM

February 11, 2008

Jeffery D. Hermann
(213) 612-2413
jhermann@orrick.com

**VIA HAND DELIVERY**

Platinum Lodging Mezz, LLC
8330 Strasbourg Court
Dublin, Ohio 43017
Attention: Mr. Matthew Studer

Re:    Highland Park CDO I Grantor Trust, Series A; Platinum Lodging Mezz, LLC;
       <u>MSMCI Loan No. 06-26034 – Pre-Negotiation Agreement</u>

Dear Mr. Studer:

Reference is hereby made to that certain mezzanine loan in the original principal amount of
$10,500,000.00 ("<u>Mezzanine Loan</u>") in favor of Highland Park CDO I Grantor Trust, Series A, as
assignee of Morgan Stanley Mortgage Capital Inc., a New York corporation, (together with its
successors and assigns, "<u>Mezzanine Lender</u>") made on or about August 3, 2006 to Platinum Lodging
Mezz, LLC, an Ohio limited liability company, ("<u>Mezzanine Borrower</u>"), pursuant to the terms of
and evidenced by the following documents:

- that certain Mezzanine Loan Agreement, dated as of August 3, 2006, as
  amended, restated, replaced, supplemented or otherwise modified from time to
  time, by and between Mezzanine Borrower and Mezzanine Lender (the
  "<u>Mezzanine Loan Agreement</u>");
- that certain Mezzanine Promissory Note in the stated principal amount of
  $10,500,000.00, dated as of August 3, 2006, made by Mezzanine Borrower in
  favor of Mezzanine Lender (the "<u>Mezzanine Note</u>");
- that certain Pledge and Security Agreement, dated as of August 3, 2006, made by
  Mezzanine Borrower in favor of Mezzanine Lender (the "<u>Mezzanine Pledge
  Agreement</u>");
- that certain Mezzanine Guaranty of Payment and Guaranty of Recourse
  Obligations of Mezzanine Borrower, dated as of August 3, 2006, from Matthew
  Studer, Fred Graft, Ernie Malas and Peter Coratola (individually and collectively,
  as the context may require, "<u>Mezzanine Guarantor</u>") for the benefit of
  Mezzanine Lender (the "<u>Mezzanine Guaranty</u>");
- that certain Mezzanine Environmental Indemnity Agreement, dated as of
  August 3, 2006, by and between Mezzanine Borrower and Mezzanine Guarantor
  for the benefit of Mezzanine Lender (the "<u>Mezzanine Environmental
  Indemnity</u>");

OHS West:260383171.3



**ORRICK**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 2

- that certain Mezzanine Assignment of Interest Rate Cap Agreement and Security
  Agreement, dated as of August 3, 2006, by and between Mezzanine Borrower
  and Mezzanine Lender and acknowledged by Ixis Financial Products Inc. and
  any other Assignment of Interest Rate Protection Agreement thereinafter
  delivered (the "Mezzanine Assignment of Protection Agreement");

- that certain Mezzanine Subordination of Management Agreement, dated as of
  August 3, 2006, by and among Mezzanine Borrower, Focus Lodging Group,
  LLC, an Ohio limited liability company, or any other manager approved in
  accordance with the terms and conditions of the Mezzanine Loan Documents, as
  defined herein, ("Manager") (the "Mezzanine Assignment of Management
  Agreement"); and

- the other agreements and documents executed and delivered in connection with
  the Mezzanine Loan (collectively with the Mezzanine Loan Agreement, the
  Mezzanine Note, the Mezzanine Pledge Agreement, the Mezzanine Guaranty,
  the Mezzanine Environmental Indemnity, the Mezzanine Assignment of
  Protection Agreement and the Mezzanine Assignment of Management
  Agreement, hereinafter referred to as the "Mezzanine Loan Documents").

Reference is further made to:

- that certain Mezzanine Loan Sale and Participation Agreement, dated as of
  December 5, 2006, by and between Morgan Stanley Mortgage Capital Inc., as
  "Initial Lender," HFT RE CDO 2006-2, Ltd., as "Whole Note Purchaser," HFT
  RE CDO 2006-2, Ltd., as "PI Participant" and Morgan Stanley Mortgage Capital
  Inc. as "IO Participant," (the "Mezzanine Loan Sale and Participation
  Agreement"), pursuant to which Initial Lender sold the Mezzanine Note to
  Whole Note Purchaser and simultaneously therewith, Whole Note Purchaser
  created two separate certificated *pari passu* participation interests in the Note, the
  IO Participation Interest and the PI Participant Interest, and in its capacity as PI
  Participant, Whole Note Purchaser retained the PI Participant Interest and
  transferred the IO Participation to IO Participant. As a result of certain other
  assignments, all the interests of Initial Lender, other than the IO Participation,
  have been assigned to Mezzanine Lender.

