UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
HIGHLAND PARK CDO I GRANTOR
TRUST, SERIES A,

                    Plaintiff,

        -against-

MATTHEW STUDER, FRED GRAFT,
ERNIE MALAS, AND PETER
CORATOLA,

                    Defendants.
-----------------------------------------------------X

Case No. 08 CV 01670 (NRB)

**KATZ SUR-REPLY AFFIDAVIT
IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS THE COMPLAINT
OR STAY THE PROCEEDINGS**

STATE OF NEW YORK      )
                            ) SS
COUNTY OF NEW YORK  )

      DANIEL E. KATZ, being duly sworn, deposes and says:

    1.    I am a member of the law firm of Bauman Katz & Grill, LLP, attorneys for Matthew Studer, Fred Graft, Ernie Malas, and Peter Coratola (collectively, "Defendants"), the Defendants in the above-entitled action.  I respectfully submit this Sur-Reply Affidavit, based upon personal knowledge and records on file in my office, in response to Plaintiff Highland Park CDO I Grantor Trust, Series A's ("Plaintiff" or "Higland") Reply In Further Support of its Cross-Motion for Summary Judgment (the "Plaintiff's Reply") submitted on July 21, 2008. Plaintiff's Reply contains new affidavits, arguments and evidence in support of its motion for summary judgment that Defendants have not had the previous opportunity to address.

    2.    Plaintiff's Reply includes a newly-offered Declaration of John Morgan dated July 21, 2008 (the "Morgan Affidavit").  It should first be noted that the Morgan Affidavit references and discusses a "Pre-Negotiation Agreement" as Exhibit F, which is not in fact annexed to the Morgan Affidavit. (*See* Morgan Affidavit at ¶ 15.)  However, a copy of the document we believe

Plaintiff is referring to is annexed hereto as Exhibit "1." Plaintiff apparently references this document in its Reply in an attempt to posit that Defendants waived any argument concerning Plaintiff's standing in this lawsuit by virtue of its dealings with Highland while attempting to resolve this dispute. (*See* Morgan Affidavit, at ¶ 15; Plaintiff's Reply Memorandum, at 2 ("Defendants executed a February 11, 2008 agreement with Highland in which Plaintiff is identified throughout as the Mezzanine Lender.") Notably, this agreement contains the following provision:

> No Waiver or Estoppel: No negotiations, discussions, other written or oral communications or other action undertaken pursuant to the Pre-Negotiation Agreement shall constitute a waiver, modification or relinquishment of any party's rights under the Mezzanine Loan Documents. . . In addition, participation in negotiations concerning the concerning the Obligations shall not restrict, inhibit or estop any party from exercising any right, remedy or power available to such party at any time. . . including, but not limited to, all rights remedies and powers granted under the Mezzanine Loan Documents or otherwise available at law or in equity, or require any delay in the exercise of any such right, remedy or power. No failure to exercise and no delay in exercising any rights, remedies, and powers under the Mezzanine Loan Documents or otherwise available at law or in equity shall operate as a wavier, modification or relinquishment of any such rights, remedies or powers.

(*See* Exhibit "1" hereto, at ¶ 5.) Pursuant to the above-referenced provision, Defendants' prior attempt to deal with the party purporting to have standing in this lawsuit does not operate as a waiver of their rights to assert lack of standing in the instant action. Indeed, the language cited above preserves all of Defendants' rights. Moreover, whether Plaintiff lacks standing relates to this Court's subject matter jurisdiction and is an issue that could never be waived in this action.

3.    In addition to the foregoing, the purported assignment documents that Plaintiff annexes and discusses for the first time in its Reply demonstrate that Morgan Stanley has retained an interest in the Junior Loan and the related Junior Loan Documents. Plaintiff's Reply

inconsistently argues both that (1) it holds all of Morgan Stanley's rights in the Junior Note, and yet (2) admits that Morgan Stanley has retained a "limited interest" in the Junior Note. (*See* Plaintiff's Reply Memorandum of Law, at 3.) In support of the proposition that this "limited interest" has no bearing on this dispute, Plaintiff cites to the conclusory affidavit of its own representative, which is entirely without any documentary or logical support. (*See* Plaintiff's Reply Memorandum of Law, *citing*, Morgan Affidavit at ¶ 12.)