Capitalized terms used herein shall have the meanings set forth in the Mezzanine Loan
Documents and the Mezzanine Loan Sale and Participation Agreement, unless otherwise
noted.

OHS West:260383171.3



**ORRICK**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 3

Mezzanine Lender has determined that Events of Default exist under the Mezzanine Loan, primarily as a result of Mezzanine Borrower's failure to repay the Mezzanine Loan before the Maturity Date thereof on February 9, 2008.

Mezzanine Borrower and Mezzanine Guarantors now desire to engage in discussions and negotiations with Mezzanine Lender regarding the outstanding Events of Default under the Mezzanine Loan, and Mezzanine Lender is willing to do so on the condition that Mezzanine Borrower, Mezzanine Guarantors and Mezzanine Lender agree to certain understandings regarding the manner in which such discussion and negotiations will proceed, as set forth in this "Pre-Negotiation Agreement".

1.    Negotiations.

(a)    Mezzanine Borrower and Mezzanine Guarantors (collectively, "Mezzanine Obligors") and Mezzanine Lender intend to commence negotiations concerning the obligations Mezzanine Borrower owes to Mezzanine Lender under the Mezzanine Loan Documents (the "Obligations").  As used herein, the words "we", "us", or "our" shall be deemed to include Mezzanine Lender.

(b)    Without liability for failing to do so, Mezzanine Lender and Mezzanine Obligors each plan to discuss various courses of action relating to the Obligations which might be in our mutual interest.  All such discussions, meetings, negotiations and communications relating to the Obligations and occurring either before or after the effective date hereof shall be privileged and without prejudice to any party thereto, and without exception, shall constitute settlement negotiations which shall not be introduced or admissible as evidence in any administrative, judicial or other proceeding without the express written consent of all of the parties hereto; notwithstanding the foregoing, this Pre-Negotiation Agreement shall be admissible as evidence in any such proceeding to evidence our agreement as set forth herein. No action or proceeding of any kind (whether legal or equitable, whether based in tort, contract, or otherwise) may be brought by Mezzanine Lender or Mezzanine Obligors against anyone based upon or relating to our negotiations contemplated by this Pre-Negotiation Agreement.

(c)    Mezzanine Obligors acknowledge and agree that Mezzanine Lender does not have any obligation to make any further advances under the Mezzanine Loan and does not have any obligation to modify, amend or enter into negotiations with respect to the Obligations, that no party is obligated to enter into or to continue negotiations relating to the modification of the existing Mezzanine Loan Documents, and that any party, in its sole and absolute discretion, may



**ORRICK**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 4

terminate negotiations at any time and for any reason if it so elects, without notice or liability to any other party.

        (d)      Mezzanine Obligors acknowledge that Mezzanine Lender would not enter into negotiations concerning the Obligations without this letter clarifying the nature of such negotiations.

2.    <u>Mezzanine Loan Status</u>. Mezzanine Obligors acknowledge and agree that the Obligations are currently in default and that no agreement has been reached as to the renewal, extension or modification of the Obligations, nor the forbearance, compromise or waiver of any rights of Mezzanine Lender arising as a result of such defaults.

3.    <u>Cooperation of Mezzanine Obligors</u>. Mezzanine Obligors will cooperate with Mezzanine Lender, its agents and its representatives, to conduct environmental site assessments, structural studies, appraisals and other evaluations of the properties and assets covered by the Mezzanine Loan Documents. In connection therewith, you agree to permit Mezzanine Lender, its agents and its representatives reasonable access to inspect and review all such properties and assets and all books, records, plans, specifications, approvals, licenses, permits and other information relating thereto at all reasonable times and shall permit them to make copies of all such information. Mezzanine Obligors also agree that Mezzanine Obligors will furnish Mezzanine Lender (a) current, complete and accurate financial statements of all Mezzanine Obligors in a form satisfactory to Mezzanine Lender, and if applicable, (b) current operating statements.