4.    A review of the Mezzanine Loan Sale and Participation Agreement ("Loan Sale Agreement"), provided by Plaintiff for the first time in its Reply, reveals that it is not entirely clear that Plaintiff has the right to bring or settle this lawsuit without the prior written approval of Morgan Stanley.  No such written approval has been offered to the Court or to Defendants. Pursuant to Section 2(f) of the Loan Sale Agreement, the Whole Note Purchaser (i.e., Highland) may not make any "Major Decisions" that will affect Morgan Stanley's interests as the IO Participant without Morgan Stanley's prior written consent.  Clearly, among decisions that may affect Morgan Stanley's interests is any reduction, delay or other alterations to Morgan Stanley's rights to receive interest on the Junior Loan.  Indeed, Plaintiff in this lawsuit may not do anything that would "adversely affect the rights of IO Participant."  (*See* Exhibit "E" to the Morgan Affidavit, at § 2(f).)  Although the Loan Sale Agreement provides that Plaintiff has "cure rights" that are subject to the Intercreditor Agreement, the Loan Sale Agreement expressly provides that Plaintiff's right to cure is "subject to the rights of the IO Participant. . . ." (*Id.* at § 2(e).)  Plaintiff's conclusory self-serving assertion that it has the unfettered right to proceed in this lawsuit without Morgan Stanley's approval is not supported by these ambiguous provisions.

5.    Notwithstanding the overlooked ambiguity in the Loan Sale Agreement, Plaintiff impugns as "inconsistent," "hypocri(tical)" and "flimsy" Defendants' questioning of Plaintiff's

standing in this suit. (*See* Plaintiff's Reply Memorandum of Law, at 2, n.2.) These statements appear to stem from Defendants' alleged failure to question Wells Fargo's standing as Senior Lender in this action. (*See id.* ("it is inconsistent for the Guarantors to take issue with Highland's standing but to accept at face value Wells Fargo's stated assignment from Morgan Stanley...").) However, there is logic behind Defendants' position regarding Wells Fargo's standing. In fact, Defendants never accepted "at face value" that Wells Fargo had standing to pursue its claims as the purported Senior Lender. ***Rather, Wells Fargo proved that it had proper standing when it annexed to its Complaint in the Ohio Foreclosure Action its written assignment agreement that established that it has standing to pursue claims on behalf of the Senior Lender.*** (A true and correct copy of Wells Fargo's written assignment agreement is annexed hereto as Exhibit "2.") Furthermore, Wells Fargo's First Amended Complaint in the Ohio Action, a copy of which is annexed to my May 23, 2008 affidavit in support of Defendants' Motion to Dismiss or Stay the Proceedings, references Wells Fargo's written assignment agreement as "[a]n *Assignment of Mortgage and Security Agreement...*" (*See* Katz May 23, 2008 Affidavit, at ¶ 8; and Exhibit "F" thereto, at ¶ 12(b).)

6.    Ironically, it is Wells Fargo's diligence in pursuit of its Senior claims which highlighted Plaintiff's weakness in pursuit of its Junior claims. If Wells Fargo attached its written assignment documents to its complaint, why did Plaintiff avoid doing so in this action, and instead choose to broadly, and in a conclusory manner, plead that it had standing? The likely answer is that Plaintiff's standing in this lawsuit is not clear, and in fact, requires review of a multitude of agreements, including interpretation and analysis of its Loan Sale Agreement.