4.    <u>Only Written Agreements and Amendments</u>. Our contemplated discussions may be lengthy and complex. While we may reach agreement on one or more issues which are part of the problem we are trying to resolve, we have agreed that, except for preliminary agreements contained in this Pre-Negotiation Agreement, none of us shall be bound by or rely upon any agreement on any issues until (a) agreement is reached on all issues, and (b) our agreement on all issues has been reduced to a written agreement, signed and delivered by an authorized representative of each of the parties hereto and the conditions precedent set forth in such written agreement have occurred or have been waived. Furthermore, in order to avoid any confusion or misunderstanding, each of us also agrees that this Pre-Negotiation Agreement may only be amended in a writing, signed by authorized representatives of Mezzanine Obligors and Mezzanine Lender. Nothing herein shall be construed to impose any duty or obligation whatsoever upon any party to commence or continue to negotiate with any other party, or to forbear from taking any action available to such party in connection with the Obligations, or to agree to, or enter into, a forbearance agreement, workout agreement, restructure agreement, settlement agreement or the like with any other party.



ORRICK

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 5

5.      No Waiver or Estoppel.  No negotiations, discussions, other written or oral communications
or other action undertaken pursuant to this Pre-Negotiation Agreement shall constitute a waiver,
modification or relinquishment of any party's rights under the Mezzanine Loan Documents, except
to the extent specifically stated in a written agreement complying with the provisions of Paragraph 4
hereof.  In addition, participation in negotiations concerning the Obligations shall not restrict,
inhibit or estop any party from exercising any right, remedy or power available to such party at any
time (whether or not settlement negotiations are continuing) including, but not limited to, all rights,
remedies and powers granted under the Mezzanine Loan Documents or otherwise available at law or
in equity, or require any delay in the exercise of any such right, remedy or power.  No failure to
exercise and no delay in exercising any rights, remedies, and powers under the Mezzanine Loan
Documents or otherwise available at law or in equity shall operate as a waiver, modification or
relinquishment of any such rights, remedies or powers.

6.      Partial Payments.  Mezzanine Obligors acknowledge that any partial payments made by
Mezzanine Obligors, either before or after the execution of this Pre-Negotiation Agreement, may be
applied by Mezzanine Lender in partial satisfaction of the Obligations and that neither the
acceptance nor application by Mezzanine Lender or any of Mezzanine Lender's successors and
assigns of any partial payment shall constitute a cure or waiver of any default or Event of Default
under the Mezzanine Loan Documents or constitute any extension or other modification of the
Obligations or the Mezzanine Loan Documents.

7.      Use of Counsel.  Mezzanine Obligors acknowledge that Mezzanine Obligors have been
advised to obtain representation by independent counsel or are currently represented by
independent, competent counsel.  Mezzanine Obligors also acknowledge that Mezzanine Obligors
have fully reviewed this Pre-Negotiation Agreement and are executing this Pre-Negotiation
Agreement on their own independent judgment with the advice of counsel and are under no threat,
coercion or duress from any party.

8.      Alternative Opportunities.  As negotiations may not result in agreement among the parties
for a restructure, workout, forbearance, etc. with respect to the Obligations, Mezzanine Obligors
should not forego any attractive alternative opportunities available (and not otherwise prohibited by
the Mezzanine Loan Documents), including refinancing, sale, lease, additional financing, sale of
equity, additional capital infusions, etc.  The decision of Mezzanine Obligors to enter into
discussions and negotiations with Mezzanine Lender and to thereby forgo any such alternative
opportunities shall not result in any liability of Mezzanine Lender to Mezzanine Obligors and
Mezzanine Obligors acknowledge that Mezzanine Obligors may not rely upon any written or verbal

OHS West:260383171.3



**ORRICK**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 6

assurances from representatives or agents of Mezzanine Lender to the effect that such discussions and negotiations will likely result in a successful workout or restructure of the Mezzanine Loan.