7.    Finally, Defendants are compelled to comment on Plaintiff's consistent call in its Reply that the Defendants provide a "contractual provision" that the "Senior Lender could assert

against the Guarantors for honoring the Mezzanine Guaranty". (*See* Plaintiff's Reply Memorandum of Law, at 5 and 7.) As Defendants previously explained, interest and late fees will be accrued by the Senior Lender that would not otherwise accrue had Highland not filed this separate lawsuit in circumvention of its responsibilities under the Intercreditor Agreement. (*See* Defendants' Reply Memorandum In Support of its Motion to Dismiss the Complaint or Stay the Proceedings, at Point II.B.) Indeed, Section 2.3.4 of the Senior Loan Agreement provides that a late payment charge will accrue requiring compensation to Wells Fargo for the "loss of the use of such delinquent payment" and that this amount is secured by the "other Loan Documents." (*See* Exhibit "3" to the Affidavit of Michael Stolper dated June 27, 2008.) Thus, to the extent that Plaintiff recovers funds that are due to Wells Fargo under the Intercreditor Agreement, it is *Defendants* who will ultimately be held responsible for the additional costs accrued by Plaintiff's wrong-doing. This is precisely the sort of prejudice that Defendants seek to avoid by a stay of this action pending resolution of the related Ohio Action.

**WHEREFORE**, Defendants Matthew Studer, Fred Graft, Ernie Malas, and Peter Coratola respectfully request that Defendants' Motion to Dismiss or Stay the Proceedings should be granted, and Highland Park's Cross-Motion for Summary Judgment should be denied. Further, in the event the Court elects to stay this action pending the outcome of the Ohio Action, or permits this action to go forward, Wells Fargo's Motion to Intervene should be granted. In addition, Defendants should be awarded such other and further relief as this Court deems just and proper under the circumstances.

_____
                    Daniel E. Katz (7222)

Sworn to before me this
29th day of July, 2008

_____
     Notary Public

YASMIN R. SAEED
Notary Public, State of New York
No. 02SA6157711
Qualified in New York County
Commission Expires Dec. 11, 2010

Exhibit 1



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CALIFORNIA 90017

*tel* +1-213-629-2020
*fax* +1-213-612-2499

WWW.ORRICK.COM

February 11, 2008

Jeffery D. Hermann
(213) 612-2413
jhermann@orrick.com

**VIA HAND DELIVERY**

Platinum Lodging Mezz, LLC
8330 Strasbourg Court
Dublin, Ohio 43017
Attention:  Mr. Matthew Studer

Re:    Highland Park CDO I Grantor Trust, Series A; Platinum Lodging Mezz, LLC;
       <u>MSMCI Loan No. 06-26034 – Pre-Negotiation Agreement</u>

Dear Mr. Studer:

Reference is hereby made to that certain mezzanine loan in the original principal amount of
$10,500,000.00 ("Mezzanine Loan") in favor of Highland Park CDO I Grantor Trust, Series A, as
assignee of Morgan Stanley Mortgage Capital Inc., a New York corporation, (together with its
successors and assigns, "Mezzanine Lender") made on or about August 3, 2006 to Platinum Lodging
Mezz, LLC, an Ohio limited liability company, ("Mezzanine Borrower"), pursuant to the terms of
and evidenced by the following documents:

- that certain Mezzanine Loan Agreement, dated as of August 3, 2006, as
  amended, restated, replaced, supplemented or otherwise modified from time to
  time, by and between Mezzanine Borrower and Mezzanine Lender (the
  "Mezzanine Loan Agreement");
- that certain Mezzanine Promissory Note in the stated principal amount of
  $10,500,000.00, dated as of August 3, 2006, made by Mezzanine Borrower in
  favor of Mezzanine Lender (the "Mezzanine Note");
- that certain Pledge and Security Agreement, dated as of August 3, 2006, made by
  Mezzanine Borrower in favor of Mezzanine Lender (the "Mezzanine Pledge
  Agreement");
- that certain Mezzanine Guaranty of Payment and Guaranty of Recourse
  Obligations of Mezzanine Borrower, dated as of August 3, 2006, from Matthew
  Studer, Fred Graft, Ernie Malas and Peter Coratola (individually and collectively,
  as the context may require, "Mezzanine Guarantor") for the benefit of
  Mezzanine Lender (the "Mezzanine Guaranty");
- that certain Mezzanine Environmental Indemnity Agreement, dated as of
  August 3, 2006, by and between Mezzanine Borrower and Mezzanine Guarantor
  for the benefit of Mezzanine Lender (the "Mezzanine Environmental
  Indemnity");