9.    <u>Miscellaneous</u>.  This Pre-Negotiation Agreement constitutes the entire agreement concerning the subject matter dealt with herein and supersedes any prior or contemporaneous representations or agreements not contained herein concerning the subject matter of this Pre-Negotiation Agreement.  This Pre-Negotiation Agreement shall inure to the benefit of and be binding upon each of us and our respective heirs, successors and assigns, and shall be governed by the law of the State of New York, without giving effect to principles of conflicts of laws.  This Pre-Negotiation Agreement shall be effective and binding upon all signatories hereto whether or not all Mezzanine Obligors have signed this Pre-Negotiation Agreement.  In the event of any dispute hereunder, the prevailing party shall be entitled to recover all costs, attorneys' fees and expert witness fees from the non-prevailing parties.  Paragraph headings used herein are for convenience only and shall not be used to interpret any term hereof.  This Pre-Negotiation Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which together shall evidence the Pre-Negotiation Agreement.  The effective date of this Pre-Negotiation Agreement shall be the date it is executed by the last signatory as indicated on the signature page.  Each party executing this Pre-Negotiation Agreement represents that such party has the full authority and legal power to do so.  All notices sent pursuant to this Pre-Negotiation Agreement shall be in writing and shall be effective only upon receipt.  Such notices shall be hand delivered to the addressee or sent by U.S. mail, postage prepaid or by overnight courier service and properly addressed to such addressee at the addresses set forth in the signature blocks below.

10.    <u>Designated Representatives</u>.  The designated representative of Mezzanine Obligors for the purpose of the negotiations contemplated herein will be <u>Fred Graft</u>                    .
The designated representative of Mezzanine Lender for the purpose of such negotiations shall be
<u>Brian Home</u>                                        .  Any party may at any time by written notice to the others designate other representatives for the purpose of such negotiation.  All negotiations and all written and verbal communications between Mezzanine Obligors and Mezzanine Lender shall be solely between such designated representatives.  Notwithstanding anything contained herein, Mezzanine Obligors' acknowledge that none of the representatives of Mezzanine Lender designated above is authorized to bind Mezzanine Lender during negotiations, that any agreements by any such designated representatives of Mezzanine Lender are subject to Mezzanine Lender's formal approval process and that Mezzanine Lender will only be bound by an agreement executed by Mezzanine Lender in accordance with paragraph 4 hereof.

OHS West:260383171.3



**ORRICK**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 7

UNLESS MODIFIED BY A WRITTEN AGREEMENT SIGNED AND DELIVERED BY ALL PARTIES HERETO, THIS PRE-NEGOTIATION AGREEMENT SHALL REPRESENT THE FINAL AGREEMENT AS TO THE MATTERS DESCRIBED HEREIN. THIS PRE-NEGOTIATION AGREEMENT MAY NOT BE CONTRADICTED BY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL STATEMENTS OR AGREEMENTS OF THE PARTIES.



**ORRICK**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 8

*[handwritten: THIS PRE-NEGOTIATION AGREEMENT SHALL NOT BE ADMISSIBLE IN A COURT PROCEEDING AS EVIDENCE OF A DEFAULT BY MEZZANINE BORROWER.]*

If the foregoing accurately sets forth the terms of our binding agreement, please sign this Pre-Negotiation Agreement in the space provided below and return the same to us at your earliest convenience.

Sincerely,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *[signature]*
Jeffrey D. Hermann

cc: Mezzanine Guarantors (as indicated below)
Mezzanine Lender representatives (as indicated below)

*CONSENTED TO AND AGREED:*

**MEZZANINE BORROWER:**
**PLATINUM LODGING MEZZ, LLC**

By: Platinum Lodging Mezz Management, Inc.,
an Ohio corporation

By: *[signature]*
Name: Peter Coratola
Title: President

By: *[signature]*
Name: Ernie Malas
Title: Vice President

8330 Strasbourg Court
Dublin, Ohio 43017
Attention: Matthew Studer

**MEZZANINE GUARANTOR:**
**MATTHEW STUDER**

By: *[signature]*
Matthew Studer

8330 Strasbourg Court
Dublin, Ohio 43017



**ORRICK**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 9

**MEZZANINE GUARANTOR:**
**FRED GRAFT**

By: _____
       Fred Graft

1123 Worthington Heights
Columbus, Ohio 43235

**MEZZANINE GUARANTOR:**
**PETER CORATOLA**

By: _____
       Peter Coratola

8330 Strasbourg Court
Columbus, Ohio 43017

**MEZZANINE GUARANTOR:**
**ERNIE MALAS**

By: _____
       Ernie Malas

2481 Stonehaven Place
Columbus, Ohio 43220

OHS West:260383171.3