ORRICK

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 2

- that certain Mezzanine Assignment of Interest Rate Cap Agreement and Security Agreement, dated as of August 3, 2006, by and between Mezzanine Borrower and Mezzanine Lender and acknowledged by Ixis Financial Products Inc. and any other Assignment of Interest Rate Protection Agreement thereinafter delivered (the "Mezzanine Assignment of Protection Agreement");
- that certain Mezzanine Subordination of Management Agreement, dated as of August 3, 2006, by and among Mezzanine Borrower, Focus Lodging Group, LLC, an Ohio limited liability company, or any other manager approved in accordance with the terms and conditions of the Mezzanine Loan Documents, as defined herein, ("Manager") (the "Mezzanine Assignment of Management Agreement"); and
- the other agreements and documents executed and delivered in connection with the Mezzanine Loan (collectively with the Mezzanine Loan Agreement, the Mezzanine Note, the Mezzanine Pledge Agreement, the Mezzanine Guaranty, the Mezzanine Environmental Indemnity, the Mezzanine Assignment of Protection Agreement and the Mezzanine Assignment of Management Agreement, hereinafter referred to as the "Mezzanine Loan Documents").

Reference is further made to:

- that certain Mezzanine Loan Sale and Participation Agreement, dated as of December 5, 2006, by and between Morgan Stanley Mortgage Capital Inc., as "Initial Lender," HFT RE CDO 2006-2, Ltd., as "Whole Note Purchaser," HFT RE CDO 2006-2, Ltd., as "PI Participant" and Morgan Stanley Mortgage Capital Inc. as "IO Participant," (the "Mezzanine Loan Sale and Participation Agreement"), pursuant to which Initial Lender sold the Mezzanine Note to Whole Note Purchaser and simultaneously therewith, Whole Note Purchaser created two separate certificated *pari passu* participation interests in the Note, the IO Participation Interest and the PI Participant Interest, and in its capacity as PI Participant, Whole Note Purchaser retained the PI Participant Interest and transferred the IO Participation to IO Participant. As a result of certain other assignments, all the interests of Initial Lender, other than the IO Participation, have been assigned to Mezzanine Lender.

Capitalized terms used herein shall have the meanings set forth in the Mezzanine Loan Documents and the Mezzanine Loan Sale and Participation Agreement, unless otherwise noted.



ORRICK

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 3

Mezzanine Lender has determined that Events of Default exist under the Mezzanine Loan, primarily as a result of Mezzanine Borrower's failure to repay the Mezzanine Loan before the Maturity Date thereof on February 9, 2008.

Mezzanine Borrower and Mezzanine Guarantors now desire to engage in discussions and negotiations with Mezzanine Lender regarding the outstanding Events of Default under the Mezzanine Loan, and Mezzanine Lender is willing to do so on the condition that Mezzanine Borrower, Mezzanine Guarantors and Mezzanine Lender agree to certain understandings regarding the manner in which such discussion and negotiations will proceed, as set forth in this "Pre-Negotiation Agreement".

1.    Negotiations.

(a)    Mezzanine Borrower and Mezzanine Guarantors (collectively, "Mezzanine Obligors") and Mezzanine Lender intend to commence negotiations concerning the obligations Mezzanine Borrower owes to Mezzanine Lender under the Mezzanine Loan Documents (the "Obligations"). As used herein, the words "we", "us", or "our" shall be deemed to include Mezzanine Lender.

(b)    Without liability for failing to do so, Mezzanine Lender and Mezzanine Obligors each plan to discuss various courses of action relating to the Obligations which might be in our mutual interest. All such discussions, meetings, negotiations and communications relating to the Obligations and occurring either before or after the effective date hereof shall be privileged and without prejudice to any party thereto, and without exception, shall constitute settlement negotiations which shall not be introduced or admissible as evidence in any administrative, judicial or other proceeding without the express written consent of all of the parties hereto; notwithstanding the foregoing, this Pre-Negotiation Agreement shall be admissible as evidence in any such proceeding to evidence our agreement as set forth herein. No action or proceeding of any kind (whether legal or equitable, whether based in tort, contract, or otherwise) may be brought by Mezzanine Lender or Mezzanine Obligors against anyone based upon or relating to our negotiations contemplated by this Pre-Negotiation Agreement.

(c)    Mezzanine Obligors acknowledge and agree that Mezzanine Lender does not have any obligation to make any further advances under the Mezzanine Loan and does not have any obligation to modify, amend or enter into negotiations with respect to the Obligations, that no party is obligated to enter into or to continue negotiations relating to the modification of the existing Mezzanine Loan Documents, and that any party, in its sole and absolute discretion, may



**ORRICK**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 4

terminate negotiations at any time and for any reason if it so elects, without notice or liability to any other party.

     (d)  Mezzanine Obligors acknowledge that Mezzanine Lender would not enter into negotiations concerning the Obligations without this letter clarifying the nature of such negotiations.

2.  <u>Mezzanine Loan Status</u>.  Mezzanine Obligors acknowledge and agree that the Obligations are currently in default and that no agreement has been reached as to the renewal, extension or modification of the Obligations, nor the forbearance, compromise or waiver of any rights of Mezzanine Lender arising as a result of such defaults.

3.  <u>Cooperation of Mezzanine Obligors</u>.  Mezzanine Obligors will cooperate with Mezzanine Lender, its agents and its representatives, to conduct environmental site assessments, structural studies, appraisals and other evaluations of the properties and assets covered by the Mezzanine Loan Documents.  In connection therewith, you agree to permit Mezzanine Lender, its agents and its representatives reasonable access to inspect and review all such properties and assets and all books, records, plans, specifications, approvals, licenses, permits and other information relating thereto at all reasonable times and shall permit them to make copies of all such information.  Mezzanine Obligors also agree that Mezzanine Obligors will furnish Mezzanine Lender (a) current, complete and accurate financial statements of all Mezzanine Obligors in a form satisfactory to Mezzanine Lender, and if applicable, (b) current operating statements.

4.  <u>Only Written Agreements and Amendments</u>. Our contemplated discussions may be lengthy and complex. While we may reach agreement on one or more issues which are part of the problem we are trying to resolve, we have agreed that, except for preliminary agreements contained in this Pre-Negotiation Agreement, none of us shall be bound by or rely upon any agreement on any issues until (a) agreement is reached on all issues, and (b) our agreement on all issues has been reduced to a written agreement, signed and delivered by an authorized representative of each of the parties hereto and the conditions precedent set forth in such written agreement have occurred or have been waived.  Furthermore, in order to avoid any confusion or misunderstanding, each of us also agrees that this Pre-Negotiation Agreement may only be amended in a writing, signed by authorized representatives of Mezzanine Obligors and Mezzanine Lender.  Nothing herein shall be construed to impose any duty or obligation whatsoever upon any party to commence or continue to negotiate with any other party, or to forbear from taking any action available to such party in connection with the Obligations, or to agree to, or enter into, a forbearance agreement, workout agreement, restructure agreement, settlement agreement or the like with any other party.



**O R R I C K**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 5

5.      <u>No Waiver or Estoppel</u>.  No negotiations, discussions, other written or oral communications or other action undertaken pursuant to this Pre-Negotiation Agreement shall constitute a waiver, modification or relinquishment of any party's rights under the Mezzanine Loan Documents, except to the extent specifically stated in a written agreement complying with the provisions of Paragraph 4 hereof.  In addition, participation in negotiations concerning the Obligations shall not restrict, inhibit or estop any party from exercising any right, remedy or power available to such party at any time (whether or not settlement negotiations are continuing) including, but not limited to, all rights, remedies and powers granted under the Mezzanine Loan Documents or otherwise available at law or in equity, or require any delay in the exercise of any such right, remedy or power.  No failure to exercise and no delay in exercising any rights, remedies, and powers under the Mezzanine Loan Documents or otherwise available at law or in equity shall operate as a waiver, modification or relinquishment of any such rights, remedies or powers.

6.      <u>Partial Payments</u>.  Mezzanine Obligors acknowledge that any partial payments made by Mezzanine Obligors, either before or after the execution of this Pre-Negotiation Agreement, may be applied by Mezzanine Lender in partial satisfaction of the Obligations and that neither the acceptance nor application by Mezzanine Lender or any of Mezzanine Lender's successors and assigns of any partial payment shall constitute a cure or waiver of any default or Event of Default under the Mezzanine Loan Documents or constitute any extension or other modification of the Obligations or the Mezzanine Loan Documents.

7.      <u>Use of Counsel</u>.  Mezzanine Obligors acknowledge that Mezzanine Obligors have been advised to obtain representation by independent counsel or are currently represented by independent, competent counsel.  Mezzanine Obligors also acknowledge that Mezzanine Obligors have fully reviewed this Pre-Negotiation Agreement and are executing this Pre-Negotiation Agreement on their own independent judgment with the advice of counsel and are under no threat, coercion or duress from any party.

8.      <u>Alternative Opportunities</u>.  As negotiations may not result in agreement among the parties for a restructure, workout, forbearance, etc. with respect to the Obligations, Mezzanine Obligors should not forego any attractive alternative opportunities available (and not otherwise prohibited by the Mezzanine Loan Documents), including refinancing, sale, lease, additional financing, sale of equity, additional capital infusions, etc.  The decision of Mezzanine Obligors to enter into discussions and negotiations with Mezzanine Lender and to thereby forgo any such alternative opportunities shall not result in any liability of Mezzanine Lender to Mezzanine Obligors and Mezzanine Obligors acknowledge that Mezzanine Obligors may not rely upon any written or verbal



ORRICK

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 6

assurances from representatives or agents of Mezzanine Lender to the effect that such discussions and negotiations will likely result in a successful workout or restructure of the Mezzanine Loan.

9.    <u>Miscellaneous</u>.  This Pre-Negotiation Agreement constitutes the entire agreement concerning the subject matter dealt with herein and supersedes any prior or contemporaneous representations or agreements not contained herein concerning the subject matter of this Pre-Negotiation Agreement.  This Pre-Negotiation Agreement shall inure to the benefit of and be binding upon each of us and our respective heirs, successors and assigns, and shall be governed by the law of the State of New York, without giving effect to principles of conflicts of laws.  This Pre-Negotiation Agreement shall be effective and binding upon all signatories hereto whether or not all Mezzanine Obligors have signed this Pre-Negotiation Agreement.  In the event of any dispute hereunder, the prevailing party shall be entitled to recover all costs, attorneys' fees and expert witness fees from the non-prevailing parties.  Paragraph headings used herein are for convenience only and shall not be used to interpret any term hereof.  This Pre-Negotiation Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which together shall evidence the Pre-Negotiation Agreement.  The effective date of this Pre-Negotiation Agreement shall be the date it is executed by the last signatory as indicated on the signature page. Each party executing this Pre-Negotiation Agreement represents that such party has the full authority and legal power to do so.  All notices sent pursuant to this Pre-Negotiation Agreement shall be in writing and shall be effective only upon receipt.  Such notices shall be hand delivered to the addressee or sent by U.S. mail, postage prepaid or by overnight courier service and properly addressed to such addressee at the addresses set forth in the signature blocks below.

10.    <u>Designated Representatives</u>.  The designated representative of Mezzanine Obligors for the purpose of the negotiations contemplated herein will be <u>Fred Graft</u>                          . The designated representative of Mezzanine Lender for the purpose of such negotiations shall be <u>Brian Home</u>                                              .  Any party may at any time by written notice to the others designate other representatives for the purpose of such negotiation.  All negotiations and all written and verbal communications between Mezzanine Obligors and Mezzanine Lender shall be solely between such designated representatives. Notwithstanding anything contained herein, Mezzanine Obligors' acknowledge that none of the representatives of Mezzanine Lender designated above is authorized to bind Mezzanine Lender during negotiations, that any agreements by any such designated representatives of Mezzanine Lender are subject to Mezzanine Lender's formal approval process and that Mezzanine Lender will only be bound by an agreement executed by Mezzanine Lender in accordance with paragraph 4 hereof.



**O R R I C K**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 7

UNLESS MODIFIED BY A WRITTEN AGREEMENT SIGNED AND DELIVERED BY ALL PARTIES HERETO, THIS PRE-NEGOTIATION AGREEMENT SHALL REPRESENT THE FINAL AGREEMENT AS TO THE MATTERS DESCRIBED HEREIN. THIS PRE-NEGOTIATION AGREEMENT MAY NOT BE CONTRADICTED BY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL STATEMENTS OR AGREEMENTS OF THE PARTIES.



**ORRICK**

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 8

*[handwritten: THIS PRE-NEGOTIATION AGREEMENT SHALL NOT BE ADMISSIBLE IN A COURT PROCEEDING AS EVIDENCE OF A DEFAULT BY MEZZANINE BORROWER.]*

If the foregoing accurately sets forth the terms of our binding agreement, please sign this Pre-Negotiation Agreement in the space provided below and return the same to us at your earliest convenience.

Sincerely,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
    Jeffry D. Hermann

cc: Mezzanine Guarantors (as indicated below)
    Mezzanine Lender representatives (as indicated below)

*CONSENTED TO AND AGREED:*

**MEZZANINE BORROWER:**
**PLATINUM LODGING MEZZ, LLC**

By: Platinum Lodging Mezz Management, Inc.,
    an Ohio corporation

    By: _____
        Name:  Peter Coratola
        Title:  President

    By: _____
        Name:  Ernie Malas
        Title:  Vice President

8330 Strasbourg Court
Dublin, Ohio 43017
Attention:  Matthew Studer

**MEZZANINE GUARANTOR:**
**MATTHEW STUDER**

By: _____
    Matthew Studer

8330 Strasbourg Court
Dublin, Ohio 43017

OHS West:260383171.3



# ORRICK

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 9

**MEZZANINE GUARANTOR:**
**FRED GRAFT**

By: _____
Fred Graft

1123 Worthington Heights
Columbus, Ohio 43235

**MEZZANINE GUARANTOR:**
**PETER CORATOLA**

By: _____
Peter Coratola

8330 Strasbourg Court
Columbus, Ohio 43017

**MEZZANINE GUARANTOR:**
**ERNIE MALAS**

By: _____
Ernie Malas

2481 Stonehaven Place
Columbus, Ohio 43220



ORRICK

Platinum Lodging Mezz, LLC
Attention: Mr. Matthew Studer
February 11, 2008
Page 10

**MEZZANINE LENDER:**
**HIGHLAND PARK CDO I GRANTOR**
**TRUST, SERIES A**

By:  HIGHLAND CAPITAL
      MANAGEMENT, L.P.,
      as Special Servicer of the Mezzanine Loan

      By:  STRAND ADVISORS, INC.,
            as General Partner

      By: _____
            Name: *Michael Colvin*
            Title: *Secretary*

With Mezzanine Lender Copies to:

Jeffery D. Herrmann, Esq.
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California  90017-5855
jherrmann@orrick.com

*Senior Lender/IO Participant*
Morgan Stanley Mortgage Capital Inc.
1221 Avenue of the Americas
27th Floor
New York, New York 10020
Attention: Stephen Holmes

*Counsel to Senior Lender*
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
Attention:  Ellen M. Goodwin, Esq.

Exhibit 2

13 2006 XLF MORG

THIS DOCUMENT PREPARED BY AND
UPON RECORDATION RETURN TO:
VANESSA ORTA, ESQ.
*ANDERSON, McCOY & ORTA, P.C.*
100 North Broadway, Suite 2600
Oklahoma City, Oklahoma 73102
Telephone: 888-236-0007
AMO File No. 858.007
995-2383-000
06-26034
WL6260342
**Franklin County, Ohio**



200609290194585
Pgs: 3   $40.00      T20060072357
09/29/2006 8:59AM  MEPANDERSON M
Robert G. Montgomery
Franklin County Recorder

---

### ASSIGNMENT OF MORTGAGE AND SECURITY AGREEMENT

KNOW THAT

    **MORGAN STANLEY MORTGAGE CAPITAL INC., a New York corporation**, having an address of 1221 Avenue of the Americas, 27th Floor, New York, NY 10020, ("Assignor"),

For valuable consideration paid by:

    **WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE MORGAN STANLEY CAPITAL I INC. COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-XLF**, having an address of *CMBS Department, 1015 10th Avenue, Minneapolis, MN 55414*, ("Assignee"),

the receipt and sufficiency of which is hereby acknowledged, Assignor does hereby grant, bargain, sell, convey, assign, transfer, and set over, without recourse, representation and warranty, except as set forth in that certain related Mortgage Loan Purchase Agreement all of Assignor's right, title and interest, of any kind whatsoever, including that of mortgagee, beneficiary, payee, assignee or secured party (as the case may be), in and to the following:

    **Mortgage and Security Agreement** ("Mortgage") dated July 18, 2006 by PLATINUM LODGING, LLC, an Ohio limited liability company to Assignor and recorded July 18, 2006, as Instrument Number 200607180140554, with the Franklin County Recorder, Ohio.

*TOGETHER* with the bonds or notes or obligations described in said Mortgage, and the moneys due and to grow due thereon with the interest, and any and all other related security instruments which secure the indebtedness and/or obligations secured by said Mortgage.

TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever.

IN WITNESS WHEREOF, the Assignor has caused these presents to be effective as of August 16, 2006.

**(The remainder of this page has been intentionally left blank.)**

ASSIGNOR:

**MORGAN STANLEY MORTGAGE CAPITAL INC.,**
**a New York Corporation**

By: _____

Name:     Kevin Swartz

Title:     Vice President

STATE OF NEW YORK            )
                             )
COUNTY OF NEW YORK           )

On the 17ᵗʰ day of August, 2006, before me, _Lucy Robinson_, a Notary Public in and for said state, personally appeared Kevin Swartz, as Vice President of Morgan Stanley Mortgage Capital Inc., personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

    WITNESS my hand and official seal.

My Commission Expires:

                              Signature: _____
                                         Notary Public

_____

                    LUCY ROBINSON
            NOTARY PUBLIC, STATE OF NEW YORK
                    No. 01RO6091186
                QUALIFIED IN KINGS COUNTY
            MY COMMISSION EXPIRES APRIL 28, 20 07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————x

HIGHLAND PARK CDO I GRANTOR
TRUST, SERIES A,

        Plaintiff,

   -against-

MATTHEW STUDER, FRED GRAFT, ERNIE MALAS,
AND PETER CORATOLA,

        Defendants.

—————————————————————x

---

**KATZ SUR-REPLY AFFIDAVIT IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT OR STAY THE PROCEEDINGS**

---

**BAUMAN KATZ & GRILL LLP**
Attorneys for Defendants
28 West 44th Street, Suite 900
New York, New York 10036
(212) 684-0300

To

Attorney(s) for

Service of a copy of the within               is hereby admitted

Dated,

                             Attorney(s) for

                                    ...........................................

NOTICE OF ENTRY

that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named Court on     20

NOTICE OF SETTLEMENT

that an order
of which the within is a true copy will be presented for settlement to the HON.
one of the judges of the within named Court, at
on the        day of        20    at     M.

Dated,

                         Yours, etc.,

                         BAUMAN KATZ & GRILL LLP
                         28 West 44th Street, Suite 900
                         New York, New York 10036

To
Attorney(s) for